FINPLAN 12/01/09

John P. Schock - State Bar No.048632, 052781_

Schock & Schock, alc.
210 So. Orange Grove Blvd., Ste 200
Pasadena, CA 91105
Telephone (626)298-6446

Attorney for Debtor



## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re

**FEY 240 NORTH BRAND LLC,**
**a Limited Liability Company;**

            Debtor

**Bk. No.** 2:09-bk-44228-AA

In a Case Under Chapter
11 of the Bankruptcy Code
(11 U.S.C. § 1101 et seq.)

**FEY 240 NORTH BRAND LLC**
**DISCLOSURE STATEMENT**
**DESCRIBING Proposed CHAPTER 11**
**PLAN**

### Disclosure Statement Hearing

Date:     April 7, 2010
Time:     10:30 AM
Ctrm:     United States
Bankruptcy Court-Central
District of California, Edward
R. Roybal Federal Building &
Courthouse, 255 East Temple
St., Suite 1375, Los Angeles,
CA 90012

### Plan Confirmation Hearing
Complete This Section When
        Applicable
Date:
Time:
Ctrm:     {Insert Courtroom #}
        {Insert Full
        Court Address

        Here}

## TABLE OF CONTENTS

I.      INTRODUCTION........................................... 4

II.     GENERAL DISCLAIMER AND VOTING PROCEDURE................. 5

III.    WHO MAY OBJECT TO CONFIRMATION OF THE PLAN............... 6

IV.     WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN................ 6

V.      VOTES NECESSARY TO CONFIRM THE PLAN..................... 11

VI.     INFORMATION REGARDING VOTING IN THIS CASE............... 12

VII. DESCRIPTION OF DEBTORS PAST & FUTURE BUSINESS AND EVENTS
PRECIPITATING BANKRUPTCY FILING. . . . . . . . . . . . . . . 12

VIII.     CRITICAL PLAN PROVISIONS ............................ 14

IX.     DESCRIPTION AND TREATMENT OF CLAIMS..................... 15

X.      SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS....... 26

XI.     FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED
PAYMENT IS FEASIBLE........................................ 29

XII. ASSETS AND LIABILITIES OF THE ESTATE..................... 29

XIII.     TREATMENT OF NONCONSENTING CLASSES .................. 30

XIV. TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS
(CHAPTER 7 LIQUIDATION ANALYSIS)............................ 33

XV.     FUTURE DEBTOR.......................................... 33

XVI. SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND
LEASES; OTHER PROVISIONS................................... 36

XVII.     BANKRUPTCY PROCEEDINGS .............................. 37

XVIII.    TAX CONSEQUENCES OF PLAN ............................ 37

XIX. EFFECT OF CONFIRMATION OF PLAN.......................... 38

XX.     DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN. .41

3

## I.   INTRODUCTION

On December 4, 2009, **FEY 240 NORTH BRAND LLC** ("Debtor") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code").   The document you are reading is both the Plan of Reorganization ("Plan") and the Disclosure Statement.   Proponent has proposed the Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners and to reorganize the Debtor's business affairs.   A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed.   The Bankruptcy Court ("Court") has approved the form of this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.   The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

The Proponent has reserved **TBD** in Courtroom **TBD** for a hearing to determine whether the Court will confirm the Plan.

Any interested party desiring further information should contact: John P. Schock, Esq., SCHOCK & SCHOCK, 210 South Orange Grove Blvd., Ste 200, Pasadena, CA 91105.

4

## II.   GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS,
CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.
IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.
IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT
TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE
PLAN BE CONFIRMED BY THE COURT.

The source of financial data is based on historic operating
results and cashflow projections prepared by the Debtor.  The
information contained in the Disclosure Statement is provided by
the Debtor and the Debtor's CPA (Christine Blazey, CPA).  (ALL
INFORMATION RELIED UPON IN FORMULATING THIS DOCUMENT IS SET FORTH
IN THE DECLARATION IN SEE SECTION XX.)  ALL REPRESENTATIONS ARE
TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT
WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT,
IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached
exhibits, please vote on the enclosed ballot and return it in the
enclosed envelope.

The Proponent has reserved a hearing date for a hearing to
determine whether the Court will confirm the Plan.  Please refer to
Section I above for the specific hearing date.  If, after receiving
the ballots, it appears that the Proponent has the requisite number

5

of votes required by the Code, the Proponent will file a motion for
an order confirming the Plan.

The Motion shall at least be served on all impaired creditors
and partners or shareholders who reject the Plan and on the Office
of the United States Trustee.  Any opposition to the Motion shall
be filed and served on the Proponent no later than fourteen days
prior to the hearing date.  Failure to oppose the confirmation of
the Plan may be deemed consent to the Plan's confirmation.

