1   Mitchell B. Ludwig (State Bar No. 115903)
    mbl@kpclegal.com
2   Jodi Siegner (State Bar No. 102884)
    jos@kpclegal.com
3   KNAPP, PETERSEN & CLARKE
    550 North Brand Boulevard, Suite1500
4   Glendale, California 91203-1922
    Telephone:  (818) 547-5000
5   Facsimile:  (818) 547-5329

6   Attorneys for Creditor
    GLENDALE CAREER SCHOOLS, INC.
7

8                   UNITED STATES BANKRUPTCY COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  FEY 240 NORTH BRAND LLC, a Limited     )   NO.   2:09-bk-44228-AA
    Liability Company,                     )
12                                         )   Chapter 11
                Debtor.                    )
13                                         )   Date:                    4/7/2010
                                           )   Time:              10:30 a.m.
14                                         )   Ctrm:                       1375
                                           )               255 E. Temple Street
15                                         )                 Los Angeles, CA
                                           )
16                                         )   OBJECTION OF SECURED
                                           )   CREDITOR GCS/LES, A NEVADA
17                                         )   CORPORATION F/K/A GLENDALE
                                           )   CAREER SCHOOLS TO DEBTOR'S
18  ───────────────────────────────────   )   DISCLOSURE STATEMENT

19  TO THE COURT, THE DEBTOR FEY 240 NORTH BRAND LLC, A LIMITED

20  LIABILITY COMPANY. AND TO ALL OTHER INTERESTED PARTIES:

21        Secured Creditor GCS/LES, a Nevada corporation f/k/a Glendale Career Schools[1]

22  ("Glendale") objects to the Debtor FEY 240 NORTH BRAND LLC, a Limited Liability

23  Company's (the "Debtor") proposed disclosure statement on the following grounds:

24

25

26

    ───────────────────────────
27  [1] GCS' original name was Glendale Career Schools, Inc., a Nevada Corporation.  It changed
    its name to GCS/LES. Inc., a Nevada Corporation.   Glendale Career Schools, Inc., and
28  GCS are one and the same entity.

**A.**   **THE DEBTOR HAS NOT PROVIDED SUFFICIENT INFORMATION TO ENABLE GLENDALE TO DETERMINE THE PROBABLE FINANCIAL RESULT OF THE PLAN.**

The purpose of a disclosure statement is to inform equity holders and claimants about the probable financial results of acceptance or rejection of a particular plan. (*In re Aspen Limousine Service, Inc.* 193 B.R. 325(D. Colo. 1996.) The proposed disclosure statement does not meet this standard.

The disclosure statement does not provide Glendale or other creditors any reliable information concerning the "probable" financial results of the plan. Therefore, it is insufficient as a matter of law and approval should be denied.

**1.**   **Pure Speculation**

The Disclosure Statement describes various speculative possibilities. For instance, will NWC Investments lease the additional section of the basement? When will the tenant improvements be completed? How will the Debtor pay for these improvements? Have all City approvals been secured?[2]

Arguably, neither Goodwill Industries nor Southwest College of Medical & Dental Assistants & Practical Nurses ("Southwest") are legal tenants in the space. Glendale currently holds the leasehold interest that the Debtor claims these other tenants possess. How will the Debtor resolve this issue? Isn't Glendale, the holder of the master lease, entitled to the rental income from these leases, not the Debtor?

The Plan cannot work if the rental income remains at its current $29,680 per month. Two of the leases (24 Hour Fitness and Southwest College) will expire within the term of the Plan. While the tenants have options to extend, will they do so? What is the basis to assume the tenants will renew their lease or extend the option? In the current economy, this

---

[2] As explained below, Glendale holds essentially a master lease on all of the space other than the 24 Fitness space. The Debtor did not complete the build outs for Glendale which would have allowed them to occupy the space allegedly because the City would not approve the use being proposed due to parking restrictions.

KNAPP,
PETERSEN
& CLARKE

757714.1 05777/00001

1   is not a sure thing.

2       When the Debtor puts the property, its only material asset, up for sale or attempts to

3   refinance it in fifty-three (53) months, what will it be worth?  Will it be able to sell or

4   refinance the property to pay off secured creditors at that point?  What is the basis for its

5   conclusion that this process will result in payment to all creditors?  What form of adequate

6   protection will be provided to these creditors?

7       **2.**     **Glendale's Claim is Secured by a Deed of Trust**

8       With respect to Glendale's claim, the Debtor lists it as unsecured and disputed.

9   However, it is clearly secured.  The Debtor's reference to it being unsecured is in bad faith

10   and an obvious attempt to superficially comply with deadlines to file a disclosure statement.

