FINPLAN 12/01/09

John P. Schock - State Bar No.048632, 052781

Schock & Schock, alc.

210 So. Orange Grove Blvd., Ste 200
Pasadena, CA 91105
Telephone (626)298-6446

Attorney for Debtor



**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re | **Bk. No.** 2:09-bk-44228-AA |
|---|---|
| **FEY 240 NORTH BRAND LLC,** <br>**a Limited Liability Company;** <br><br>Debtor | In a Case Under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq.) <br><br>**FEY 240 NORTH BRAND LLC** <br>**SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING** <u>Proposed</u> **CHAPTER 11 PLAN** <br><br><u>**Disclosure Statement Hearing**</u> <br><br>Date:   July 14, 2010 <br>Time:   10:00 AM <br>Ctrm:   United States Bankruptcy Court-Central District of California, Edward R. Roybal Federal Building & Courthouse, 255 East Temple St., Suite <u>1375</u>, Los Angeles, CA 90012 <br><br><u>**Plan Confirmation Hearing**</u> <br>Complete This Section When Applicable <br>Date: <br>Time: <br>Ctrm:   <u>{Insert Courtroom #}</u> <br>        <u>{Insert Full</u> <br>        <u>Court Address</u> <br><br>        <u>Here}</u> |

2

TABLE OF CONTENTS

I.    INTRODUCTION.................................... 4

II.   GENERAL DISCLAIMER AND VOTING PROCEDURE................... 5

III.  WHO MAY OBJECT TO CONFIRMATION OF THE PLAN................ 6

IV.   WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN................. 6

V.    VOTES NECESSARY TO CONFIRM THE PLAN....................... 11

VI.   INFORMATION REGARDING VOTING IN THIS CASE................. 12

VII.  DESCRIPTION OF DEBTORS PAST & FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING. . . . . . . . . . . . . . . 13

VIII. CRITICAL PLAN PROVISIONS ............................. 16

IX.   DESCRIPTION AND TREATMENT OF CLAIMS....................... 17

X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS........ 33

XI.   FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE..................................... 35

XII.  ASSETS AND LIABILITIES OF THE ESTATE...................... 35

XIII. TREATMENT OF NONCONSENTING CLASSES .................. 36

XIV.  TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)............................ 38

XV.   FUTURE DEBTOR............................................ 39

XVI.  SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS.................................. 42

XVII. BANKRUPTCY PROCEEDINGS ............................... 44

XVIII. TAX CONSEQUENCES OF PLAN ............................ 45

XIX.  EFFECT OF CONFIRMATION OF PLAN............................ 45

XX.   DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN. .47

I. **INTRODUCTION**

On December 4, 2009, **FEY 240 NORTH BRAND LLC** ("Debtor") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code"). The document you are reading is both the Second Amended Plan of Reorganization ("Plan") and the Second Amended Disclosure Statement. Proponent has proposed the Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners and to reorganize the Debtor's business affairs. A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed. The Bankruptcy Court ("Court") has approved the form of this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

The Proponent has reserved **TBD** in Courtroom **TBD** for a hearing to determine whether the Court will confirm the Plan.

Any interested party desiring further information should contact: John P. Schock, Esq., SCHOCK & SCHOCK, 210 South Orange Grove Blvd., Ste 200, Pasadena, CA 91105.

4

## II. GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN. IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

The source of financial data is based on historic operating results and cashflow projections prepared by the Debtor. The information contained in the Disclosure Statement is provided by the Debtor and the Debtor's CPA (Christine Blazey, CPA). (ALL INFORMATION RELIED UPON IN FORMULATING THIS DOCUMENT IS SET FORTH IN THE DECLARATION IN SEE SECTION XX.) ALL REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached exhibits, please vote on the enclosed ballot and return it in the enclosed envelope.

The Proponent has reserved a hearing date for a hearing to determine whether the Court will confirm the Plan. Please refer to Section I above for the specific hearing date. If, after receiving

the ballots, it appears that the Proponent has the requisite number of votes required by the Code, the Proponent will file a motion for an order confirming the Plan.

