Dawn M. Coulson, State Bar No. 154085
dcoulson@eyclaw.com
Michael B. Wilson, State Bar No. 233633
mwilson@eyclaw.com
**EPPS YONG & COULSON, LLP**
333 S. Hope Street, 35th Floor
Los Angeles, California 90071
(213) 613-2340 - Telephone
(213) 613-2344 - Facsimile

Attorneys for Creditor CITIZENS BUSINESS
BANK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:09-bk-44228-AA |
| FEY 240 NORTH BRAND, LLC, | Chapter 11 |
| Debtor | **CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC** |
| | **Date:** August 11, 2010<br>**Time:** 10:30 a.m.<br>**Ctrm:** 1382 |

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

3221-006

i

TABLE OF CONTENTS

I.    INTRO...................................................................................................................1

II.    FACTUAL BACKGROUND..............................................................................1

    A.  The Debtor and its Property Manager...........................................................1

    B.  The Loan History and Assignments of Leases..............................................2

    C.  The Debtor's Default, CBB's Efforts To Collect And The Superior Court
        Action ............................................................................................................3

    D.   Relevant Bankruptcy Proceedings...............................................................3

III.    OBJECTION TO SECOND AMENDED DISCLOSURE STATEMENT
       DESCRIBING PROPOSED CHAPTER 11 PLAN.........................................4

    A.  The Debtor May Not File or Pursue Its Disclosure Statement Without
        Representation by Counsel.............................................................................4

    B.  The Second Amended Disclosure Statement Violates the Adequate Disclosure
        Requirement of 11 U.S.C. Section 1125(b)..................................................5

        1.    The Financial Disclosures In the Debtor's Second Amended
            Disclosure Statement Are Inaccurate And Misleading...........................6

            a.    The Second Amended Disclosure Statement Does Not
                Provide Adequate Information Regarding the Fair Market
                Value of Fey 240's Assets and Conflicts With The Debtor's
                Appraiser's Assessment..........................................................7

            b.    The Second Amended Disclosure Statement Does Not
                Provide Adequate Information Regarding its Liquidation
                Analysis and Cap Rate.............................................................8

            c.    The Second Amended Disclosure Statement Does Not
                Provide Adequate Information Regarding The Proposed
                Sale or Refinance of The Debtor's Property...........................9

            d.    The Second Amended Disclosure Statement Misstates The
                Interest Rate Due On The Evilsizer Mechanic's Lien...........10

            e.    The Second Amended Disclosure Statement Does Not
                Provide Adequate Information Regarding Glendale Career
                School's Claim.......................................................................10

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL. (213) 613-2340 • FAX (213) 613-2344

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

2.    The Second Amended Disclosure Statement Contains Material Omissions And Misstatements Of Fact......................................................11

   a.    The Second Amended Disclosure Statement Ignores the Court's Order Denying the Debtor's Application to Employ Dorn Platz Management, Inc...............................................11

   b.    The Second Amended Disclosure Statement Does Not Provide Adequate Information Regarding Post-Confirmation Management......................................................11

   c.    The Second Amended Disclosure Statement Does Not Provide Adequate Information On The List Of Insider Claims......................................................12

   d.    The Second Amended Disclosure Statement Does Not Discuss The Fact That Glendale Career Schools Has A Lien On The Debtor's Property......................................................13

C.    FEY 240's Chapter 11 Plan is Fatally Flawed And Therefore Non-Confirmable......................................................13

   1.    The Plan Is Not Feasible......................................................13

      a.    The Plan Is Not Feasible Because It Proposes to Manage The Debtor's Property Using a Suspended Corporation........14

   2.    The Plan Does Not Meet the "Cram-Down" Requirements of 11 U.S.C. Section 1129(a) And Cannot Meet the "Fair and Equitable" Requirements of 11 U.S.C. Section 1129(b)......................................................15

      a.    The Plan's Proposed Payment Schedule Is Neither Fair or Equitable......................................................15

      b.    The Plan Unfairly Shifts The Risk of Failure to CBB While Retaining the Potential Benefits For Fey 240's Equity Holders......................................................17

   3.    The Plan Misclassifies Claims......................................................18

D.    The Second Amended Disclosure Statement Provides Inaccurate Information......................................................19

3221-006

iii

1.     There Is No Cash Collateral Stipulation In Place and No Cash
Collateral Motion Pending......................................................................19

2.     The Second Amended Disclosure Statement Provides
Inaccurate Information as to the Claim of Evilsizer
Construction...........................................................................................19

3.     The Second Amended Disclosure Statement Provides Inaccurate
Information as to the Status of the Debtor's Application to Employ
Dorn Platz............................................................................................20

IV.     CONCLUSION.............................................................................................20

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH
BRAND, LLC

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Adana mortgage Bankers* 14 B.R. 29 (Bankr. N.D. Ga 1981).....................................................5

*In re Allied Gaming Mgmt.*, 209 B.R. 201 (Bankr. W.D. La. 1997)………………………….....13

*In re Bonner Mall Partnership*, 2 F.3d 899 (9th Cir. 1993)...............................................18

*In re Brotby*, 303 B.R. 177 (B.A.P. 9th Cir. 2003)……………………………………………………….19

*In re Cardinal Congregate I,* 121 B.R. 760 (Bankr. S.D. Ohio 1990)...............................6

*In re Commercial Western Finance Corp.*, 761 F.2d 1329 (9th Cir. 1989).....………………….18

*In re Consul Restaurant Corp.,* 146 B.R. 979 (Bankr. D. Minn. 1992).........................17

*In re Dakota Rail, Inc.,* 104 B.R. 138 (Bankr. D. Minn. 1984).......................................6

*In re Diversified Investors Fund XVII*, 91 B.R. 559 (Bankr. CD CA 1988)………………….8

*In re Holthoff*, 58 B.R. 216 (BC ED AK 1985)…………………………......................18

*In re Main Street AC, Inc.,* 234 B.R. 771 (Bank. N.D. Cal. 1999).....................................5

*In re Malek*, 35 B.R. 443 (Bankr. ED Mich. 1983).........................................................6

*In re Metrocraft Publishing Services, Inc.,* 39 B.R. 567 (Bankr. N.D. Ga 1984)............................5

*In re Phoenix Petroleum Co.*, 278 B.R. 385 (Bankr. E.D. Pa. 2001)……………………….....5

*In re Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir. 1985)..........................................13