### III. WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

Any party in interest may object to confirmation of the Plan, but
as explained below not everyone is entitled to vote to accept or
reject the Plan.

### IV.  WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

It requires both an allowed and impaired claim or interest in order
to vote either to accept or reject the Plan.  A claim is defined by
the Code to include a right to payment from the Debtor.  An
interest represents an ownership stake in the Debtor.

In order to vote a creditor or interest-holder must first have an
allowed claim or interest.  With the exceptions explained below, a
claim is allowed if proof of the claim or interest is properly
filed before any bar date and no party in interest has objected, or
if the court has entered an order allowing the claim or interest.

6

Please refer to Section VI below for specific information regarding bar dates in this case.

Under certain circumstances a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated.  Exhibit "A" contains a list of claims that are not scheduled as disputed, contingent, or unliquidated.

### Exhibit "A" - Claims

| Class | Secured Claims<br>Payment Recipient | Total Owed |
|-------|------------------------|----------------|
| 1A | Los Angeles County Assessor | $268,206.07 |
| 1B | Citizens Business Bank | $8,481,351.58 |
| 1C | DeLovely Properties | $1,356,666.60 |
| 1D | Barnust Properties | $1,755,089.00 |
| 1E | Evilsizer Construction | $407,682.93 |

7

| Exhibit "A" - Claims | |
|---|---|
| **_Unsecured Claims_**<br>**_Payment Recipient_** | **_Total Owed_** |

| | **_Payment Recipient_** | **_Total Owed_** |
|---|---|---|
| 2A | ABR Concrete Systems | $3,723.60 |
| | Acetek Roofing Co | $480.00 |
| | Amtech Elevator Services | $2,427.30 |
| | AR Painting Inc | $9,837.00 |
| | Archer's Lock & Safe | $19,107.99 |
| | Armen Markarian | $2,600.00 |
| | AT & T | $85.74 |
| | Aztec Fire Protection | $14,515.00 |
| | Camilo Hernandez | $430.70 |
| | City of Glendale | $8,739.67 |
| | Crabtree Glass Company | $7,197.00 |
| | Crown Disposal | $1,913.34 |
| | Dal Tile Van Nuys | $4,840.03 |
| | Demmert & Assoc | $23,600.00 |
| | Diversified Automation | $14,106.70 |
| | Dura Painting Company | $10,850.00 |
| | Electrician Magician | $8,920.35 |
| | Encore Image, Inc | $460.95 |
| | Fabian Glass Graffiti | $360.53 |
| | Farmers Insurance | $8,213.32 |
| | Francisco Hernandez | $1,805.00 |
| | The Gas Co | $14.63 |
| | Glendale Iron | $2,900.00 |
| | Golden Eagle Insurance | $626.00 |
| | Interior Experts General Bldrs | $42,221.93 |
| | KPFF Consulting Engineers | $5,330.70 |
| | Labor Ready Southwest Inc | $5,701.95 |
| | LA Consulting Engineers | $3,500.00 |
| | LA Metro Plumbing | $25,950.00 |
| | L&T Industries, Inc | $1,550.00 |
| | Lobar Properties | $235,887.89 |
| | Malekian & Assoc | $4,830.00 |
| | Mustang Mechanical Contractors | $10,089.82 |
| | Roberto Morales | $5,000.00 |
| | Saiful Bouquet | $2,100.00 |
| | Stumbaugh & Associates | $12,577.00 |
| | Zero & Associates | $850.00 |
| | Dorn Platz | $99,058.15 |
| | CSC Coring | $950.00 |
| | Colliers Real Estate | $170,000.00 |
| | Doug Neuman | $75,000.00 |
| 2C | **_Security Deposits_** | 8 |
| | SouthWest College | $16,000.00 |
| | NWC Investments | $6,500.00 |

Similarly, an interest is deemed allowed if it is shown on the list of equity security holders filed by the Debtor with the court and is not scheduled as disputed.

In order to vote, an allowed claim or interest must also be impaired by the Plan.

Impaired creditors include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor. A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment. The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the maturity of such claim as it existed before default, compensates for any damages incurred as a result of reasonable reliance upon the acceleration clause, and (except for a default arising from failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West Supp. 2006)) compensates for any actual pecuniary loss incurred as a result of any failure to perform a non-monetary obligation.

Impaired interest-holders include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration

9

is beneficial to the interest holder.

There are also some types of claims that the Code requires be treated a certain way.  For that reason they are considered unimpaired and therefore holders of these claims cannot vote.

To summarize, there are two prerequisites to voting:  a claim or interest must be both allowed and impaired under the Plan.