11   The Debtor has failed to adequately explain the background and history leading to

12   Glendale's secured status.

13       Glendale entered into a Lease Agreement with Debtor (the "Lease") for new space at

14   240 North Brand Boulevard, Glendale, California (the "Subject Property").  As an

15   inducement to enter into the Lease, the Debtor promised to pay for any holdover premium if

16   they could not provide possession by the date of **February 28, 2005** and a $100,000 late fee

17   if possession was not provided by **May 1, 2005**.  At the time this promise was made,

18   Glendale was negotiating a long term extension of its then-current location at 1015

19   Grandview Boulevard in Glendale.  In order to convince Glendale to sign a new lease with

20   Debtor take the risks of permitting (including a parking exception required from the City of

21   Glendale) and construction in lieu of renewing at its existing location (where Glendale had

22   no such risks), Debtor represented that they had "no intention of getting cute as to what

23   constitutes 'holdover premium;' you tell us what it is, we write you a check."  Accordingly,

24   the parties included these promises in Exhibit C to the original Lease, which provides at

25   Paragraph 9:

26       "If the Possession Date has not occurred on or prior to February 28, 2005,

27       Landlord shall, within ten (10) days after written demand therefore, reimburse

28       Tenant for any holdover rent premium Tenant pays to its Landlord . . . under

KNAPP,
PETERSEN
& CLARKE

-3-

1    its existing lease. . . "

2          As a consequence of this email and their promises, Glendale did not extend its old

3    lease which obligated it to pay a premium for holdover rent to the old landlord.

4          Notwithstanding, Debtor did not timely tender possession prior to February 28,

5    **2005**, nor did it provide possession by May 1, 2005, when the $100,000 late fee (see

6    Paragraph 11 of Exhibit C to the Lease) became immediately due.  Glendale became a

7    holdover tenant at the prior location (1015 Grandview) as of March 1, 2005 and began

8    paying a premium over its then current rent to that landlord.  Glendale then looked to

9    Debtor for reimbursement pursuant to its lease agreement with Debtor.  (This situation

10   lasted over two years while the Debtor danced with the City of Glendale over the parking

11   exception issues.)

12          The subject property was never tendered to Glendale as required under the Lease.

13   Demands for payment of the holdover rent and the late fee were timely made but Debtor

14   failed and refused to make the payments.

15          On May 10, 2007, Glendale made a final demand on Debtor to pay the amounts due

16   and owing under the Lease.   Specifically, demand was made to pay the holdover rent

17   premium and the late fee.  Consequently, on May 15, 2007, (more than two years after the

18   February 28, 2005 deadline) Debtor and Glendale entered into a **Lease Amendment**.  In the

19   Lease Amendment, Debtor *acknowledged its current monetary obligations* to Glendale as a

20   result of the breaches indicated above and further agreed to, *inter alia*, diligently complete

21   construction of the tenant improvements such that Glendale could take possession of the

22   subject premises by no later than **August 30, 2007.**

23          Debtor agreed to secure its present monetary obligation to Glendale with a deed of

24   trust in second position and represented that there was at least $2.0 million in equity.  The

25   Lease Amendment further provided a mechanism to repay Glendale for this monetary

26   obligation in the event that possession was actually tendered.  Glendale was provided an

27   *option* by which it could – **but was not required to** - offset the monetary obligation on a

28   prorated monthly basis capped by an agreed amount against rent due – after possession was

KNAPP,
PETERSEN
& CLARKE

-4-

1   obviously tendered and they moved in – or to foreclose if possession was not tendered.

2       As part of this new arrangement (set forth in Paragraph 8 of the Lease Amendment),

3   Debtor specifically acknowledged and agreed that, as of February 1, 2007, the holdover rent

4   and the late fee, plus interest, was owed by Debtor to Glendale totaling $1,428,999.41.

5       By October 2007, Debtor failed to provide possession, the Deed of Trust, the

6   appraisal or the title information required under the Lease Amendment.  Consequently,

7   Glendale made demand and indicated its intention to file a lawsuit against the Debtor.

8       Significantly, the demand letter outlined Glendale's interpretation of the Lease

9   Amendment with respect to the fact that the monetary obligation was ***immediately*** due and

10  owing.  Debtor did not respond to this letter other than to execute and deliver the subject

11  Deed of Trust and acknowledge that $2,004,412.75 was owed.

12      By February 29, 2008, when neither payment nor possession was tendered, Glendale

13  initiated the present foreclosure.