The Motion shall at least be served on all impaired creditors and partners or shareholders who reject the Plan and on the Office of the United States Trustee. Any opposition to the Motion shall be filed and served on the Proponent no later than fourteen days prior to the hearing date. Failure to oppose the confirmation of the Plan may be deemed consent to the Plan's confirmation.

### III. WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

Any party in interest may object to confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### IV. WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

It requires both an allowed and impaired claim or interest in order to vote either to accept or reject the Plan. A claim is defined by the Code to include a right to payment from the Debtor. An interest represents an ownership stake in the Debtor.

In order to vote a creditor or interest-holder must first have an <u>allowed claim or interest</u>. With the exceptions explained below, a

claim is allowed if proof of the claim or interest is properly filed before any bar date and no party in interest has objected, or if the court has entered an order allowing the claim or interest. Please refer to Section VI below for specific information regarding bar dates in this case.

Under certain circumstances a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed. A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated. As shown below, Exhibit "A" contains a list of secured claims and unsecured claims that are not scheduled as disputed, contingent, or unliquidated.

| Exh A Class | Secured Claims Payment Recipient | Insider Status | Total Owed | Claim Filed |
|---|---|---|---|---|
| 1A | Los Angeles County Assessor | N | $352,795.88 | $339,414.81 |
| 1B | Citizens Business Bank "A" | N | $8,229,328.40 | $8,428,333.31 |
| 1C | Citizens Business Bank "B" | N | $560,000.00 | |
| 1D | DeLovely Properties | N | $1,356,666.60 | |
| 1E | Barnust Properties | Y | $1,755,089.00 | |
| 1F | Evilsizer Construction | N | $407,682.93 | $407,682.93 |

| Exh A | Unsecured Claims Payment Recipient | Insider Status | Total Owed | Claim Filed |
|---|---|---|---|---|
| 2A | ABR Concrete Systems | N | $3,723.60 | $3,723.60 |
| | Acetek Roofing Co | N | $480.00 | |
| | Amtech Elevator Services | N | $2,427.30 | $2,427.30 |
| | AR Painting Inc | N | $5,837.00 | |
| | Archer's Lock & Safe | N | $19,107.99 | |
| | Aztec Fire Protection | N | $5,515.00 | $17,150.00 |
| | Camilo Hernandez | N | $430.70 | |
| | City of Glendale | N | $12,451.74 | |
| | Crabtree Glass Company | N | $7,197.00 | |
| | Crown Disposal | N | $1,977.20 | |
| | Dal Tile Van Nuys | N | $4,840.03 | |
| | Demmert & Assoc | N | $23,600.00 | $23,600.00 |
| | Diversified Automation | N | $19,700.00 | $19,700.00 |
| | Dura Painting Company | N | $10,850.00 | |
| | Electrician Magician | N | $0.00 | |
| | Encore Image, Inc | N | $460.95 | |
| | Franchise Tax Board | N | $2,211.09 | $4,895.02 |
| | Francisco Hernandez | N | $1,805.00 | |
| | Golden Eagle Insurance | N | $626.00 | $626.00 |
| | Hampton Floor Covering | N | $8,612.25 | |
| | Interior Experts General Bldrs | N | $42,221.93 | $50,576.35 |
| | KPFF Consulting Engineers | N | $5,330.70 | $37,964.00 |
| | Labor Ready Southwest Inc | N | $5,701.95 | |
| | LA Metro Plumbing | N | $21,090.00 | |
| | Mustang Mechanical Contractors | N | $10,089.82 | $10,089.82 |
| | Roberto Morales | N | $5,000.00 | |
| | Stumbaugh & Associates | N | $12,577.00 | $12,577.00 |
| | Zero & Associates | N | $850.00 | |
| | Doug Neuman | N | $84,148.11 | |
| | Studley | N | $183,100.00 | |
| 2B | Lobar Properties | Y | $235,887.89 | |
| | Dorn Platz | Y | $102,174.02 | |
| 2D | **Security Deposits** | - | | |
| | SouthWest College | N | $16,000.00 | |
| | NWC Investments | N | $6,500.00 | |

Similarly, an interest is deemed allowed if it is shown on the list of equity security holders filed by the Debtor with the court and is not scheduled as disputed.