*In re Tuscon Self Storage, Inc.*, 166 B.R. 892 (9th Cir. BAP 1994)…………………………....18

*Matter of Martin's Point Ltd. Partnership,* 12 B.R. 721 (BC ND GA 1981)…………………….18

*Sandy Ridge Dev. Corp. v. Louisiana National Bank* 881 F.2d 1346 (5th Cir. 1989)....................17

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL. (213) 613-2340 • FAX (213) 613-2344

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH
BRAND, LLC

**FEDERAL STATUTES**

11 U.S.C. § 1122……………………………………………………...................18

11 U.S.C. § 1125……………………………………………………...............5, 13

11 U.S.C. § 1129………………………………………………....13, 15, 17, 18

**LOCAL BANKRUPTCY RULES**

Bankruptcy Rule § 9011-2.........................................................................4

**STATE STATUTES**

Civil Code § 2938…………………………………………………….....2

Taxation & Revenue Code § 23302………………………………….......14

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH
BRAND, LLC

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL. (213) 613-2340 • FAX (213) 613-2344

## I.    INTRO

Citizens Business Bank ("CBB"), a secured creditor and party-in-interest herein objects to the Second Amended Disclosure Statement ("SADS") and Proposed Chapter 11 Reorganization Plan submitted by Debtor FEY 240 North Brand, LLC ("FEY 240" or "Debtor") on the grounds that the Debtor, currently unrepresented by counsel, may not file any document with this Court except an Application to Employ Counsel pursuant to the Local Bankruptcy Rules.  CBB further objects on the grounds that Second Amended Disclosure Statement contains provisions in direct contradiction to recent orders of this Court; it contains inadequate information to allow a hypothetical investor to make an informed decision; and it contains incorrect and misleading statements.  As will be shown herein, the Second Amended Disclosure Statement lacks sufficient information regarding, among other things, the calculation of the capitalization rate used to value the Debtor's assets and the unexplained increase in the Debtor's estimation of the fair market value of its property, especially in the current economy of decreasing values.   Furthermore, CBB objects to the Debtor's Second Amended Disclosure Statement on the grounds that the Debtor's proposed plan of reorganization is non-confirmable because the Second Amended Disclosure Statement contains misinformation and misclassifies claims, fails to satisfy the new value exception, fails to proffer terms for an "effective reorganization," and is not feasible.

## II.    FACTUAL BACKGROUND

### A.  The Debtor and its Property Manager

FEY 240 NORTH BRAND, LLC, is, and at all times relevant hereto was, a California limited liability company.  FEY 240 is a single asset real estate special purpose entity that currently owns the 55,000 square foot 3-story commercial building located at 240 North Brand Blvd. in Glendale, CA. (SADS, pp. 13-14.)

FEY 240's property was previously managed by Dorn Platz Management, Inc. ("Dorn Platz").  On May 12, 2010, this Court issued an Order denying the Debtor's application to employ Dorn Platz, in part because Dorn Platz is not a disinterested person.  (*See Order Denying Application for Authority to Employ Management Company,* filed in this action on May 12, 2010, Docket # 57.)   Although FEY 240's application to employ Dorn Platz has been denied, the Second Amended Disclosure Statement continues to propose management fees to Dorn Platz and proposes to assume the Debtor's property management agreement with Dorn-Platz. (*See* SADS, p.

3221-006

1

40; 42.)  Furthermore, as of the date of this filing, Dorn Platz remains a suspended corporation as designated by the California Secretary of State and is therefore currently not qualified to do business in California. (Wilson Decl., ¶ 2, Exh. 1.)

        B.   The Loan History and Assignments of Leases

        On or about September 27, 2005, CBB entered into a construction loan agreement ("Loan Agreement") with FEY 240 North Brand, LLC through which FEY 240 borrowed from CBB the principal amount of nine million dollars ($9,000,000.00).   The subject loan and FEY 240's promise to re-pay is evidenced by the Loan Agreement and Promissory Note ("Note") dated September 27, 2005, and is secured by, among other things, a first lien on all real property of FEY 240 granted by a Construction Deed of Trust.  The Loan Agreement, Promissory Note, and all of the debtor's obligations thereunder and in connection or in relation therewith are are collectively referred to as the "Loan."  True and correction copies of the Loan Agreement,  Note, and Deed of Trust are attached to the Declaration of Verona K. Chion in Support of CBB's Opposition to the Disclosure Statement filed in this matter on March 24, 2010, Docket # 42 ("Chion Decl.") as Exhibits A and B.

        As collateral for the Loan, FEY 240 executed and delivered to CBB an Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits (Fee) (hereinafter the "Assignment of Leases") encumbering the real property commonly known as 240 North Brand Blvd., City of Glendale, California.  Pursuant to the Assignment of Leases, FEY 240 assigned to CBB all of FEY 240's rights, title, and interest in all leases, rental agreements, and tenant improvement construction and reimbursement agreement ('Leases) in favor of FEY 240 or FEY 240's predecessors or successors in interest, in regard to the 240 North Brand Blvd. property, that is more particularly and legally described in the Assignment of Leases; and further assigned to CBB all of FEY 240's rights, title and interests in all lease guaranties in regard to the Leases ("Lease Guaranties"), and all rents, issues and profits of the 240 North Brand Blvd. Propety, including the cash proceeds thereof, to the full extent provided by California Civil Code § 2938. (See Chion Decl. Exh. C.) With regard to FEY 240's assignment of all leases to CBB, Borrower,

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL. (213) 613-2340 • FAX (213) 613-2344

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

CBB and tenants Glendale Career Schools, Inc. and 24 Hour Fitness USA, Inc. entered into Subordination, Nondisturbance and Attornment Agreements whereby the tenants' leases were and are, among other things, subordinated to CBB's lien on the Property. (See Chion Decl. Exhs D, E.)

As further collateral for the Loan, FEY 240 executed a Security Agreement (Assignment of Deposit Account), which assigns FEY 240's rights, title and interest to CBB in and to Borrower's deposit accounts with CBB.  (See Chion Decl. Exh. F.)

The maturity date of the Loan is November 30, 2014.  Per the terms of the Loan, Borrower is and was obligated to make monthly principal and interest payments to CBB in amounts set forth in the Note.