If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed to have accepted the Plan).  Impaired claims or interests are placed in classes and it is the class that must accept the Plan.  Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of the Plan.  Even if all classes do not vote in favor of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

Section IX sets forth which claims are in which class.  Secured claims are placed in separate classes from unsecured claims.  Fed. R. Bank. P. 3018(d) provides:  "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured

10

claim shall be entitled to accept or reject a plan in both capacities."

### V.   VOTES NECESSARY TO CONFIRM THE PLAN

The Court may confirm the Plan if at least one non-insider impaired class of claims has accepted and certain statutory requirements are met as to both non-consenting members within a consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more than one-half in number and at least two-thirds in amount of the allowed claims actually voting, vote in favor of the Plan. A class of interests has accepted the Plan when at least two-thirds in amount of the allowed interests of such class actually voting have accepted it.  It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

11

**VI.   INFORMATION REGARDING VOTING IN THIS CASE**

The bar date for filing a proof of claim in this case is March 3, 2010.  The bar date for objecting to claims is April 14, 2010.

In this case the Proponent believes that classes 1A,1B,1C,1D,1E,2A and 3 are impaired and therefore entitled to vote.  Class 4 is unimpaired and therefore does not vote.  A party that disputes the Proponent's characterization of its claim or interest as unimpaired may request a finding of impairment from the Court in order to obtain the right to vote.

Ballots must be received by the Proponent, addressed to John P. Schock, SCHOCK & SCHOCK, 210 South Orange Grove Blvd., Pasadena, CA 91105 by TBD.

**VII. DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING**

The Debtor is a Limited Liability Company.  The Debtor conducted 100% of its business activity in Glendale, California since 2000. What follows is a brief summary of the dates and circumstances that led Debtor to file bankruptcy.

12

On November 16, 2009 Citizens Business Bank filed a Notice of
Default.  That filing precipitated the Chapter 11 filing.  A Motion
for Order Appointing Receiver and Preliminary Injunction was filed
by Citizens Business Bank and granted December 4, 2009, after the
filing of this matter.  The filing of the Bankruptcy case imposed
the Automatic Stay on this action.

What follows is a brief description of the Debtor's business and
future business plans.  Further details relating to the Debtor's
financial condition and post-confirmation operation of the Debtor
are found in sections X, XI, XIII, XVI, and XV.

The Debtor is in the business of Property Ownership.  The Debtor
currently owns the 55,000 square foot 3-story commercial building
located at 240 North Brand Blvd. in the business district of
Glendale, California.  The building is currently leased to 24 Hour
Fitness (18,000 sq ft on the 2nd floor), Goodwill Industries (18,500
sq ft on the 1st floor), and the Southwest College of Medical &
Dental Assistants & Practical Nurses (8,500 sq ft in the basement).
 Construction of tenant improvements for both Goodwill and
Southwest College is nearing completion.  Occupancy is expected in
March 2010 for each tenant.  A fourth lease is pending with NWC
Investments for 4,267 sq ft in the basement.  There remains an

13

additional 5,733 sq ft in the basement available for lease. Negotiations are underway with NWC Investments to lease this space.

With completion of the tenant improvements, the base rental income of the property will increase from its existing $29,680 to approximately $89,180 of rental income per month. In addition, the NNN tenants pay their share of operating expenses pursuant to the leases. The 24-Hour Fitness lease expires November 30, 2014, with a provision for the right to extend the lease term for two additional 5-year terms based on the fair market rent for comparable space for a fitness center. The Goodwill lease expires in March of 2020, with the option to extend two additional five year periods. The expiration date for the Southwest College will be two and one-half years after the first month of occupancy, with the option to extend for two additional thirty-six month periods.

## VIII.    CRITICAL PLAN PROVISIONS

Listed below are the sources of money earmarked to pay creditors and interest-holders.

   a.    Future earnings from continued operations of the Debtor. During the life of the Plan, the Debtor will use its rental income to repay creditors.

   b.    The Debtor anticipates refinancing or selling the property towards the end of the Plan to pay any

14

outstanding amounts then owed to Secured Creditors.

Most likely, undisputed general unsecured creditors can expect
payment:

a.   Beginning in the 1st month after Plan confirmation,
     general unsecured creditors would receive their prorata
     share of $16,006.65 as their 1st payment,

b.   and thereafter in 52 additional equal monthly payments of
     their prorata share of $16,006.65 per month

c.   through the 53rd month of the plan unless or until the
     claim is paid in full.