14      Making matters even worse is the fact that the deed of trust was to be recorded

15  against the subject property in ***second*** position but it is in ***third*** position.  Debtor was also

16  required to provide, at its expense, a title insurance policy insuring the position of the

17  second deed of trust.  None of this occurred.  Debtor was also required to provide an

18  appraisal by an MAI certified appraiser reflecting that there was at least $2.0 million in

19  equity above the amount of the existing first deed of trust.  This too was not provided.

20      As of October 1, 2007, damages to Glendale increased to $2,004,412.75, for the

21  holdover premium, late fee and interest through October 1, 2007.  Interest has continued to

22  accrue since that time.   When additional demands were ignored, Glendale initiated

23  foreclosure.   On the eve of the foreclosure, the Debtor obtained a TRO preventing the sale[3]

24  but the TRO was conditioned on the Debtor posting a $300,000 surety bond.  The Debtor

25

26  [3] The trial court mistakenly assumed that enforcement of the Deed of Trust was conditioned
    on the Debtor tendering possession.  However, since possession was never tendered
27  because the build outs were not completed, the court did not allow Glendale to complete the
    foreclosure.  The trial court later allowed the foreclosure to move forward.
28

KNAPP,
PETERSEN
& CLARKE

757714.1   05777/00001

1   however failed to post the required undertaking; rather, the Debtor filed the first of two

2   Chapter 11 proceedings.  When the first proceeding was dismissed by this court with a 180

3   day bar to refiling, Glendale attempted to complete its foreclosure sale. The Debtor

4   attempted to obtain another TRO from the state court but this time the request was correctly

5   denied.

6       Subsequently, the Debtor and Glendale engaged in sporadic settlement discussions

7   which resulted in Glendale postponing the foreclosure.  No agreement was ever reached

8   with respect to the claim or Glendale's right to foreclose.  At no time, however, has the

9   Debtor ever taken the position that Glendale was unsecured.

10      **3.      Treatment of Creditor's Claims are Unclear at Best**

11      The Debtor states in its disclosure statement that Glendale's claim is disputed, that

12  "whatever portion of the claim that would be allowed would be all due and payable upon

13  the sale or refinance of the building and would not bear interest." Glendale would receive

14  one payment under the plan, on the 53rd month after plan confirmation unless or until it was

15  paid in full.    What amount will this be?  What is the basis to contest the amount?   What

16  form of adequate protection will be given to Glendale to protect it from the loss of its

17  secured position?  What interest rate will be applied?  Where will the funds come from to

18  pay Glendale?

19      Is Glendale's claim being split between secured and unsecured? What is the basis for

20  such allocation when the Debtor states that assets are more than the liabilities?  If so, what

21  is the value of the property? How did the Debtor determine this value?  What will happen

22  to the Plan if Glendale makes the 11 U.S.C. § 1111(b) election?  If it doesn't and its

23  unsecured claim is placed in the Class with other unsecured claims, how will the other

24  unsecured creditors be paid?  What are the terms?

25      Perhaps premature, but as Glendale's over $2,000,000 claim would substantially

26  affect the Debtor's ability to make or meet its commitment to any creditors subordinate to

27  Glendale, the court should consider it and evaluate its impact on the feasibility of the plan.

28  (See *In re Dennis Ponte, Inc. (Brutoco Engineering & Construction Co., Inc. v. Dennis*

KNAPP,
PETERSEN
& CLARKE

757714.1  05777/00001

1   *Ponte, Inc.*, 61 B.R. 296, 14 Bankr.Ct. Dec. 960))

2   **B.**   <u>**CONCLUSION**</u>

3       Approval of the Disclosure Statement should be denied.   Glendale's claim should be

4   determined and the Debtor should be required to provide more detail with respect to the

5   proposed plan.  Because the Disclosure Statement does not provide sufficient information

6   concerning these claims and issues, the Disclosure Statement is not adequate.