In order to vote, an allowed claim or interest must also be impaired by the Plan.

<u>Impaired creditors</u> include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment.  The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the maturity of such claim as it existed before default, compensates for any damages incurred as a result of reasonable reliance upon the acceleration clause, and (except for a default arising from failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365(b)(1)(A) (West Supp. 2006)) compensates for any actual pecuniary loss incurred as a result of any failure to perform a non-monetary obligation.

9

<u>Impaired interest-holders</u> include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the interest holder.

There are also some types of claims that the Code requires be treated a certain way. For that reason they are considered unimpaired and therefore holders of these claims cannot vote.

To summarize, there are two prerequisites to voting: a claim or interest must be both allowed and impaired under the Plan.

If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed to have accepted the Plan). Impaired claims or interests are placed in classes and it is the class that must accept the Plan. Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of the Plan. Even if all classes do not vote in favor of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code. Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

10

Section IX sets forth which claims are in which class. Secured claims are placed in separate classes from unsecured claims. Fed. R. Bank. P. 3018(d) provides: "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a plan in both capacities."

### V.    VOTES NECESSARY TO CONFIRM THE PLAN

The Court may confirm the Plan if at least one non-insider impaired class of claims has accepted and certain statutory requirements are met as to both non-consenting members within a consenting class and as to dissenting classes. A class of claims has accepted the Plan when more than one-half in number and at least two-thirds in amount of the allowed claims actually voting, vote in favor of the Plan. A class of interests has accepted the Plan when at least two-thirds in amount of the allowed interests of such class actually voting have accepted it. It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate. That is the subject of any upcoming confirmation hearing.

## VI. INFORMATION REGARDING VOTING IN THIS CASE

The bar date for filing a proof of claim in this case was March 30, 2010. The bar date for objecting to claims was April 14, 2010. The Debtor received sixteen (16) proofs of claim. The undisputed amounts claimed are reflected in Exhibit "A". In addition, an amount was claimed by Glendale Career Schools Inc which is in dispute and an amount was claimed by Goodwill which will be paid in accordance with the terms of their lease.

In this case the Proponent believes that classes 1A,1B,1C,1D,1F,2A and 3 are impaired and therefore entitled to vote. Class 4 is unimpaired and therefore does not vote. A party that disputes the Proponent's characterization of its claim or interest as unimpaired may request a finding of impairment from the Court in order to obtain the right to vote. Class 1E as well as Class 2B unsecured creditors Lobar Properties and Dorn Platz, are not affiliates of the Debtor and there is no common ownership between the Debtor and these entities. They may be considered insiders because of overlapping control and may not be entitled to vote.

Ballots must be received by the Proponent, addressed to John P. Schock, SCHOCK & SCHOCK, 210 South Orange Grove Blvd., Pasadena, CA 91105 by TBD.

**VII. DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING**

The Debtor is a Limited Liability Company. The Debtor conducted 100% of its business activity in Glendale, California since 2000. What follows is a brief summary of the dates and circumstances that led Debtor to file bankruptcy.

On November 16, 2009 Citizens Business Bank filed a Notice of Default. That filing precipitated the Chapter 11 filing. A Motion for Order Appointing Receiver and Preliminary Injunction was filed by Citizens Business Bank and granted December 4, 2009, after the filing of this matter. The filing of the Bankruptcy case imposed the Automatic Stay on this action.

What follows is a brief description of the Debtor's business and future business plans. Further details relating to the Debtor's financial condition and post-confirmation operation of the Debtor are found in sections X, XI, XIII, XVI, and XV.