C.  The Debtor's Default, CBB's Efforts To Collect, And The Superior Court Action

Fey 240 is and has been in default under the Loan for failure to make payments as due under the Note and Loan Agreement. The Debtor has been in default under the terms of the Loan since October 2009.  Due to the Debtor's default, CBB was forced to file a state court action, Case No.: EC 051431 in Los Angeles Superior Court, North Central District, seeking payment on the loan and appointment of a Receiver to collect, manage and administer the rents, issues, accounts and profits of Fey 240 and the cash proceeds thereof.  CBB's Motion for Appointment of a Receiver was granted on December 4, 2009.  The same day, Fey 240 filed the instant bankruptcy case, staying the Superior Court action and effectively thwarting the appointment of the Receiver.

D.  Relevant Bankruptcy Proceedings

At the status conference held on February 17, 2010, the Court set the deadline for Fey 240 to file its Disclosure Statement and Plan of Reorganization as no later than March 1, 2010. (*See Order on Court's Case Status Conference Setting Deadlines for Filing Disclosure Statement and Plan of Reorganization*, docket number 31, filed on February 26, 2010.)   The Court also ordered that the Debtor must have its Disclosure Statement approved no later than May 5, 2010 and have its Plan of Reorganization confirmed no later than July 7, 2010. (Id.)  The Debtor has obviously failed to meet these Court deadlines; in fact, all the deadlines set by the Court in this matter have passed without the Debtor meeting even one.

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

On May 12, 2010, this Court entered an order denying the Debtor's application to employ attorney John P. Shock and an order denying the Debtor's application to employ Dorn-Platz Management, Inc. ("Dorn Platz") as its management company. The Debtor filed a second, almost identical, application to employ attorney John P. Schock on July 7, 2010. As of the date of this filing, the Debtor's Second Application for Authority to Employ Counsel has been opposed by both the U.S. Trustee and CBB. Both oppositions cite Mr. Schock's conflicts of interest and the fact that he is not a disinterested person as required by the bankruptcy code. (*See* bankruptcy docket numbers 88 and 89, both filed on July 23, 2010.)

III.    OBJECTION TO SECOND AMENDED DISCLOSURE STATEMENT
DESCRIBING PROPOSED CHAPTER 11 PLAN

A.    The Debtor May Not File or Pursue Its Disclosure Statement Without
Representation by Counsel

Local Bankruptcy Rule 9011-2(a) states, in its entirety:

**Corporation, Partnership, Unincorporated Association, or Trust.** A

corporation, a partnership including a limited liability partnership, a limited

liability company, or any other unincorporated association, or a trust may not file a

petition or otherwise appear without counsel in any case or proceeding, except that

it may file a proof of claim, file or appear in support of an application for

professional compensation, or file a reaffirmation agreement, if signed by an

authorized representative of the entity.)

(LBR 9011-2(a).)

As detailed above, Fey 240's application to employ attorney John Schock was denied by this Court on May 12, 2010. As is also detailed above, Fey 240's second application to employ Mr. Schock is opposed by the U.S. Trustee and CBB on the grounds that Mr. Schock is not a disinterested party as is required under the bankruptcy code. As such, and pursuant to the local bankruptcy rules, Fey 240 may not file or appear in this proceeding until it retains new counsel. CBB therefore objects to Fey 240's Second Amended Disclosure Statement on the grounds that it

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

1  was filed by an unrepresented limited liability company in contravention of the Local Bankruptcy

2  Rules.

3      B.  The Second Amended Disclosure Statement Violates the Adequate Disclosure

4          Requirement of 11 U.S.C. Section 1125(b)

5  11 USC § 1125(b) states, in pertinent part:

6          An acceptance or rejection of a plan may not be solicited after the

7      commencement of the case under this title from a holder of a claim or interest with

8      respect to such claim or interest, unless, at the time of or before such solicitation,

9      there is transmitted to such holder the plan or a summary of the plan, and a written

10     disclosure statement approved, after notice and a hearing, by the court as containing

11     adequate information.

12 (11 U.S.C. § 1125(b).)  "Adequate information" is defined as: information of a kind, and in

13 sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor

14 and the condition of the debtor's books and records, including a discussion of the potential

15 material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a

16 hypothetical investor typical of the holders of claims or interests in the case, that would enable

17 such a hypothetical investor of the relevant class to make an informed judgment about the plan.

18 (11 U.S.C. § 1125(a); *In re Phoenix Petroleum Co.* (Bankr. E.D. Pa. 2001) 278 B.R. 385, 392.)

19 Where, as here, a disclosure statement fails to provide information material to the preferred plan,

20 courts will deny approval of the disclosure statement. (*See, e.g., In re Main Street AC, Inc.* (Bankr.

21 N.D. Cal. 1999) 234 B.R. 771 (disclosure statement denied for failure to provide sufficient

22 information concerning financial information of debtor's acquisition); *In re Metrocraft Publishing

23 Services, Inc.* (Bankr. N.D. Ga 1984) 39 B.R. 567, 569-581 (approval denied where disclosure

24 statement omitted information relating to value of debtor's fixtures and equipment, amount of

25 unsecured claims, ability to collect accounts receivable, and estimated return to creditors under

26 Chapter 7 liquidation);  *In re Adana mortgage Bankers* (Bankr. N.D. Ga 1981)14 B.R. 29 (plan

27 deemed inadequate for failure to disclose financial and other information relating to risks to

28 creditors under plan).)

Here, FEY 240 <u>for the third time</u> fails to provide adequate information as is required under

the bankruptcy code.  As will be shown herein, the flaws in the Debtor's Second Amended

Disclosure Statement are not limited to one area and are not susceptible to easy correction.

EPPS YOUNG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL. (213) 613-2340 • FAX (213) 613-2344

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH
BRAND, LLC

Instead, the flaws are so pervasive that they combine to create a Second Amended Disclosure Statement that is essentially without worth.  The Second Amended Disclosure Statement should, therefore, be rejected in its entirety. (*See In re: Cardinal Congregate I* (Bankr. S.D. Ohio 1990) 121 B.R. 760, 766-767 ("[w]here inaccuracies are so numerous or significant that creditors or interest holders can no longer make an informed judgment about whether to accept or reject the proposed plan of reorganization, approval of the Disclosure Statement must be denied.").)

        1.    The Financial Disclosures In the Debtor's Second Amended
            Disclosure Statement Are Inaccurate And Misleading

It is axiomatic that adequate financial disclosure is critical to any creditor's reasoned and intelligent consideration of a plan of reorganization.  (*See In re Dakota Rail, Inc.* (Bankr. D. Minn. 1984) 104 B.R. 138, 142.)  Adequate financial disclosure should, therefore, provide detailed and accurate information regarding the projected finances over the life of the Plan, together with details of the Debtor's pre-petition finances, the financial difficulties precipitating the filing of its bankruptcy petition and its current financial status and current finances.