## IX.    DESCRIPTION AND TREATMENT OF CLAIMS

### a. Overview of Plan Payments

Below is a summary of who gets paid what and when and from what
source.  The identity of members within a particular class is
explained beginning on the next page.  The second column lists two
amounts: first, the amount of each payment, or if only one is to be
made, then that amount; second, the total amount that will be paid
over the term of the Plan; and third, if applicable, the total
amount paid by refinancing or sale proceeds at the end of the Plan.
The "Payment Due Date" column states the frequency with which
payments will be made and the starting and ending dates.  Look at
the starting date to figure out who will be paid before and after
you and in what amount.  The "Source of Payment" column describes

15

the expected source of payment.  Further details regarding the
source of payment are found in sections X and XI.


The timing of payments to many creditors is determined by the
"Effective Date".  Administrative claims, unless otherwise stated,
must be paid by the Effective Date.  The timing of payments to
impaired creditors is measured from the Effective Date.  In this
case, the Effective Date is **July 1, 2010**.

16

All claims listed below are undisputed.

| Class | Payment Recipient | Amt of Each Pymt<br>Total Amt Pd (53 Mos)<br>Final Payment | Payment Due Date | Source of Pymt |
|---|---|---|---|---|
| | **Undisputed SECURED & UNSECURED CLAIMS** | | | |
| | Administration Fees | $1,650.00 | Paid in full on Confirmation Date | Cash on Hand |
| | BK Attorney Fees | $5,000.00<br><br>$50,000.00 | Installments of $5,000 Paid<br>through term of Plan<br>beginning with 3rd month of Plan<br>continuing every 5 Mos thereafter<br>until $50,000 paid in full | Rental Income |
| 1A | Los Angeles County Assessor | $6,280.73<br>$332,878.79 | Amortized & pd monthly<br>through 53 Month term of Plan<br>beginning with 1st Month | Rental Income |
| 1B | Citizens Business Bank<br>*1st Trust Deed* | $51,533.59<br>$2,632,359.82<br>$8,106,467.52 | Monthly Int Only @ 6.125% 1st Yr<br>Mos 13-53 30-Yr Amortization<br>Unpd Bal Pd at end of Plan term | Rental Income &<br><br>Sale or Refinancing Proceeds |
| 1C | DeLovely Properties<br>*2nd Trust Deed* | $5,652.78<br>$299,597.21<br>$1,356,666.60 | Monthly Int Only @ 5%<br>for 53 Months of Plan<br>Unpd Bal Pd at end of Plan term | Rental Income &<br><br>Sale or Refinancing Proceeds |
| 1D | Barnust Properties<br>*4th Trust Deed* | $0.00<br>$0.00<br>$1,755,089.00 | Unpd Bal Pd at end of Plan term | Sale or Refinancing Proceeds |
| 1E | Evilsizer Construction<br>*Mechanic's Lien* | $0.00<br>$0.00<br>$407,682.93 | Unpd Bal Pd at end of Plan term | Sale or Refinancing Proceeds |
| 2A | General Unsecured Claims | $16,006.65<br>$848,352.29 | 53 Equal Monthly pymts<br>beginning 1st Month of Plan | Rental Income |
| 2C | Security Deposits | $0.00 | Paid pursuant to terms of lease | Rental Income |

No claimant or interest holder is an affiliate of the Debtor.

b. **Administrative Expenses**

17

1. These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon.

2. The Code requires that allowed administrative expenses be paid on the effective date unless the party holding the administrative expense agrees otherwise.

**Administrative Expense #1**

Claimant:    Clerk's Office Fees

$1,000.00 - subject to court approval

**Administrative Expense #2**

Claimant:    Office of the US Trustees Fees

$650.00 - subject to court approval

**Administrative Expense #3**

Claimant:    Schock & Schock, Attorneys

$50,000.00 - subject to court approval

c. **Unsecured Tax Claims**

1. These include certain types of property, sales, and income taxes.

18

2. The Code requires that the holders of such claims receive regular installment payments in cash over a period ending not later than five years after the date of the order for relief, unless agreed otherwise. The claimant has not agreed otherwise. The total cash payments must have a present value equal to the amount of the allowed claim. The treatment of this claim is in a manner not less favorable than the most favored non-priority unsecured claim provided in this Plan (other than any cash payments to an administratively convenient class). The amount of the allowed claim includes the amount of tax owed plus interest. The present value is calculated as of the effective date. **The Debtor has no Unsecured Tax Claims.**

d. **CLASS ONE –**
   **Class 1A – <u>Secured Property Tax Claims</u>**

   1. Total amount of allowed claim: **$268,206.07**. This amount includes a pre-petition arrearage of $210,358.38 and a post-petition arrearage of $57,847.69.