7   Dated: March 2009                          KNAPP, PETERSEN & CLARKE

8

9                                               By: _____

10                                                  Mitchell B. Ludwig
                                                    Jodi Siegner
11                                                  Attorneys for Secured Creditor
                                                    GCS/LES, a Nevada corporation f/k/a
12                                                  Glendale Career Schools.,

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KNAPP,
PETERSEN
& CLARKE

757714.1   05777/00001

| | |
|---|---|
| In re:<br>Fey 240 North Brand LLC, A Limited Liability Company<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 2:09-bk-44228-AA |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 550 No. Brand Blvd., 15th Floor, Glendale, CA  91203-1922

A true and correct copy of the foregoing document described as <u>Objection of Secured Creditor GCS/LES, a Nevada Coroporation F/K/A Glendale Career Schools to Debtor's Disclosure Statement</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>March 24, 2010</u>    I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:
Dawn M. Coulson, Attorney for Citizens Business Bank, dcoulson@eyclaw.com
M. Jonathan Hayes, Attorney for M. Jonathan Hayes, jhayes@polarisnet.net
Dare Law, Attorney for US Trustee, dare.law@usdoj.gov
U.S. Trustee, ustpregion16.la.ecf@usdoj.gov
Mitchell B. Ludwig, Attorney for GCS/LEC, Inc., etc., mbl@kpclegal.com

☐ Service information continued on attached page

**II. <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>** (indicate method for each person or entity served):
On <u>March 24, 2010</u>    I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.
Fey 240 North Brand LLC  -  Via US Mail
210 S. Orange Grove
Pasadena, CA  91105-1705

☒ Service information continued on attached page

**III. <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u>** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| <u>March 24, 2010</u> | Cynthia Contreras | |
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                          **F 9013-3.1**

| In re:<br>Fey 240 North Brand LLC, A Limited Liability Company<br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: : 2:09-bk-44228-AA |
|---|---|

## ADDITIONAL SERVICE INFORMATION (if needed):

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA  1911-0326

John Schock
210 Orange Grove, Ste. 200
Pasadena, CA  91105-1705

ABR Concrete Systems
110 N. Richmond Drive, Unit H
Anaheim, CA  92801-6248

Aztec Fire Protection
5121 West Jefferson Blvd.
Los Angeles, CA  90016-3813

Dal Tile Van Nuys
7901 Sepulveda Blvd.
Van Nuys, CA  91405-1011

Dura Painting Company
19341 Caledonia Drive
Riverside, CA  92508-6221

Farmers Insurance
27200 Tourney Road Unit 240
Valencia, CA  91355-4910

KPFF Consulting Engineers
6080 Center Drive, Ste. 300
Los Angeles, CA  900451591

Lobar
1150 N. Central Avenue, Unit 209
Glendale, CA  91202-2506

Malekian and Associates
22550 Honolulu Avenue LA
Montrose, CA  91020

Saiful Bouquet
385 East Colorado Blvd., Ste. 200
Pasadena, CA  91101-1988

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA  94280-0001

Securities & Exchange Commission
5670 Wilshire Avenue, 11th Floor
Los Angeles, CA  90036-5627

Amtech Elevator Services
Dept. LA 21592
Pasadena, CA  91185-0001

Citizens Business Bank
Ted Dondanville
1010 E. Colorado Blvd.
Pasadena, CA  91106-2311

Demmert and Associates
2004 West Mountain Street
Glendale, CA 91201-1249

Electrician Magician
524 E. Glenoaks, Unit D
Glendale, CA  91207-2140

Franchise Tax Board
Bankruptcy Section MS A340
P.O. Box 2952
Sacramento, CA  95812-2952

LA Metro Plumbing
P.O. Box 60921
Pasadena, CA  91116-6921

Los Angeles County Assessor
500 W. Temple Street, Room 225
Los Angeles, CA  90012-2752

Mustang Mechanical Contractors
957 Lawson Street
City of Industry, CA  91748-1121

L.A. County Tax Collector
Bankruptcy Unit
2615 S. Grand
Los Angeles, CA  90007-2608

Stumbaugh and Associates
3303 N. San Fernando Blvd.
Burbank, CA  91504-2531

Archers Lock and Safe
224 W. Colorado Blvd.
Glendale, CA  91204-1350

Crabtree Glass Company
13203 Sherman Way
North Hollywood, CA  91605-4649

Diversified Automation
7372 Walnut Avenue, Ste. Y
Buena Park, CA  90620-1775

Evilsizer Construction Inc.
621 S. Victory Blvd.
Burbank, CA  91502-2424

Interior Experts General Builders
2127 Edwards Avenue
South El Monte, CA  91733-2037

Labor Ready Southwest Inc.
P.O. Box 31001-0257
Pasadena, CA  91110-0001

Los Angeles County Treasurer
& Tax Collector
P.O. Box 54110
Los Angeles, CA  90054-0110

Otis Elevator Company, eta l
Treasury Services
1 Farm Springs
Farmington, CT  06032-2572

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1