The Debtor is in the business of Property Ownership. The Debtor currently owns the 55,000 square foot 3-story commercial building

13

located at 240 North Brand Blvd. in the business district of Glendale, California.  The building is currently leased to three tenants as follows:

a) **24 Hour Fitness** - Triple Net 20 year Lease for 18,000 sq ft on the 2nd floor commenced December 1, 1994 and terminates November 30, 2014, with the option to extend for two (2) additional five (5) year terms based on fair market rent for comparable space for a fitness center.  Current rent is $25,458.39 per month with an increase to $26,222.14 scheduled for December 2010.  In addition the Tenant pays monthly alteration rent of $4,221.31. The current rent is $1.41 per square foot.  The market rent for this space would be approximately $2.00 per square foot.  This Club is very successful and the Debtor anticipates the Tenant will exercise the options to extend and will have a significant increase in rent per square foot.

b) **Goodwill Industries** - Triple Net 10 year Lease for 18,500 sq ft on the 1st floor commenced June 11, 2010 and terminates June 30, 2020, with the option to extend for two (2) additional five (5) year terms with rent at $41,440 per month for Years 11 through 15, and $46,412.80 per month for Years 16 through 20.  Current rent is $37,000 per month through Year 10 of the term.  The lease provided the Tenant

14

with a Fixture and Equipment Allowance ("FF&E") rent credit of $11,560 per month which will be a credit against the base rent for the first 24 months of the lease.

c) **Southwest College of Medical & Dental Assistants & Practical Nurses and its affiliate NWC Investments, LLC** have signed a 2 1/2 year FSG lease for a total of 15,912 square feet in the basement commencing August 1, 2010 and terminating January 31, 2013, with the option to extend for two (2) additional three (3) year terms with annual cost of living increases. Current rent is $22,500 per month for the term with a monthly parking credit of $2,500 and a 2010 base year. The Landlord's work is complete except for punch list items and the final fire life safety sign-off. The Landlord anticipates that the Tenant will take possession of the space on or around July 10, 2010. The lease term will commence on or about August 1, 2010.

With completion of the tenant improvements, the base rental income of the property will increase from its existing $29,680 to approximately $89,180 of rental income per month. In addition, the NNN tenants pay their share of operating expenses pursuant to the leases.

15

**VIII.    CRITICAL PLAN PROVISIONS**

Listed below are the sources of money earmarked to pay creditors and interest-holders. The Debtor proposes to pay all allowed claims in full.

a. Future earnings from continued operations of the Debtor. During the life of the Plan, the Debtor will use its rental income to repay creditors.

b. The Debtor anticipates refinancing or selling the property towards the end of the Plan to pay any outstanding amounts then owed to Secured or Unsecured Creditors.

c. If the property is sold during the Plan period, the Debtor anticipates that all secured and unsecured creditors will be paid in full from the sales proceeds.

Most likely, undisputed general unsecured creditors can expect payment in full over the life of the Plan as follows:

a. Beginning in the 1st month after Plan confirmation, general unsecured creditors would receive their prorata share of $4,979.64 as their 1st payment and continuing through Year 2 of the Plan,

b. Beginning with the 25th month and thereafter in 26

    additional equal monthly payments of their prorata share of $14,709.65 per month;

c. through the 50th month of the plan unless or until the claim is paid in full. This payment plan is designed to step up once the Debtor no longer is obligated to pay the FF&E payment to Goodwill.

## IX. DESCRIPTION AND TREATMENT OF CLAIMS

### a. Overview of Plan Payments

Below is a summary of who gets paid what and when and from what source. The identity of members within a particular class is explained beginning on the next page. The second column lists two amounts: first, the amount of each payment, or if only one is to be made, then that amount; second, the total amount that will be paid over the term of the Plan; and third, if applicable, the total amount paid by refinancing or sale proceeds at the end of the Plan. The "Payment Due Date" column states the frequency with which payments will be made and the starting and ending dates. Look at the starting date to figure out who will be paid before and after you and in what amount. The "Source of Payment" column describes the expected source of payment. Further details regarding the source of payment are found in sections X and XI.

17

The timing of payments to many creditors is determined by the "Effective Date". Administrative claims, unless otherwise stated, must be paid by the Effective Date. The timing of payments to impaired creditors is measured from the Effective Date. In this case, the Effective Date is **October 1, 2010.**

All claims listed below are undisputed.

18