More importantly, a Disclosure Statement must provide a projection of post-confirmation operations together with all underlying assumptions and supporting evidence.

    The Debtor should provide the projection of operations subsequent to
    confirmation so that the Court may determine the feasibility of the plan.
    <u>The Debtor is required to make a full, clear, and complete disclosure of all
    underlying assumptions</u>.

(*In re Malek* (Bankr. ED Mich. 1983) 35 B.R. 443, 444 (emphasis added).)

Fey 240's Second Amended Disclosure Statement fails to provide the necessary level of financial disclosure.  The fair market value of the Debtor's property is overstated, the liquidation analysis and cap rate are provided with no supporting documentation or evidence, and essential facts affecting the Debtor's post-confirmation operation are either ignored or misstated.

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL. (213) 613-2340 • FAX (213) 613-2344

a.    The Second Amended Disclosure Statement Does Not Provide Adequate Information Regarding the Fair Market Value of Fey 240's Assets and Conflicts With The Debtor's Appraiser's Assessment

Exhibit D to the Amended Disclosure Statement is a list the assets of FEY 240 with its fair market value. (SADS 57.)  FEY 240 states that it determined the fair market value is based on the net operating income for year 1 of the plan at a 7% cap rate. (SADS 55.)  The Debtor's original Disclosure Statement stated that the Fair Market Value was determined by the net operating income for year 2 of the plan at a 7.5% cap rate. (DS 50.)  The Debtor states in its Amended Disclosure Statement that the cap rate "is based on conversations the Debtor has had with Brokers and appraisers active in the market that are appropriate for a fully occupied building and this type of location," just as it stated in the original Disclosure Statement.  (SADS 35-36.)  No other explanation or justification is offered for the change in the cap rate from 7.5 to 7 percent and no other explanation or justification is offered for the Debtor's change from year 2 to year 1; it is noted, however that the changes increase the estimated value of the Debtor's single asset by $625,114.00.  Adequate information sufficient to allow a hypothetical investor to determine the feasibility of the proposed plan should include, at a minimum, the date of valuation and the reason for the choice of date, and the documents relied upon to produce the figure in Exhibit D. Furthermore, no explanation other than the Debtor's conversations is given as to the choice of the 7% cap rate, especially given the change from the 7.5% cap rate in the original Disclosure Statement.  Each of these pieces of information is necessary for any hypothetical investor, and CBB, to evaluate the feasibility of the proposed plan.

In addition, on July 16, 2010, Fey 240 filed an opposition to CBB's Motion for Relief from Stay with an appraisal valuing its property at $12,000,000.00 and using a cap rate of 7.5%. (*See Response to Motion for Order to Terminate, Annul, Modify or Condition the Automatic Stay*, docket no. 82.)  This is in direct conflict with the Debtor's proposed 7% cap rate and in direct conflict with the Debtor's "fair market value."  Taking the three Disclosure Statements filed by the Debtor in this matter, it is evident that the "fair market value" arrived at by the Debtor is pure speculation; the "fair market value" of the Debtor's property in each progressive Disclosure Statement has gotten higher, but all are ostensibly based upon the exact same information:

| Disclosure Statement | Fair Market Value | Cap Rate |
|---|---|---|
| Original Disclosure Statement (filed February 24, 2010) | $13,630,309.00 | 7.5% |
| First Amended Disclosure Statement (filed May 14, 2010) | $14,189,953.00 | 7% |
| Second Amended Disclosure Statement (filed July 6, 2010) | $14,255,423.00 | 7% |

Given the Debtor's continuing projections of an increase in value of its property over a span of very few months and given the substantial difference in fair market value as projected by the Debtor versus as projected by the Debtor's appraiser, CBB submits that more information is necessary for any hypothetical investor, and CBB, to evaluate the feasibility of the proposed plan.

        b.    The Second Amended Disclosure Statement Does Not Provide Adequate Information Regarding its Liquidation Analysis and Cap Rate

An accurate liquidation analysis is essential to enable creditors to compare their recovery under a Chapter 7 liquidation to their recovery under the proposed Chapter 11 Plan.  (*In re Diversified Investors Fund XVII* (BC CD CA 1988) 91 B.R.  559, 561.)  FEY 240's liquidation analysis provides a cap rate of 9%, vastly different than the 7% rate in other portions of the SADS, resulting in a value for the building that is drastically lower than otherwise noted.  The Amended Disclosure Statement reduces the liquidation value of the building by over three million dollars again "[b]ased upon the discussions the Debtor has had with brokers and appraises . . ." (SADS 39.)  As is noted above, the Debtor's analysis of cap rates is unsupported by any evidence; the Debtor's manager has provided no basis upon which this court can evaluate his competency to make an estimation of cap rates.  As is also noted above, the Debtor's cap rates are at odds with its own appraiser's rates.  The liquidation analysis is a crucial figure necessary for a creditor to evaluate its treatment under the plan and its alternatives.  Without information that corroborates the accuracy of FEY 240's figures, CBB and the other creditors are left to simply trust the figures and projections supplied by FEY 240, which numbers have already been shown to be unreliable.

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL. (213) 613-2340 • FAX (213) 613-2344

3221-006

8

Detailed, accurate, and verifiable figures are the sine qua non of an informed financial decision. This Second Amended Disclosure Statement therefore does not provide adequate information to allow creditors to make an informed decision.

c.    The Second Amended Disclosure Statement Does Not Provide Adequate Information Regarding The Proposed Sale or Refinance of The Debtor's Property

The Second Amended Disclosure Statement proposes a five year plan, at the end of which the Debtor will either refinance or sell the property to pay any outstanding amounts then owed to secured or unsecured creditors. (*See* SADS 16.)  Key information regarding this proposed sale or refinance is missing, however.  The plan states that, at the end of the plan term, there will be unpaid balances due to creditors as follows:

| Creditor | Unpaid Balance At End Of Plan Term |
|---|---|
| Citizens Business Bank "A" Loan | $7,947,377.43 |
| Citizens Business Bank "B" Loan | $543,927.56 |
| Delovely Properties | $1,356,666.60 |
| Barnust Properties | $1,755,089.00 |
| Evilsizer Construction | $207,682.93 |
| Lobar Properties & Dorn Platz | $338,061.91 |
| **Total:** | **$12,148,805.43** |

Thus, the Debtor proposes to pay, in one lump sum at the end of the plan period, a total of $12,148,805.43, <u>not including</u> any costs of sale or refinance. (*See* SADS 19, Exh. F.)  The Second Amended Disclosure Statement provides no meaningful analysis of the Debtor's ability to refinance, the term of any proposed refinance, or the costs of any refinance, all of which will impact the Debtor's ability to pay the over twelve million dollars projected due under its Second Amended Disclosure Statement.  Similarly, the Second Amended Disclosure Statement provides no meaningful analysis regarding the proposed sale of the Debtor's single asset five years hence, and no analysis of the costs of any such sale or the Debtor's ability to conclude a sale (or refinance) immediately post-bankruptcy in a commercial real estate market that has been volatile and shows no signs of stabilization.  (*See* SADS Exh. G.)