   2. 53 Monthly payments to satisfy the secured claim

   3. Interest rate of 10%(to compensate creditor because claim is paid over time)

   4. Impaired

19

5.  First payment date: 1st Month after Plan Confirmation

6.  Amount of each installment:  $6,280.73

7.  Frequency of payments:  Monthly

8.  Total yearly payments: $75,368.78

9.  Final payment date: 53rd Month after Plan
    Confirmation unless or until paid in full.

10. Lien is not modified in any way by the Plan.

11. Description of Collateral:  240 North Brand Blvd.,
    Glendale, CA.  Three story 55,000 sq ft Commercial
    building.


e.  **CLASS ONE**
    Class 1B – **Citizen's Business Bank Secured Claim**

    1.  Total amount of allowed claim: **$8,481,351.58** –
        ($8,229,328.40 in principal plus $252,023.18 of
        unpaid pre-petition interest & penalties).

    2.  Monthly INTEREST ONLY payments for the first twelve
        (12) months of the Plan; thereafter 30-Yr
        Amortization schedule with interest calculated on
        the unpaid balance of the loan for the remaining 42
        months of the Plan to satisfy the secured claim.

    3.  Interest rate of 6.125% (to compensate creditor
        because claim is paid over time).

    4.  Impaired

    5.  First payment date: 1st Month after Plan Confirmation

20

6.  Amount of each installment: Interest only in the amount of $43,290.23 for first 12 Months of the Plan, thereafter, Principal and interest in the amount of $51,533.59 per month. The Debtor proposes to either refinance the project or to sell the project at the end of the Plan in order to repay the outstanding balance of $8,106,468.

7.  Frequency of payments:  Monthly

8.  Total yearly payments: $618,403.03

9.  Final payment date: 53 Months after the Plan Confirmation unless or until paid in full.

10. Lien is not modified in any way by the Plan.

11. Description of Collateral:  240 North Brand Blvd., Glendale, CA.  Three story 55,000 sq ft Commercial building plus rents, issues and profits from the building.

f. **CLASS ONE**
   **Class 1C – <u>Delovely Properties Secured Claim</u>**

1.  Total amount of allowed claim: **$1,356,666.60** – ($1,100,000 in principal plus $256,666.60 of unpaid pre-petition accrued interest)

2.  Monthly INTEREST ONLY payments over Plan term to satisfy the secured claim.

3.  Interest rate of 5% (to compensate creditor because

21

claim is paid over time).

4.   Impaired

5.   First payment date: 1st Month after Plan Confirmation

6.   Amount of each installment:  Interest only in the
     amount of $5,652.78 beginning in the 1st month
     following Plan Confirmation for the 53 Month term of
     the Plan.  The Debtor proposes to either refinance
     the project or to sell the project at the end of the
     Plan in order to repay the outstanding balance.

7.   Frequency of payments:  Monthly

8.   Total yearly payments:  $67,833.33

9.   Final payment date:  53rd Month after Plan
     Confirmation unless or until paid in full.

10.  Lien is not modified in any way by the Plan.

11.  Description of Collateral:  240 North Brand Blvd.,
     Glendale, CA.  Three story 55,000 sq ft Commercial
     building.


g.  **CLASS ONE**
    Class 1D - **Barnust Properties**

1.   Total amount of allowed claim: $1,755,089

2.   Interest:  None.

3.   Interest rate of 0%.

4.   Impaired

5.   First payment date: 53rd Month after Plan

Confirmation

6.  The Debtor proposes to either refinance the project at the end of the Plan or to sell the project at the end of the Plan in order to repay the outstanding balance.

7.  Frequency of payments:  One time payment in Month 53

8.  Total yearly payments: $0

9.  Final payment date: 53rd Month after Plan Confirmation unless or until paid in full

10. Lien is not modified in any way by the Plan

11. Description of Collateral:  240 North Brand Blvd., Glendale, CA.  Three story 55,000 sq ft Commercial building.


h.  **CLASS ONE**
    **Class 1E - <u>Evilsizer Construction</u>**

1.  Total amount of allowed claim: $407,682.93 plus accrued interest

2.  Interest:  None.

3.  Interest rate of 0%.

4.  Impaired

5.  First payment date: 53rd Month after Plan Confirmation upon sale or refinance of property.

6.  The Debtor proposes to either refinance the project at the end of the Plan or to sell the project at the end of the Plan in order to repay the outstanding

23

balance.

7.  Frequency of payments:  One time payment in Month 53

8.  Total yearly payments: $0

9.  Final payment date: 53rd Month after Plan
    Confirmation unless or until paid in full

10. Lien is not modified in any way by the Plan

11. Description of Collateral:  240 North Brand Blvd.,
    Glendale, CA.  Three story 55,000 sq ft Commercial
    building.