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

d.    The Second Amended Disclosure Statement Misstates The Interest Rate Due On The Evilsizer Mechanic's Lien

The Second Amended Disclosure Statement lists Evilsizer Construction as an undisputed secured claimant with a claim in the amount of $407,682.93. (SADS 8.)  The SADS proposes to pay an interest rate on the Evilsizer claim of 0% and provides projections based upon a 0% interest rate. (SADS 28; Exh. B1.)  Evilsizer Construction, however, has filed a proof of claim with an attached judgment which states that Evilsizer's judgment accrues interest at the daily rate of $91.61. (Claim 11-1, filed on March 15, 2010.)  Given that the SADS proposes to pay the Evilsizer Claim by making a yearly payments of $50,000.00 (SADS 28), more information and accurate information is necessary for CBB and the hypothetical investor to determine what will be the true state of FEY 240's finances throughout the life of the proposed plan.

e.    The Second Amended Disclosure Statement Does Not Provide Adequate Information Regarding Glendale Career School's Claim

The Second Amended Disclosure Statement identifies as Class 2C a disputed claim from Glendale Career Schools in the amount of "[a]pproximately $2,400,000," an amount that is $400,000 more than stated in the original Disclosure Statement (SADS 30; *See also* Disclosure Statement, p. 25.)  Although the Debtor has recently filed an adversary action disputing the Glendale Career School's Claim, no other information is provided about this disputed claim and no provisions or projections are made for the possible payment of this claim besides the notation that the final payment date would be in the 51st month after plan confirmation and the amount is "[t]o be determined."  (SADS 31.)  For instance, no explanation is given as to why the Claim, which appears to have originated in 2005, has increased by four hundred thousand dollars in the span of a few months.  Since a now two million four hundred thousand dollar claim will significantly affect the Debtor's projections, more information is necessary for CBB and any hypothetical investor to adequately determine the feasibility of FEY 240's projected finances and sale/refinance analysis.

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

2.    The Second Amended Disclosure Statement Contains Material
Omissions And Misstatements Of Fact

a.    The Second Amended Disclosure Statement Ignores the
Court's Order Denying the Debtor's Application to Employ
Dorn Platz Management, Inc.

A fundamental flaw in the Amended Disclosure Statement is its failure to address this

Court's May 12, 2010 order denying FEY 240's application to employ Dorn Platz as its

management company based in part upon the determination that Dorn Platz is not a disinterested

party.  Indeed, the SADS not only proposes continuing payments to Dorn Platz but inexplicably

lists the Dorn Platz property management contract as one of the contracts it will assume post

confirmation. (*See* SADS, p. 40; 42.)  In addition, and as will be more fully discussed in Section

III, C, 1, a herein, as of the filing of this objection, Dorn Platz' status with the California Secretary

of State continues to be "suspended".  Forfeited and suspended entities may not conduct business

under California law.

b.    The Second Amended Disclosure Statement Does Not
Provide Adequate Information Regarding Post-
Confirmation Management

As noted earlier, the Debtor's application to employ Dorn Platz Management, Inc. as

property manager has been denied.  The Second Amended Disclosure Statement does not address

this fact, but rather provides that Dorn Platz Management, Inc. "shall provide customary property

management services such as rent collection and payment of operating expenses, and shall be paid

a fee equal to three percent (3%) of gross revenues for performing such services."  (SADS 40.)

The SADS further states that Fey 240 "shall assume the property management agreement with

Dorn Platz Management, Inc." and that Fey 240 "has filed a motion for this contract to be

approved." (SADS 42.)  No such motion has been filed in this matter.  This has been a continuing

theme throughout all three of the Debtor's Disclosure Statements, despite the fact that the Court

has denied Fey 240's application to employ Dorn Platz and despite the fact that Fey 240 has not

made any motion to either have the court revisit its order or to have the court approve a new

management company. CBB submits that essential information for a hypothetical investor to make

an informed decision includes the proposed property manager and whether that property manager

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH
BRAND, LLC

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

will continue to command three percent of the gross revenues for its duties or whether a different rate will be negotiated.  Furthermore, and as the situation currently stands, FEY 240 does not have a property manager; without a property manager to manage its single asset, FEY 240's Chapter 11 reorganization Plan is inherently not feasible.

        c.        The Second Amended Disclosure Statement Does Not
                Provide Adequate Information On The List Of Insider
                Claims

      The Second Amended Disclosure Statement creates two Class, Classes 1E and 2B, of insider claims (SADS 19.)  What continues to be missing from the list of insider claims information as to what kind of unsecured claim each insider has against FEY 240 and what "overlapping control" (SADS 19-20) exists between FEY 240 and each insider.

      The Second Amended Disclosure Statement names Greg Galletly as a manager[1] of FEY 240. (SADS 40.)  As noted in CBB's objection to the Debtor's original Disclosure Statement, Greg Galletly is also an officer of Dorn Platz Management, Inc., FEY 240's disqualified property manager.  The Second Amended Disclosure Statement also lists in its list of insider claims Lobar Properties with a claim in the amount of $235,887.89. (SADS 8.)  Again as noted in CBB's objection to the Debtor's original Disclosure Statement, the Lobar Properties loan to FEY 240 is part of a larger loan from CBB to Lobar Properties that was split among three entities, all of which are currently in bankruptcy proceedings in the Central District of California.  Each of the three entities sharing the Lobar Properties loan is represented by Greg Galletly.