## i. CLASS 2 – UNSECURED CLAIMS
### Class 2A – <u>Undisputed General Unsecured Claims</u>

1.  Total amount of allowed claim: $848,352.29

2.  Monthly payments over Plan term to satisfy the
    claim.

3.  Interest Rate: -0-

4.  Impaired

5.  First payment date: 1st Month after Plan Confirmation

6.  Amount of each installment:  53 Equal monthly
    payments in the amount of $16,006.65 shall be paid
    through the 53rd month of the Plan unless or until
    paid in full.

7.  Frequency of payments:  Monthly

8.  Total yearly payments:  $192,079.76

9.  Final payment date:  53rd Month after Plan

24

Confirmation unless or until paid in full.

j. **CLASS 2 – UNSECURED CLAIMS**
   **Class 2B – <u>Disputed Claim - Glendale Career Schools Inc</u>.**

    1.   Total amount of Disputed claim:  Approximately $2,000,000 in disputed claim

    1.   Whatever portion of the claim that would be allowed would be all due and payable upon the sale or refinance of the building and would not bear interest.

    3.   Interest Rate: -0-

    4.   Impaired

    5.   First payment date:  Whatever portion of the claim that would be allowed would be all due and payable upon the sale or refinance of the building

    6.   Amount of each installment:  To be determined

    7.   Frequency of payments:  One - Upon the sale or refinance of the building

    8.   Total yearly payments:  To be determined

    9.   Final payment date: 53rd Month after Plan Confirmation unless or until paid in full.

k. **CLASS 2 – UNSECURED CLAIMS**
   **Class 2C – <u>Security Deposits</u>**

    1.   Total amount of allowed claim:  $22,500

    2.   To be paid pursuant to lease terms

    3.   Interest Rate: -0-

4.  Impaired

5.  First payment date: None

6.  Amount of each installment: -0-

7.  Frequency of payments:  None

8.  Total yearly payments:  None

9.  Final payment date: pursuant to terms of lease

### l. CLASS THREE - Insider Claims

1.  Although the following entity does not have an ownership interest in the Debtor, because of the common control, it may be considered as an insider: Dorn Platz Management.

### m. CLASS FOUR - Shareholders Interest Claims

1.  Under the Plan, shareholders simply retain their membership interest in the LLC.  The sole shareholder is Keith Fey.

## X.      SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS

The Plan cannot be confirmed unless the Court finds that it is "feasible", which means that the Proponent has timely submitted evidence establishing that the Debtor will have sufficient funds available to satisfy all expenses, including the scheduled creditor payments discussed above.  What follows is a statement of projected cash flow for the duration of the Plan.  The focus is on projected

cash receipts and cash disbursements.  All non-cash items such as depreciation, amortization, gains and losses are omitted.  A positive number reflects a source of cash; a (negative number) reflects a use of cash.  A more detailed statement of cash flow projections for the duration of Plan payments is attached as Exhibit "B1".