      The Second Amended Disclosure Statement does not provide adequate information regarding the relationship between FEY 240, Dorn Platz Management, Inc., Greg Galletly, and Lobar Properties. The only explanation given is that "they may be considered insiders because of overlapping control." (SADS 19-20.)   Again, the single loan from Lobar Properties to three separate bankrupt entities has implications on the bankruptcy estate of each of the three entities. The Second Amended Disclosure Statement does not provide adequate information regarding Greg Galletly and the entities he represents for a hypothetical investor to determine whether the

---

[1] The previous Disclosure Statement listed Mr. Galletly as a "managing member" of FEY 240.

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH
BRAND, LLC

EPSTEIN YOUNG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL: (213) 613-2340 • FAX (213) 613-2344

1  bankruptcy of the two other entities will have an effect on FEY 240, and whether Dorn Platz's and

2  Lobar's claims should be equitably subordinated.

3

4                d.     The Second Amended Disclosure Statement Does Not
                      Discuss The Fact That Glendale Career Schools Has A Lien
5                     On The Debtor's Property

6        As discussed earlier, the Second Amended Disclosure Statement identifies as Class 2C a

7  disputed claim from Glendale Career Schools ("GCS") in the amount of "[a]pproximately

8  $2,400,000," an amount that is $400,000 more than stated in the original Disclosure Statement

9  (SADS 30; *See also* Disclosure Statement, p. 25.)  The Debtor attempts to downplay the

   significance of the GCS claim, noting only that it is the subject of an adversary action and
10
   thereafter giving the claim a value of $0 or "whatever portion of the claim that would be allowed."
11
   (SADS 30.)  The Second Amended Disclosure Statement fails to mention that GCS has a validly
12
   recorded lien on Fey 240's property. (*See Request for Judicial Notice,* filed concurrently herewith,
13
   Exh. 1.)  This fact is crucial, as a now two million four hundred thousand dollar claim, supported
14
   by a properly recorded lien, will significantly affect the Debtor's financial projections.
15
            C.   FEY 240's Chapter 11 Plan is Fatally Flawed And Therefore Non-Confirmable
16
         A body of jurisprudence has developed which suggests that notwithstanding adequate
17
   disclosure of information required by section 1125(b), a disclosure statement should not be
18
   approved if the proposed plan, as a matter of law, cannot be confirmed. (*See In re Allied Gaming*
19
   *Mgmt.* (Bankr. W.D. La. 1997) 209 B.R. 201, 202.)
20
               1.    The Plan Is Not Feasible
21
         Under 11 U.S.C. § 1129(a)(11), a court may confirm a plan only if the plan is feasible.
22
   Feasibility requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation,
23
   or need for further financial reorganization, of the debtor or any successor to the debtor under the
24
   plan, unless such liquidation or reorganization is proposed under the plan." (11 U.S.C. §
25
   1129(a)(11).)  To establish a feasible plan, the Debtor must show through concrete evidence that
26
   there will be sufficient cash flow to fund the plan and maintain operations according to the express
27
   terms of the plan.  The test is whether the acts which are to be accomplished by the Debtor after
28
   confirmation can be done as a practical matter under the facts disclosed. (*In re Pizza of Hawaii,*

*Inc.* (9th Cir. 1985) 761 F.2d 1374.) Here, Fey 240 cannot continue its operation as a practical or legal matter under the terms of its proposed plan. Fey 240 is a single asset real estate entity with no property manager and the property manager it proposes to use is barred from conducting business under California law.

<blockquote>
a.    The Plan Is Not Feasible Because It Proposes to Manage The Debtor's Property Using a Suspended Corporation
</blockquote>

California Revenue & Taxation Code section 23302 states, in pertinent part:

(d) If a taxpayer's powers, rights, and privileges are forfeited or suspended pursuant to Section 23301, 23301.5, or 23775, without limiting any other consequences of such forfeiture or suspension, the taxpayer shall not be entitled to sell, transfer, or exchange real property in California during the period of forfeiture or suspension.

(Cal. Rev. & Tax. Code § 23302.)

As noted, this Court has denied FEY 240's application to employ Dorn Platz Management, Inc. as its property manager, in part due to its status as an interested person. Also as noted, Dorn Platz, the post-confirmation property manager listed in the Second Amended Disclosure Statement, has a current status of "suspended." According to the Second Amended Disclosure Statement, FEY 240's sole asset is the property located at 240 North Brand Blvd. in Glendale, CA and the Second Amended Disclosure Statement proposes to fund the proposed Chapter 11 plan through the lease and possible sale of real property owned by FEY 240. Since the Debtor's application to employ Dorn Platz has been denied and since confirmation of the plan with Dorn Platz as property manager would necessarily involve authorization of Dorn Platz's transactions in real property and since Dorn Platz may not currently sell, transfer or exchange real property pursuant to California law, the plan is patently not feasible.

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

2.  The Plan Does Not Meet the "Cram-Down" Requirements of 11
U.S.C. Section 1129(a) And Cannot Meet the "Fair and Equitable"
Requirements of 11 U.S.C. Section 1129(b)

To confirm the Second Amended Disclosure Statement over CBB's objection, Fey 240
must utilize the "cram-down" provisions of the bankruptcy code, which dictate that the plan must
treat each objecting class fairly and equitably, and does not discriminate unfairly against any
objecting impaired class. (11 U.S.C. § 1129(b).)  Section 1129(b)(2)(A) sets forth three non-
exclusive methods of complying with the "fair and equitable" requirement of section 1129 (b) with
respect to secured claims:

1.  Holders of claims in the class retain the liens securing such claims,
and each such holder will receive cash payment totaling at least the
allowed amount of such claim, and having a present value on the
effective date of the plan which is not less than the allowed amount
of such claims; or

2.  The collateral will be sold free and clear of the secured creditor's
lien, subject to the secured creditor's right to credit bid pursuant to
Section 363(k), with the lien to attach to proceeds and be treated as
provided under subsections (i) or (iii) of Section 1129(b)(2)(A); or

3.  The holders of such claims will realize the indubitable equivalent of
such claims.

(11 U.S.C. § 1129(b)(2)(A).)  To confirm the Second Amended Disclosure Statement over CBB's
objection, with respect to CBB's claims, Fey 240 must demonstrate that CBB will retain its lien
and receive deferred cash payments totaling at least the amount of CBB's secured claim.  Fey
240's plan, as proposed, fails to meet these requirements.  Fey 240's plan unfairly discriminates in
its treatment of CBB by proposing interest only payments to CBB and by proposing to pay junior
lienholders prior to CBB.