27

*Exhibit B1 - 53 Month Summary (Inserted)*

28

FEY 240 NORTH BRAND LLC

53 Month SUMMARY- Actual & Projected Income & Expense July 2010 to November 2014)

Exhibit B1

2/24/2010 11:12
24Mey-DistPlanZ
Compressed Summary

| Tenant | Sq Ft | Rate | 7/10-6/11 Yr 1 | 7/11-6/12 Yr 2 | 7/12-6/13 Yr 3 | 7/13-6/14 Yr 4 | 7/14-11/14 Yr 5 | Total | Payments to be made from Sale or Refi Proceeds See Exh F |
|---|---|---|---|---|---|---|---|---|---|
| **Rental Income** | | | | | | | | | |
| NNN Tenants | 36,500 | | 804,747.72 | 809,331.72 | 814,053.72 | 818,775.72 | 336,934.24 | 3,583,843.12 | |
| FSG Tenants | 18,500 | | 287,083.33 | 313,537.50 | 322,943.63 | 332,631.93 | 141,599.21 | 1,397,795.60 | |
| Pre-Paid Rent | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| NNN Op Exp Reimb | | | 232,780.69 | 239,224.57 | 245,207.48 | 253,119.63 | 91,577.63 | 1,061,909.99 | |
| Miscellaneous Income/Parking | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| **Total Income** | 55,000 sq ft | | 1,324,611.74 | 1,362,093.79 | 1,382,204.82 | 1,404,527.28 | 570,111.07 | 6,043,548.71 | |
| **Less: Recoverable Operating Expenses** | | | | | | | | | |
| Elevator Contract/Repair | | | (4,897.18) | (5,016.19) | (5,166.68) | (5,321.68) | (2,255.69) | (22,657.41) | |
| Bldg Maintenance/General Repairs/Cleaning/Engineer | | | (780.32) | (757.38) | (780.10) | (803.50) | (340.58) | (3,461.88) | |
| Management Fees | | 3% | (39,738.35) | (40,862.81) | (41,466.14) | (42,195.82) | (17,103.33) | (181,306.46) | |
| Insurance | | | (23,757.14) | (24,232.28) | (24,716.93) | (25,211.27) | (10,626.24) | (108,543.85) | |
| Office Supplies/Other Services | | | (397.98) | (412.98) | (425.37) | (438.13) | (185.71) | (1,860.16) | |
| Utilities-Water/Electric/Gas/Rubbish | | | (149,514.80) | (153,986.33) | (158,605.92) | (163,364.10) | (69,244.87) | (694,716.03) | |
| Property Taxes (R/E) | | | (118,009.25) | (120,369.43) | (122,776.82) | (125,232.36) | 0.00 | (486,387.86) | |
| **Total Operating Expenses** | | | (337,095.02) | (345,637.41) | (353,937.96) | (362,506.85) | (99,756.41) | (1,498,933.65) | |
| **Net Operating Income** | | | 987,516.73 | 1,016,456.38 | 1,028,266.86 | 1,042,020.43 | 470,354.66 | 4,544,615.06 | |
| | | | | | | | | | |
| Goodwill (FF&E Allowance) | | | (138,726.00) | (115,653.00) | 0.00 | 0.00 | 0.00 | (254,379.00) | |
| Capital Expenditure - Overall Site | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| **Total Capital Expenses** | | | (138,726.00) | (115,653.00) | 0.00 | 0.00 | 0.00 | (254,379.00) | |
| **Less: Payment of Claims** | | | | | | | | | |
| Administrative Claims | $51,650.00 | | (11,650.00) | (10,000.00) | (15,000.00) | (10,000.00) | (5,000.00) | (51,650.00) | |
| Secured Tax Claims Interest | $288,206.07 | 10.00% | (24,532.50) | (19,209.28) | (13,328.64) | (6,832.23) | (770.08) | (64,672.72) | |
| Secured Tax Claims - Principal Paydowns | Amortized | | (50,836.28) | (56,159.51) | (62,040.14) | (68,536.55) | (30,633.58) | (268,206.07) | |
| **Total Administrative & Secured Claims Paid** | | | (87,018.78) | (85,368.78) | (90,368.78) | (85,368.78) | (36,403.66) | (384,528.79) | |
| **Less: Debt Service/Secured Claims** | | | | | | | | | |
| Citizens Business Bank | $8,481,352 | 6.125% | (519,482.78) | (618,403.03) | (618,403.03) | (618,403.03) | (257,667.93) | (2,632,359.82) | 8,106,467.52 |
| DeLoveley Properties | $1,356,667 | 5.00% | (67,833.33) | (67,833.33) | (67,833.33) | (67,833.33) | (28,263.89) | (299,597.21) | 1,356,666.60 |
| Barnust Properties | $1,755,089 | 0.00% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,755,089.00 |
| Evilszer Construction | $407,683 | 0.00% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 407,682.93 |
| **Total Debt Pymts** | $12,000,790 | | (587,316.11) | (686,236.36) | (686,236.36) | (686,236.36) | (285,931.82) | (2,931,957.02) | 11,625,906.05 |
| **Less: Unsecured Claims** | | | | | | | | | |
| Unsecured Claims - Int | $848,352 | 0.00% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| Unsecured Claims - Principa | $848,352 | | (192,079.76) | (192,079.76) | (192,079.76) | (192,079.76) | (80,033.23) | (848,352.29) | 0.00 |
| Unsecured Disputed Claim | $0 | 0.00% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Unsecured Claims Paid** | | | (192,079.76) | (192,079.76) | (192,079.76) | (192,079.76) | (80,033.23) | (848,352.29) | 0.00 |
| **Net Cashflow After Payment of Debt & Claims** | | | (17,623.93) | (62,881.53) | 59,581.95 | 78,335.52 | 67,985.95 | 125,397.95 | 11,625,906.05 |
| Balance Forward at Plan Approval | $848,352 | 0.00% | 64,074.27 | | | | | 64,074.27 | |
| Capital Contribution | | | 0.00 | 43,000.00 | 0.00 | 0.00 | 0.00 | 43,000.00 | |
| **Cumulative Excess Cashflow** | | | 46,450.33 | 26,568.80 | 86,150.75 | 164,486.27 | 232,472.22 | 232,472.22 | |

Section XV(c) states the assumptions and details surrounding the statement of projected cash flow.