a.  The Plan's Proposed Payment Schedule Is Neither Fair or
Equitable

Fey 240's Second Amended Disclosure Statement separates CBB's loan into two notes, an
"A" note consisting of principal and a "B" note consisting of fees and interest. The Debtor
proposes interest only payments on CBB's "A" note at a rate of 5% for months 1 through 23 of the

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH
BRAND, LLC

plan, with the principal to amortized over a 30 year period for months 24 through 50 of the plan. First, the Debtor provides no confirmation or analysis that these proposed payments have a present value not less than the present value of CBB's claim. Notwithstanding that the Debtor has been in default since October 2009, the plan proposes to amortize CBB's loan over thirty years, with monthly <u>interest only</u> payments and a balloon payment due in five years. The interest rate the Debtor proposes to pay CBB to compensate for this delay and risk is only five percent (5%). Given that CBB's note rate is 6.125% and its default rate is 11.125%, an interest rate of five percent is not adequate for a loan of this type. Given that the prime rate of interest for a 30 year commercial mortgage loan is currently 4.08%, an interest rate of only .92% over that rate is clearly insufficient for this type of loan. The consequence of this unreasonably low interest rate is that the cash payments to be paid to CBB under the plan have a net present value, as of the effective date of the plan, of substantially less than the present value of CBB's claim. This renders Fey 240's plan nonconfirmable.

Furthermore, payments on the "B" note as proposed by the Second Amended Disclosure Statement begin in the 23rd month of the plan, based on a 30 year amortization schedule. This proposal makes CBB's secured claim effectively junior to the actual junior lienholders, whose proposed payments under the plan begin <u>before</u> CBB is paid. The proposed payment schedule for CBB and the junior lienholders is illustrated by the following chart:

| Lienholder | Payment Schedule |
|---|---|
| CBB "A" Note (1st Deed of Trust) | 5% interest only months 1 through 23 30 year amortization, months 24 through 50 |
| CBB "B" Note (1st Deed of Trust) | Amortized payments **beginning in month 23 of the plan**, 30 year amortization |
| Delovely Properties (2nd Deed of Trust) | 5% interest only beginning first month after plan confirmation through 50th month |
| Evilsizer Construction (Mechanic's Lien) | $50,000 per year paid in September each year of the plan |
| Unsecured Claims | Monthly payments beginning first month after plan confirmation. |

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL. (213) 613-2340 • FAX (213) 613-2344

16
CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

As can readily be seen, Fey 240's plan is neither fair nor equitable in that it not only proposes payments to CBB of less than the present value of its claim, but it also unfairly discriminates against CBB by paying junior lienholders prior to CBB.

          b.      The Plan Unfairly Shifts The Risk of Failure to CBB While Retaining the Potential Benefits For Fey 240's Equity Holder

In addition to the explicit requirements of the "fair and equitable" standard of Section 1129(b), a majority of courts hold that additional implicit requirements of the "fair and equitable" standard must be satisfied as well.  These courts reason that Section 1129(b)(2) provides only minimal standards that a plan must satisfy and does not mandate that every plan not prohibited be confirmed. (*See, e.g., Sandy Ridge Dev. Corp. v. Louisiana National Bank* (5th Cir. 1989) 881 F.2d 1346, 1352.)  A well recognized implicit requirement of the "fair and equitable" rule of Section 1129(b)(1) is that a plan cannot impose an unreasonable risk of failure of the plan upon the dissenting secured creditor.  In other words, Fey 240 may not cause the risk of the failure of the plan to shift from the bankruptcy estate to CBB.

In In re Consul Restaurant Corp., 146 B.R. 979 (Bankr. D. Minn. 1992), the Court denied confirmation of a plan which proposed to distribute cash to a subordinated class while a senior subordinating class remained unpaid.  As explained by the court:

> The concept of fair and equitable involves more than an application of the mechanical calculation of absolute priority based on distribution of property valued abstractly.  When a proposed distribution would substantially shift the risk of failure of the plan from a junior class to a senior dissenting class for no legitimate purpose, the plan is not fair and equitable to the dissenting class.

(*In re: Consul Restaurant Corp.* (Bankr. D. Minn. 1992) 146 B.R. 979, 989.)

As is explained above, Fey 240's plan impermissibly violates the implicit requirement of Section 1129(b) by unfairly attempting to shift the risk of failure of the plan from the bankruptcy estate to CBB.  Specifically, Fey 240's plan proposes that Fey 240's interest holders keep their interest and proposes that junior lienholders be paid <u>before</u> CBB, effectively making CBB wait five years to see if the Debtor can reorganize, refinance, or timely sell its property.  In this scenario, CBB bears the risk of Fey 240's inability to pay its creditors.  Fey 240 should not be

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL. (213) 613-2340 • FAX (213) 613-2344

3221-006

17

allowed to retain the immediate benefits of reorganization for itself and certain other creditors (by maintaining the equity holder's interest in its property and by paying lower lienholders before CBB) while deferring payment to CBB on its secured claim.

Fey 240 has not even alleged, nor can it prove, that there is any new value proferred by its sole equity holder to satisfy the "new value exception" to the absolute priority rule. (*See In re Bonner Mall Partnership* (9th Cir. 1993) 2 F.3d 899.)  Under the "new value exception," equity owners of a debtor are permitted to retain an interest in the reorganized debtor, even if a senior class of creditors is not paid in full, proved that they contribute value to the debtor which is: 1) new, 2) substantial, 3) money or money's worth, 4) necessary for a successful reorganization, and 5) reasonable equivalent to the value or interest received. (*In re Bonner Mall*, 2 F.3d at 908-909.) Fey 240 has provided for no capital contribution, and no other contribution, by its sole shareholder that would allow him to retain his equity interest under this exception.  Therefore, not only is the Second Amended Disclosure Statement not fair and equitable as to CBB, it also runs afoul of the absolute priority rule by permitting Fey 240's shareholder to retain his interest.