On the effective date, the Plan pays Administrative Claims (See Exhibit B-1 attached hereto).

## XI.    FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE

Attached as Exhibit "C" are three types of financial documents, including balance sheets (Exhibit C1) as of December 31st of 2006, 2007 and 2008, Income and Expense statements (Exhibit C2) for the periods of December 31, 2006, 2007, and 2008, Cashflow statements including the most recent twelve-month calendar year (January through December 4, 2009) and all months subsequent thereto (January 2010 to July 2010) (Exhibit C3).

## XI.    ASSETS AND LIABILITIES OF THE ESTATE

### a. Assets

The identity and fair market value of the estate's assets are listed in Exhibit "D" so that the reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the overall worth of the bankruptcy estate.   Whether the Plan proposes to sell any of these assets is discussed in section XVI.

### b. Liabilities

29

Exhibit "E" shows the allowed claims against the estate, claims whose treatment is explained in detail by section IX.

### c. Summary

The fair market value of all assets equals $13,630,309.  The total liabilities equal $13,191,498.47.


### XIII.    TREATMENT OF NONCONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed treatment of their claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  The process by which dissenting classes are forced to abide by the terms of a plan is commonly referred to as "cramdown".  The Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable".  The Code does not define discrimination, but it does provide a minimum definition of "fair and equitable".


The term can mean that secured claimants retain their liens and receive cash payments whose present value equals the value of their security interest.  For example, if a creditor lends the Debtor $100,000 and obtains a security interest in property that is worth only $80,000, the "fair and equitable" requirement means that the claimant is entitled to cash payments whose present value equals $80,000 and not $100,000.  The term means that unsecured claimants

whose claims are not fully satisfied at least know that no claim or
interest that is junior to theirs will receive anything under the
Plan, except where the Debtor is an individual, has elected to
retain property included in the Estate under 11 U.S.C.A. § 1115
(West Supp. 2006) and has satisfied 11 U.S.C.A. § 1129(b)(2)(B)(ii)
(West Supp. 2006).  "Fair and equitable" means that each <u>holder of
an interest</u> must receive the value of such interest or else no
junior interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes against the
Plan, the Plan cannot be confirmed where the Debtor or a class of
interest holders (e.g. shareholders or partners) will receive or
retain any property under the Plan, <u>unless</u> the Plan provides that
the class of general unsecured claims shall be paid in full with
interest.  If a class of interest holders votes against the Plan,
the Plan cannot be confirmed where the Debtor will receive or
retain any property under the Plan, unless the Plan provides that
the class of interest holders shall be paid in full with interest.
These are complex statutory provisions and the preceding paragraphs
do not purport to state or explain all of them.

## XIV.  TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)

The Plan must provide that a non-consenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead.

In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee.  Unsecured creditors generally share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for two reasons.  First, the liquidation value of $10,000,000 is less than its fair market value of $13,552,751 because it assumes that the two tenants who have signed leases will never take occupancy.  The Debtor does not believe that either tenant would have an Administrative claim if they did not take occupancy.  Both leases do contain a termination provision.  Second, in a chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount

32

no more than 25% of the first $5,000 of all moneys disbursed, 10%
on any amounts over $5,000 and up to $50,000, 5% on all amounts
over $50,000 and up to $1,000,000, and such reasonable compensation
no more than 3% of moneys over $1,000,000 (approximately $418,795).

|  |  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|---|
| | Value of Assets | $10,000,000 | $13,552,752 |
| | Administrative Claims | ($51,650) | ($51,650) |
| 1A | Secured Property Tax Claims | ($268,206) | ($268,206) |
| 1B | Citizens Business Bank Claim | ($8,481,352) | ($8,481,352) |
| 1C | DeLovely Properties | ($1,356,667) | ($1,356,667) |
| 1D | Barnust Properties | ($1,755,089) | ($1,755,089) |
| 1E | Evilsizer Construction | ($407,683) | ($407,683) |
| | Chapter 7 Trustee Fee | ($418,795) | $0 |
| | Exemptions | $0 | $0 |
| | Total Available for Distribution to General Unsecured Creditors | ($2,739,442) | $1,232,106 |
| | Unsecured Creditors Receive % of Claim | 0% | 100% |

## XV.  FUTURE DEBTOR

    a.  **Management of Debtor**

        1.   For the past several years, Keith Fey and Greg
Galletly have managed the Debtor.

        2.   Proposed compensation to persons listed above:  The
Managing Members shall serve without bond and shall
receive no compensation for management services
rendered and expenses incurred pursuant to the Plan.

        3.   Qualifications:  Mr. Fey and Mr. Galletly have both