### 3. The Plan Misclassifies Claims

Improper classification of claims makes a plan nonconfirmable. (11 U.S.C. §§ 1122, 1129(a)(1).)  Unless two or more secured creditors have identical and equal rights in the same collateral, each secured claim must be placed in a separate class. (*In re: Commercial Western Finance Corp.* (9th Cir. 1985) 761 F.2d 1329, 1338; *Matter of Martin's Point Ltd. Partnership* (BC ND GA 1981) 12 B.R. 721, 725.) Secured creditors with different priority liens cannot be placed in the same class; all claims within a class must be given the same treatment and holders of liens with different priority in the same collateral cannot be given the same treatment because the holders of the highest priority lien rights superior to the holder of the lowest priority lien. (*See In re Holthoff* (BC ED AK 1985) 58 B.R. 216, 219.) Here, Fey 240 has placed the holders of its first, second and fourth trust deeds, as well as the holder of a mechanic's lien, all in Class 1. (*See* SADS 19.)  Not only does this misclassification of claims make the Debtor's plan per se nonconfirmable, it also runs afoul of the bankruptcy code's prohibition against classification of claims for the purpose of vote manipulation. (*See, e.g., In re Tuscon Self Storage, Inc.*  (9th Cir. BAP 1994) 166 B.R. 892, 897-898.)

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

3221-006

18

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL. (213) 613-2340 • FAX (213) 613-2344

D.  The Second Amended Disclosure Statement Provides Inaccurate
Information

In addition to adequate information, a disclosure statement must not contain inaccurate, deceptive, or misleading information; "including false information is a more serious matter than a mere lack of information." (*In re Brotby* (B.A.P. 9th Cir. 2003) 303 B.R. 177, 193.)  Here, FEY 240's Second Amended Disclosure Statement should not be approved because it contains inaccurate and misleading information about various claims and projections, including the interest rates on Evilsizer Constructions' claim, the status of the Debtor's application to employ John Schock as Counsel, the status of the Debtor's application to employ Dorn Platz as a management company, and the existence of a cash collateral stipulation authorizing Fey 240 to use CBB's cash collateral.

1.  There Is No Cash Collateral Stipulation In Place and No Cash
Collateral Motion Pending

Although the Second Amended Disclosure Statement states that "[t]he Cash Collateral Stipulation with Citizens Business Bank is pending," no such cash collateral discussions are pending and no motion by Fey 240 to use CBB's collateral is pending. (Wilson Decl., ¶ 3.) Therefore, not only is the information provided in the Second Amended Disclosure Statement misleading, this also means that Fey 240 is currently using CBB's cash collateral to make capital improvements on its property without CBB's authorization and without a Court order.

2.  The Second Amended Disclosure Statement Provides
Inaccurate Information as to the Claim of Evilsizer Construction

As discussed earlier, the Second Amended Disclosure Statement lists Evilsizer Construction as an undisputed secured claimant with a claim in the amount of $407,682.93. (SADS 8, 28.)  The Amended Disclosure Statement states that the interest rate on the Evilsizer claim is 0% and provides projections based upon a 0% interest rate. (SADS 28; Exh. B1.) Evilsizer Construction, however, has filed a proof of claim with an attached judgment which states that Evilsizer's judgment accrues interest at the daily rate of $91.61. (Claim 11-1, filed on March 15, 2010.)  FEY 240's Second Amended Disclosure Statement should not be approved because it contains inaccurate information about the interest rates on Evilsizer's claim.

3.    The Second Amended Disclosure Statement Provides Inaccurate
Information as to the Status of the Debtor's Application to Employ
Dorn Platz

Page 44 of the Amended Disclosure Statement states: "[t]he Motion to Employ Dorn Platz Management, Inc. is pending."  The Debtor's Application to Employ Management Company, however, was denied by Order of this Court. (*See Order Denying Application for Authority to Employ Management Company*, filed in this action on May 12, 2010, Docket # 57.) No other application has been filed.

IV.    CONCLUSION

For the foregoing reasons, CBB objects to the Debtor's Second Amended Disclosure Statement and Proposed Chapter 11 Plan and requests that this Court withhold approval of the Second Amended Disclosure Statement.

Dated: July 28, 2010    **EPPS YONG & COULSON, LLP**

By:    /s/  Michael B. Wilson
Dawn M. Coulson, Esq.
Michael B. Wilson, Esq.
Attorneys for Creditor CITIZENS BUSINESS BANK

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

3221-006

20

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH
BRAND, LLC

| | |
|---|---|
| In re: FEY 240 NORTH BRAND, LLC<br>Debtor(s). | CHAPTER:11<br>CASE NUMBER: 2:09-bk-44228-AA |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 S. Hope Street, 35th Floor, Los Angeles, CA 90071.

A true and correct copy of the foregoing document described as:

**(1) CITIZENS BUSINESS BANK'S OBJECTION TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC;**

**(2) DECLARATION OF MICHAEL B. WILSON IN SUPPORT OF CITIZENS BUSINESS BANK'S OPPOSITION TO SECOND AMENDED DISCLOSURE STATEMENT FILED BY DEBTOR FEY 240 NORTH BRAND, LLC;**

**(3) CITIZENS BUSINESS BANK'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS OPPOSITION TO THE DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 28, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**United States Trustee (dare.law@usddoj.gov)**
**Dawn M. Coulson (dcoulson@eyclaw.com)**
**Mitchell B. Ludwig (mbl@kpclegal.com)**

**II. (a) SERVED BY U.S. MAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, I served the following person(s) and/or entity(ies) by personal delivery as follows:  On **July 28, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, addressed as follows and;

    **(b) SERVED BY FACSIMILE TRANSMISSION**: Based on an agreement of the parties to accept service by fax transmission, I faxed the document(s) to the persons at the fax numbers listed in the Service List. The telephone number of the sending facsimile machine was (213) 613-2344. No error was reported by the fax machine that I used:

**John Paul Schock, Esq.**
**Schock & Schock**
**210 S. Orange Grove Blvd., Ste 200**
**Pasadena, CA 91105**
**Fax: (626) 298-6447**

**Fey 240 North Brand LLC**
**Mr. Greg Galletly**
**210 S. Orange Grove Blvd.**
**Pasadena, CA 91105**
**Fax: (626) 204-5201**

*[Proof of Service Continued on Next Page]*

3221-006

21

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EPPS YONG & COULSON, LLP**
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

**III.  SERVED BY PERSONAL DELIVERY**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on: **July 28, 2010** I served the following person(s) and/or entity(ies) by personal delivery, as follows:  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Honorable Alan M. Ahart**
**U.S. Bankruptcy Court**
**Edward Roybal Federal Building**
**255 E. Temple Street, Court Room 1382**
**Los Angeles, California  90012-3300**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 28, 2010 | Lorraine Estrada | /s/  Lorraine Estrada |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

3221-006

22

CITIZENS BUSINESS BANK'S OBJECTION TO THE SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC