FINPLAN 12/01/09

John P. Schock - State Bar No.048632, 052781

Schock & Schock, alc.

210 So. Orange Grove Blvd., Ste 200
Pasadena, CA 91105
Telephone (626)298-6446

Attorney for Debtor



FILED

SEP 17 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re

**FEY 240 NORTH BRAND LLC,
a Limited Liability Company;**

Debtor

**Bk. No.** 2:09-bk-44228-AA

In a Case Under Chapter
11 of the Bankruptcy Code
(11 U.S.C. § 1101 et seq.)

**FEY 240 NORTH BRAND LLC
THIRD AMENDED DISCLOSURE
STATEMENT DESCRIBING Proposed
CHAPTER 11 PLAN**

### Disclosure Statement Hearing

Date:   October 27, 2010
Time:   10:00 AM
Ctrm:   United States
Bankruptcy Court-Central
District of California, Edward
R. Roybal Federal Building &
Courthouse, 255 East Temple
St., Suite 1375, Los Angeles,
CA 90012

### Plan Confirmation Hearing
Complete This Section When
Applicable
Date:
Time:
Ctrm:    {Insert Courtroom #}
         {Insert Full
         Court Address

         Here}

## TABLE OF CONTENTS

I.      INTRODUCTION............................................ 4

II.     GENERAL DISCLAIMER AND VOTING PROCEDURE.................. 5

III.    WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.............. 6

IV.     WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN.............. 6

V.      VOTES NECESSARY TO CONFIRM THE PLAN.................... 11

VI.     INFORMATION REGARDING VOTING IN THIS CASE.............. 12

VII.    DESCRIPTION OF DEBTORS PAST & FUTURE BUSINESS AND EVENTS
PRECIPITATING BANKRUPTCY FILING. . . . . . . . . . . . . . . 13

VIII.   CRITICAL PLAN PROVISIONS ............................. 16

IX.     DESCRIPTION AND TREATMENT OF CLAIMS.................... 17

X.      SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS...... 30

XI.     FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED
PAYMENT IS FEASIBLE...................................... 32

XII.    ASSETS AND LIABILITIES OF THE ESTATE................... 32

XIII.   TREATMENT OF NONCONSENTING CLASSES ................... 33

XIV.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS
(CHAPTER 7 LIQUIDATION ANALYSIS)............................ 35

XV.     FUTURE DEBTOR......................................... 37

XVI.    SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND
LEASES; OTHER PROVISIONS................................... 41

XVII.   BANKRUPTCY PROCEEDINGS ............................... 43

XVIII.  TAX CONSEQUENCES OF PLAN ............................. 43

XIX.    EFFECT OF CONFIRMATION OF PLAN........................ 44

XX.     DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN. .46

3

## I.    INTRODUCTION

On December 4, 2009, **FEY 240 NORTH BRAND LLC** ("Debtor") filed a
bankruptcy petition under Chapter 11 of the Bankruptcy Code
("Code"). The document you are reading is both the Third Amended
Plan of Reorganization ("Plan") and the Third Amended Disclosure
Statement. Proponent has proposed the Plan to treat the claims of
the Debtor's creditors and, if applicable, the interests of
shareholders or partners and to reorganize the Debtor's business
affairs. A disclosure statement describes the assumptions that
underlie the Plan and how the Plan will be executed. The
Bankruptcy Court ("Court") has approved the form of this document
as an adequate disclosure statement, containing enough information
to enable parties affected by the Plan to make an informed judgment
about the Plan. The Court has not yet confirmed the Plan, which
means the terms of the Plan are not now binding on anyone.

The Proponent has reserved **TBD** in Courtroom **TBD** for a hearing to
determine whether the Court will confirm the Plan.

Any interested party desiring further information should contact:
John P. Schock, Esq., SCHOCK & SCHOCK, 210 South Orange Grove
Blvd., Ste 200, Pasadena, CA 91105.

4

## II.  GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN. IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

The source of financial data is based on historic operating results and cashflow projections prepared by the Debtor.  The information contained in the Disclosure Statement is provided by the Debtor and the Debtor's CPA (Christine Blazey, CPA).  (ALL INFORMATION RELIED UPON IN FORMULATING THIS DOCUMENT IS SET FORTH IN THE DECLARATION IN SEE SECTION XX.)  ALL REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached exhibits, please vote on the enclosed ballot and return it in the enclosed envelope.

The Proponent has reserved a hearing date for a hearing to determine whether the Court will confirm the Plan.  Please refer to Section I above for the specific hearing date.  If, after receiving

5

the ballots, it appears that the Proponent has the requisite number of votes required by the Code, the Proponent will file a motion for an order confirming the Plan.

The Motion shall at least be served on all impaired creditors and partners or shareholders who reject the Plan and on the Office of the United States Trustee. Any opposition to the Motion shall be filed and served on the Proponent no later than fourteen days prior to the hearing date. Failure to oppose the confirmation of the Plan may be deemed consent to the Plan's confirmation.

### III. WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

Any party in interest may object to confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### IV. WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

It requires both an allowed and impaired claim or interest in order to vote either to accept or reject the Plan. A claim is defined by the Code to include a right to payment from the Debtor. An interest represents an ownership stake in the Debtor.

In order to vote a creditor or interest-holder must first have an allowed claim or interest. With the exceptions explained below, a

6

claim is allowed if proof of the claim or interest is properly filed before any bar date and no party in interest has objected, or if the court has entered an order allowing the claim or interest. Please refer to Section VI below for specific information regarding bar dates in this case.

Under certain circumstances a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed. A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated. As shown below, Exhibit "A" contains a list of secured claims and unsecured claims.

**7**

| Exh A Class | Secured Claims Payment Recipient | Insider Status | Total Owed | Claim Filed |
|---|---|---|---|---|
| 1A | Los Angeles County Assessor | N | $352,795.88 | $339,414.81 |
| 1B | Citizens Business Bank | N | $8,789,328.40 | $8,428,333.31 |
| 1C | DeLovely Properties | N | $1,407,083.27 | |
| 1D | Barnust Properties | TBD | $1,755,089.00 | |
| 1E | Evilsizer Construction | N | $407,682.93 | $407,682.93 |

| Exh A | Unsecured Claims Payment Recipient | Insider Status | Total Owed | Claim Filed |
|---|---|---|---|---|
| 2A | ABR Concrete Systems | N | $3,723.60 | $3,723.60 |
| | Acetek Roofing Co | N | $480.00 | |
| | Amtech Elevator Services | N | $2,427.30 | $2,427.30 |
| | AR Painting Inc | N | $0.00 | |
| | Archer's Lock & Safe | N | $19,107.99 | |
| | Aztec Fire Protection | N | $5,515.00 | $17,150.00 |
| | Camilo Hernandez | N | $430.70 | |
| | City of Glendale | N | $12,451.74 | |
| | Crabtree Glass Company | N | $7,197.00 | |
| | Crown Disposal | N | $1,977.20 | |
| | Dal Tile Van Nuys | N | $4,840.03 | |
| | Demmert & Assoc | N | $23,600.00 | $23,600.00 |
| | Diversified Automation | N | $19,700.00 | $19,700.00 |
| | Dura Painting Company | N | $10,850.00 | |
| | Electrician Magician | N | $0.00 | |
| | Encore Image, Inc | N | $460.95 | |
| | Franchise Tax Board | N | $2,211.09 | $4,895.02 |
| | Francisco Hernandez | N | $1,805.00 | |
| | Golden Eagle Insurance | N | $626.00 | $626.00 |
| | Hampton Floor Covering | N | $8,612.25 | |
| | Interior Experts General Bldrs | N | $42,221.93 | $50,576.35 |
| | KPFF Consulting Engineers | N | $5,330.70 | $37,964.00 |
| | Labor Ready Southwest Inc | N | $5,701.95 | |
| | LA Metro Plumbing | N | $18,590.00 | |
| | Mustang Mechanical Contractors | N | $10,089.82 | $10,089.82 |
| | Roberto Morales | N | $5,000.00 | |
| | Stumbaugh & Associates | N | $12,577.00 | $12,577.00 |
| | Zero & Associates | N | $850.00 | |
| | Doug Neuman | N | $84,148.11 | |
| | Studley | N | $183,100.00 | |
| 2B | Lobar Properties | TBD | $235,887.89 | |
| | Dorn Platz | TBD | $102,174.02 | |
| 2C | Glendale Career Schools | N | 8 Disputed | $2,410,803.99 |
| 2D | Security Deposits | | | |
| | Goodwill Industries | N | $0.00 | $87,000.00 |
| | SouthWest College/NWC | N | $22,500.00 | |

Similarly, an interest is deemed allowed if it is shown on the list of equity security holders filed by the Debtor with the court and is not scheduled as disputed.

In order to vote, an allowed claim or interest must also be impaired by the Plan.

Impaired creditors include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor. A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment. The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the maturity of such claim as it existed before default, compensates for any damages incurred as a result of reasonable reliance upon the acceleration clause, and (except for a default arising from failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West Supp. 2006)) compensates for any actual pecuniary loss incurred as a result of any failure to perform a non-monetary obligation.

9

Impaired interest-holders include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the interest holder.

There are also some types of claims that the Code requires be treated a certain way.  For that reason they are considered unimpaired and therefore holders of these claims cannot vote.

To summarize, there are two prerequisites to voting:  a claim or interest must be both allowed and impaired under the Plan.

If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed to have accepted the Plan).  Impaired claims or interests are placed in classes and it is the class that must accept the Plan.  Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of the Plan.  Even if all classes do not vote in favor of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

10

Section IX sets forth which claims are in which class.  Secured
claims are placed in separate classes from unsecured claims.  Fed.
R. Bank. P. 3018(d) provides:  "A creditor whose claim has been
allowed in part as a secured claim and in part as an unsecured
claim shall be entitled to accept or reject a plan in both
capacities."

### V.    VOTES NECESSARY TO CONFIRM THE PLAN

The Court may confirm the Plan if at least one non-insider impaired
class of claims has accepted and certain statutory requirements are
met as to both non-consenting members within a consenting class and
as to dissenting classes.  A class of claims has accepted the Plan
when more than one-half in number and at least two-thirds in amount
of the allowed claims actually voting, vote in favor of the Plan.
A class of interests has accepted the Plan when at least two-thirds
in amount of the allowed interests of such class actually voting
have accepted it.  It is important to remember that even if the
requisite number of votes to confirm the Plan are obtained, the
Plan will not bind the parties unless and until the Court makes an
independent determination that confirmation is appropriate.  That
is the subject of any upcoming confirmation hearing.

11

## VI.   INFORMATION REGARDING VOTING IN THIS CASE

The bar date for filing a proof of claim in this case was March 30, 2010.   The bar date for objecting to claims was April 14, 2010. The Debtor received sixteen (16) proofs of claim.   The undisputed amounts claimed are reflected in Exhibit "A".   In addition, an amount was claimed by Glendale Career Schools Inc which is in dispute and an amount was claimed by Goodwill which will be paid in accordance with the terms of their lease.

In this case the Proponent believes that classes 1A,1B,1C,1E,2A and 3 are impaired and therefore entitled to vote.   Class 2C is disputed and will be entitled to vote to the extent that it has an allowed claim.   Class 4 is unimpaired and therefore does not vote. A party that disputes the Proponent's characterization of its claim or interest as unimpaired may request a finding of impairment from the Court in order to obtain the right to vote.   Class 1D as well as Class 2B - unsecured creditors Lobar Properties and Dorn Platz, are not affiliates of the Debtor and there is no common ownership between the Debtor and these entities.   They may be considered insiders because of overlapping control and may not be entitled to vote.

12

Ballots must be received by the Proponent, addressed to John P. Schock, SCHOCK & SCHOCK, 210 South Orange Grove Blvd., Pasadena, CA 91105 by TBD.

## VII. DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING

The Debtor is a Limited Liability Company.  The Debtor conducted 100% of its business activity in Glendale, California since 2000. What follows is a brief summary of the dates and circumstances that led Debtor to file bankruptcy.

On November 16, 2009 Citizens Business Bank filed a Notice of Default.  That filing precipitated the Chapter 11 filing.  A Motion for Order Appointing Receiver and Preliminary Injunction was filed by Citizens Business Bank and granted December 4, 2009, after the filing of this matter.  The filing of the Bankruptcy case imposed the Automatic Stay on this action.

What follows is a brief description of the Debtor's business and future business plans.  Further details relating to the Debtor's financial condition and post-confirmation operation of the Debtor are found in sections X, XI, XIII, XVI, and XV.

13

The Debtor is in the business of Property Ownership. The Debtor currently owns the 55,000 square foot 3-story commercial building located at 240 North Brand Blvd. in the business district of Glendale, California. The building is currently leased to three tenants as follows:

a) **24 Hour Fitness** - Triple Net 20 year Lease for 18,000 sq ft on the 2nd floor commenced December 1, 1994 and terminates November 30, 2014, with the option to extend for two (2) additional five (5) year terms based on fair market rent for comparable space for a fitness center. Current rent is $25,458.39 per month with an increase to $26,222.14 scheduled for December 2010. In addition the Tenant pays monthly alteration rent of $4,221.31. The current rent is $1.41 per square foot. In 2015, the market rent for this space would be approximately $2.24 per square foot per month. This Club is very successful and the Debtor anticipates the Tenant will exercise the options to extend and will have a significant increase in rent per square foot.

b) **Goodwill Industries** - Triple Net 10 year Lease for 18,500 sq ft on the 1st floor commenced June 11, 2010 and terminates June 30, 2020, with the option to extend for two (2) additional five (5) year terms with rent at $41,440 per month for Years 11 through 15, and $46,412.80 per month for

14

Years 16 through 20.  Current rent is $37,000 per month

through Year 10 of the term.  The lease provided the Tenant

with a Fixture and Equipment Allowance ("FF&E") rent credit of

$11,560 per month which will be a credit against the base rent

for the first 24 months of the lease.

    c)  **Southwest College of Medical & Dental Assistants &**

**Practical Nurses and its affiliate NWC Investments, LLC** have

signed a 2 1/2 year Modified Gross lease for a total of 15,912

square feet in the basement terminating February 28, 2013,

with the option to extend for two (2) additional three (3)

year terms with annual cost of living increases.  Current rent

is $22,500 per month for the term with a monthly parking

credit of $2,500 and a 2010 base year.  The Landlord's work is

complete.  The Tenant has taken possession of the space and

the lease term commenced on September 1, 2010.


With completion of the tenant improvements, the base rental income

of the property has increased from its previous $29,680 to

approximately $89,180 per month.  In addition, the NNN tenants pay

their share of operating expenses pursuant to the leases.

**15**

## VIII.   CRITICAL PLAN PROVISIONS

Listed below are the sources of money earmarked to pay creditors and interest-holders.   The Debtor proposes to pay all allowed claims in full.

    a.   Future earnings from continued operations of the Debtor. During the life of the Plan, the Debtor will use its rental income to repay creditors.

    b.   The Debtor anticipates refinancing or selling the property towards the end of the Plan to pay any outstanding amounts then owed to Secured or Unsecured Creditors.

    c.   If the property is sold during the Plan period, the Debtor anticipates that all Secured and Unsecured Creditors will be paid in full from the sales proceeds.

Most likely, undisputed general unsecured creditors can expect payment in full over the life of the Plan as follows:

    a.   Beginning in the 1st month after Plan confirmation and continuing through the term of the Plan, general unsecured creditors would receive their prorata share of the 60 equal monthly payments of $8,227.09, and

    b.   Payments would be made through the 60th month of the plan unless or until the claim is paid in full.

16

## IX.    DESCRIPTION AND TREATMENT OF CLAIMS

### a. Overview of Plan Payments

Below is a summary of who gets paid what and when and from what source.  The identity of members within a particular class is explained beginning on the next page.  The second column lists two amounts: first, the amount of each payment, or if only one is to be made, then that amount; second, the total amount that will be paid over the term of the Plan; and third, if applicable, the total amount paid by refinancing or sale proceeds at the end of the Plan. The "Payment Due Date" column states the frequency with which payments will be made and the starting and ending dates.  Look at the starting date to figure out who will be paid before and after you and in what amount.  The "Source of Payment" column describes the expected source of payment.  Further details regarding the source of payment are found in section XI.

The timing of payments to many creditors is determined by the "Effective Date".  Administrative claims, unless otherwise stated, must be paid by the Effective Date.  The timing of payments to impaired creditors is measured from the Effective Date.  In this case, the Effective Date is **December 1, 2010**.

All claims listed below are undisputed.

17

| Class | Payment Recipient | Amt of Each Pymt / Total Amt Pd (60 Mos) / Final Payment | Payment Due Date | Source of Pymt |
|---|---|---|---|---|
| | | **Undisputed SECURED & UNSECURED CLAIMS** | | |
| | Administration Fees | $1,650.00 | Paid in full on Confirmation Date | Cash on Hand |
| | BK Attorney Fees | $5,000.00 | Installments of $5,000 Paid beginning with 20th month of Plan continuing every 3 Mos thereafter until $50,000 paid in full | Rental Income |
| | | $50,000.00 | | |
| 1A | Los Angeles County Assessor | $7,495.87 | Amortized & pd monthly through 60 Month term of Plan beginning with 1st Month | Rental Income |
| | | $449,752.19 | | |
| 1B | Citizens Business Bank / 1st Trust Deed / Incl Costs & Penalties | $47,183.02 | Monthly Int Only @ 5% 1st 21 Mos | Rental Income & |
| | | $2,609,203.83 | Mos 22-60 30-Yr Amortization | |
| | | $8,343,109.83 | Unpd Bal Pd at end of Plan term | Sale or Refinancing Proceeds |
| 1C | DeLovely Properties / 2nd Trust Deed | $5,862.85 | Monthly Int Only @ 5% | Rental Income & |
| | | $351,770.82 | for 60 Months of Plan term | |
| | | $1,407,083.27 | Unpd Bal Pd at end of Plan term | Sale or Refinancing Proceeds |
| 1D | Barnust Properties / 4th Trust Deed | $0.00 | | |
| | | $0.00 | | |
| | | $1,755,089.00 | Unpd Bal Pd at end of Plan term | Sale or Refinancing Proceeds |
| 1E | Evilsizer Construction / Mechanic's Lien | $6,794.72 | Paid in equal monthly installments | Rental Income |
| | | $407,682.93 | through 60 Month term of Plan | |
| | | $0.00 | beginning with 1st Month | |
| 2A | General Unsecured Claims | $8,227.09 | 60 Equal pymts of $8,277.09 | Rental Income |
| | | $493,625.36 | beginning 1st Month of Plan | |
| | | $0.00 | | |
| 2B | Unsecured Claims / Lobar & Dorn. Platz | $0.00 | | |
| | | $0.00 | | |
| | | $338,061.91 | Unpd Bal Pd at end of Plan term | Sale or Refinancing Proceeds |
| 2D | Security Deposits | $0.00 | Paid pursuant to terms of lease | Rental Income |

No claimant or interest holder is an affiliate of the Debtor, with the exception of Class 1D, as well as Class 2B unsecured creditors Lobar Properties and Dorn Platz, which although they are not affiliates of the Debtor and there is no common ownership between the Debtor and these entities, they may be considered insiders because of overlapping control.

18

b. **Administrative Expenses**

1. These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon.

2. The Code requires that allowed administrative expenses be paid on the effective date unless the party holding the administrative expense agrees otherwise.

**Administrative Expense #1**

Claimant:  Clerk's Office Fees

$1,000.00 - subject to court approval

**Administrative Expense #2**

Claimant:  Office of the US Trustees Fees

$650.00 - subject to court approval

**Administrative Expense #3**

Claimant:  Schock & Schock, Attorneys

$50,000.00 - subject to court approval

19

c. **Unsecured Tax Claims**

 1. These include certain types of property, sales, and income taxes.

 2. The Code requires that the holders of such claims receive regular installment payments in cash over a period ending not later than five years after the date of the order for relief, unless agreed otherwise.  The claimant has not agreed otherwise. The total cash payments must have a present value equal to the amount of the allowed claim.  The treatment of this claim is in a manner not less favorable than the most favored non-priority unsecured claim provided in this Plan (other than any cash payments to an administratively convenient class).  The amount of the allowed claim includes the amount of tax owed plus interest.  The present value is calculated as of the effective date.

 *The Debtor has no Unsecured Tax Claims.*

d. **CLASS ONE** –
 **Class 1A** – **Secured Property Tax Claims**

 1. Total amount of allowed claim:  **$352,795.88.**  This amount includes a pre-petition arrearage of

20

$212,129.93 and a post-petition arrearage of
$140,665.95.

2. 60 Monthly payments to satisfy the secured claim

3. Interest rate of 10%(to compensate creditor because
claim is paid over time)

4. Impaired

5. First payment date: 1st Month after Plan Confirmation

6. Amount of each installment:  $7,495.87

7. Frequency of payments:  Monthly

8. Total yearly payments:  $89,950.44

9. Final payment date:  60th Month after Plan
Confirmation unless or until paid in full.

10. Lien is not modified in any way by the Plan.

11. Description of Collateral:  240 North Brand Blvd.,
Glendale, CA.  Three story 55,000 sq ft Commercial
building.


e.   **CLASS ONE**
**Class 1B – Citizen's Business Bank Secured Claim**

1. Total amount of allowed claim:  **$8,789,328** which
includes $8,229,328.40 in principal, plus
approximately $560,000 in accrued interest and other
costs and fees.

2. Monthly INTEREST ONLY payments for the first twenty-
one (21) months of the Plan which coincides with the

21

Goodwill Tenant Improvement credit; thereafter a 30-Yr Amortization schedule with interest calculated on the unpaid balance of the loan for the remaining 39 months of the Plan to satisfy the secured claim. This payment plan is designed to step up once the Debtor no longer is obligated to pay the FF&E payment to Goodwill.

3. Interest rate of five percent (5%). The Debtor believes that this rate exceeds the current market interest rate for a loan with this term and security. The current 60 month Treasury rate is approximately 1.4%. The Debtor believes and is prepared to provide expert testimony that the market rate is approximately 2.5% to 3.0% over the comparable Treasury Rate. The Debtor is proposing a higher rate in the Disclosure Statement to allow for the possibility of an interest rate increase prior to confirmation and for the Feasibility Analysis. The Debtor believes that the Bank's treatment under the Plan is fair and equitable.

4. Impaired

5. First payment date: 1st Month after Plan Confirmation

6. Amount of each installment:  Interest only in the amount of $36,622.20 for first 21 Months of the Plan.

22

Thereafter, principal and interest in the amount of $47,183.02 per month. The Debtor proposes to either refinance the project or to sell the project at the end of the Plan in order to repay the then outstanding balance of $8,343,109.83.

7. Frequency of payments:  Monthly

8. Total yearly payments:  $566,196.18

9. Final payment date:  60 Months after the Plan Confirmation unless or until paid in full.

10. Lien is not modified in any way by the Plan.

11. Description of Collateral:  240 North Brand Blvd., Glendale, CA.  Three story 55,000 sq ft Commercial building plus rents, issues and profits from the building.


f.  **CLASS ONE**
   **Class 1C – Delovely Properties Secured Claim**

1. Total amount of allowed claim: **$1,407,083.27** – ($1,100,000 in principal plus $256,666.60 of unpaid pre-petition accrued interest and $50,416.67 of unpaid post-petition accrued interest).

2. Monthly INTEREST ONLY payments over Plan term to satisfy the secured claim.

3. Interest rate of 5% (to compensate creditor because claim is paid over time).

23

4. Impaired

5. First payment date: 1st Month after Plan Confirmation

6. Amount of each installment:  Interest only monthly in the amount of $5,862.85 beginning in the 1st month following Plan Confirmation for the 60 Month term of the Plan.  The Debtor proposes to either refinance the project or to sell the project at the end of the Plan in order to repay the outstanding balance.

7. Frequency of payments:  Monthly

8. Total yearly payments:  $70,354.16

9. Final payment date:  60th Month after Plan Confirmation unless or until paid in full.

10. Lien is not modified in any way by the Plan.

11. Description of Collateral:  240 North Brand Blvd., Glendale, CA.  Three story 55,000 sq ft Commercial building.

g.   **CLASS ONE**
     **Class 1D – Barnust Properties**

1. Total amount of allowed claim:  $1,755,089

2. Interest:  None

3. Interest rate:  0%

4. Impaired

5. First payment date: 60th Month after Plan Confirmation

6. The Debtor proposes to either refinance the project

24

at the end of the Plan or to sell the project at the end of the Plan in order to repay the outstanding balance.

7. Frequency of payments:  One time payment in Month 60

8. Total yearly payments:  $0

9. Final payment date:  60th Month after Plan Confirmation unless or until paid in full.

10. Lien is not modified in any way by the Plan

11. Description of Collateral:  240 North Brand Blvd., Glendale, CA.  Three story 55,000 sq ft Commercial building.

h.    **CLASS ONE**
      **Class 1E – <u>Evilsizer Construction</u>**

1. Total amount of allowed claim:  $407,682.93

2. Interest:  None

3. Interest rate:  0%

4. Impaired

5. First payment date:  1st Month after Plan Confirmation

6. Amount of each installment:  Equal monthly payments in the amount of $6,794.72 beginning in the 1st month following Plan Confirmation for the 60 Month term of the Plan.

7. Frequency of payments:  Monthly

8. Total yearly payments:  $81,536.59

25

9. Final payment date:  60th Month after Plan
Confirmation unless or until paid in full.

10. Lien priority is not modified by the Plan.

11. Description of Collateral:  240 North Brand Blvd.,
Glendale, CA.  Three story 55,000 sq ft Commercial
building.

i.      **CLASS 2 – UNSECURED CLAIMS**
        **Class 2A – Undisputed General Unsecured Claims**

1. Total amount of allowed claim:  $493,625.36

2. Monthly payments over Plan term to satisfy the claim.

3. Interest Rate:  0%

4. Impaired

5. First payment date: 1st Month after Plan Confirmation

6. Amount of each installment:  60 Equal monthly
payments in the amount of $8,277.09 shall be paid
through the 60th month of the Plan unless or until
paid in full.

7. Frequency of payments:  Monthly

8. Total yearly payments:  $98,725.07

9. Final payment date:  60th Month after Plan
Confirmation unless or until paid in full.

26

j.    **CLASS 2 – UNSECURED CLAIMS**
      **Class 2B – Potential Insider Unsecured Claims–Lobar &**
      **Dorn, Platz**

1. Total amount of allowed claim:  $338,061.91

2. No monthly payments will be made during the Plan
   term.

3. Interest Rate:  0%

4. Impaired

5. First payment date:  60th Month after Plan
   Confirmation

6. The Debtor proposes to either refinance the project
   at the end of the Plan or to sell the project at the
   end of the Plan in order to repay the outstanding
   balance.

7. Frequency of payments:  One time payment in Month 60

8. Total yearly payments:  $0

9. Final payment date:  60th Month after Plan
   Confirmation unless or until paid in full.

k.    **CLASS 2 – UNSECURED CLAIMS**
      **Class 2C – Disputed Claim - Glendale Career Schools Inc.**

1. Total amount of Disputed claim:  Approximately
   $2,400,000 in disputed claim.

2. Whatever portion of the claim that would be allowed

27

would be all due and payable upon the sale or refinance of the building and would not bear interest.

3. Interest Rate:  0%

4. Impaired

5. First payment date:  Whatever portion of the claim that would be allowed would be all due and payable upon the sale or refinance of the building

6. Amount of each installment:  To be determined

7. Frequency of payments:  One (1)- Upon the sale or refinance of the building

8. Total yearly payments:  To be determined

9. Final payment date:  60th Month after Plan Confirmation unless or until paid in full.

1.    **CLASS 2 – UNSECURED CLAIMS**
      **Class 2D – <u>Security Deposits</u>**

1. Total amount of allowed claim:  $22,500

2. To be paid pursuant to lease terms

3. Interest Rate:  0%

4. Impaired

5. First payment date:  None

6. Amount of each installment:  $0.00

7. Frequency of payments:  None

8. Total yearly payments:  None

28

9. Final payment date:  pursuant to terms of lease

m.    **CLASS THREE – <u>Insider Claims</u>**

One hundred percent of the membership interest in the
Debtor is owned by Keith Fey.  Mr. Fey does not have an
ownership interest in and is not an officer or director
in Barnust Properties, Lobar Properties Inc or Dorn
Platz Management Inc.  Although Class 1D (Barnust), as
well as Class 2B unsecured creditors Lobar Properties
and Dorn Platz, are not affiliates of the Debtor and
there is no common ownership between the Debtor and
these entities, they may be considered insiders because
of overlapping control.  Lobar Properties Inc and
Barnust Properties do not have an ownership interest in
the Debtor.  Bradley Barnes is an officer and director
of Lobar Properties, Inc., Dorn Platz Management Inc and
the managing member of Barnust Properties.  Dorn Platz
Management Inc does not have an ownership interest in
the Debtor, but Greg Galletly is an officer and director
of Dorn, Platz Management Inc, and is one of the
managers of the Debtor.

n.    **CLASS FOUR – <u>Shareholders Interest Claims</u>**

Under the Plan, members retain their membership interest

29

in the LLC.

## X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS

The Plan cannot be confirmed unless the Court finds that it is
"feasible", which means that the Proponent has timely
submitted evidence establishing that the Debtor will have
sufficient funds available to satisfy all expenses, including
the scheduled creditor payments discussed above.  What follows
is a statement of projected cash flow for the duration of the
Plan.  The focus is on projected cash receipts and cash
disbursements.  All non-cash items such as depreciation,
amortization, gains and losses are omitted.  A positive number
reflects a source of cash; a (negative number) reflects a use
of cash.  A more detailed statement of cash flow projections
for the duration of Plan payments is attached as Exhibit "B1".

30

**_Exhibit B1 – 60 Month Summary (Inserted)_**

FEY 240 NORTH BRAND LLC      Exhibit B1-Summary

60 Month SUMMARY - Actual & Projected Income & Expense

(December 2010 through November 2015)

9/16/2010 11:39

240Fey-DecPROJ1.10

Compressed Summary

| | | | | | | | | | Compressed Summary |
|---|---|---|---|---|---|---|---|---|---|
| **Rental Income** | | | | | | | | | |
| NNN Tenants | 36,500 | 809,333.40 | 809,333.40 | 818,773.32 | 818,773.32 | 927,540.00 | 4,184,053.44 | | |
| FSG Tenants | 17,751 | 300,750.00 | 311,922.50 | 319,930.18 | 319,528.08 | 339,413.92 | 1,601,544.68 | | |
| Pre-Paid Rent | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| NNN Op Exp Reimb | | 238,877.30 | 244,180.22 | 248,816.77 | 256,071.86 | 268,629.58 | 1,256,575.74 | | |
| Miscellaneous Income/Parking | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| **Total Income** | 54,251 sq ft | 1,348,960.70 | 1,365,436.12 | 1,387,520.27 | 1,406,373.26 | 1,535,883.50 | 7,044,173.86 | | |
| **Less: Recoverable Operating Expenses** | | | | | | | | | |
| Elevator Contract/Repair | | (4,929.98) | (5,065.73) | (5,217.71) | (5,374.24) | (5,535.46) | (26,123.12) | | |
| Bldg Maint/General Repairs/Cleaning/Engineering/Fire S. | | (742.53) | (764.86) | (787.80) | (811.44) | (837.82) | (3,944.50) | | |
| Management Fees | 3% | (40,468.82) | (40,963.08) | (41,625.61) | (42,191.20) | (46,076.51) | (211,325.22) | | |
| Insurance | | (23,970.12) | (24,449.52) | (24,938.51) | (25,437.28) | (25,946.03) | (124,741.46) | | |
| Office Supplies/Other Services | | (401.94) | (417.06) | (429.57) | (442.46) | (455.71) | (2,146.75) | | |
| Utilities-Water/Electric/Gas/Rubbish | | (150,986.81) | (155,507.19) | (156,735.09) | (163,831.80) | (169,926.90) | (796,987.79) | | |
| Property Taxes (R/E) | | (129,850.96) | (132,447.98) | (135,096.94) | (137,798.87) | (140,554.85) | (675,749.60) | | |
| **Total Operating Expenses** | | (351,351.21) | (359,615.42) | (364,831.22) | (375,887.29) | (389,333.30) | (1,841,018.43) | | |
| **Net Operating Income** | | 997,609.50 | 1,005,820.70 | 1,022,689.05 | 1,030,485.98 | 1,146,550.20 | 5,203,195.42 | | |
| **Less: Payment of Claims** | | | | | | | | | |
| Goodwill (FF&E Allowance) | | (138,726.00) | (104,044.50) | 0.00 | 0.00 | 0.00 | (242,770.50) | | |
| SW College - Rent Credit per Lease | | (27,000.00) | (27,000.00) | 0.00 | 0.00 | 0.00 | (54,000.00) | | |
| Capital Expenditure - Overall Site | | (57,247.52) | (63,242.09) | (69,864.35) | (77,180.07) | (85,261.93) | (352,795.66) | | |
| **Total Capital Expenses** | | (91,100.44) | (99,990.44) | (109,990.44) | (109,990.44) | (89,990.44) | (501,402.19) | | |
| **Less: Debt Service/Secured Claims** | | | | | | | | | |
| Administrative Claims | $51,650.00 | (1,650.00) | (10,000.00) | (20,000.00) | (20,000.00) | 0.00 | (51,650.00) | | |
| 1B Citizens Business Bank | $6,789,328   5.0% | (32,702.93) | (28,708.95) | (20,066.08) | (32,770.37) | (4,688.60) | (96,956.31) | | 8,343,109.83 |
| Secured Tax Claims Interest | $382,795.80   10.00% | | | | | | | | |
| Secured Tax Claims - Principal Paydowns   Amortized | | | | | | | | | |
| Principal Reduction | | (31,814.63) | (31,814.63) | (131,302.40) | (138,020.06) | (145,081.45) | (446,218.57) | | |
| 1B DeLoreley Properties | $1,407,083   5.00% | (70,354.16) | (70,354.16) | (70,354.16) | (70,354.16) | (70,354.16) | (351,770.82) | | 1,407,003.27 |
| 1C Barnust Properties | $1,795,089   0.00% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 1,795,089.00 |
| 1D Exibizer Construction | $407,683   0.00% | (81,536.59) | (81,536.59) | (81,536.59) | (81,536.59) | (81,536.59) | (407,682.93) | | 0.00 |
| **Total Debt Pymts** | $12,399,184 | (591,387.17) | (623,039.61) | (718,086.93) | (718,086.93) | (718,086.93) | (3,368,697.55) | | 11,505,282.10 |
| **Less: Unsecured Claims** | $831,467 | | | | | | | | |
| Unsecured Claims - Int | | (98,725.07) | (98,725.07) | (98,725.07) | (98,725.07) | (98,725.07) | (493,625.36) | | |
| 2A Unsecured Claims - Principal | $493,625   0.00% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 |
| 2B Unsecured Claims - Principal | $338,062 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 338,061.91 |
| 2C Gen Career Sch Unsecured Cl | $0   0.00% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| **Total Unsecured Claims Paid** | | (98,725.07) | (98,725.07) | (98,725.07) | (98,725.07) | (98,725.07) | (493,625.36) | | |
| **Net Cashflow After Payment of Debt & Claims** | | 50,200.82 | 53,061.08 | 95,926.60 | 103,723.53 | 239,787.76 | 542,699.79 | | |
| Balance Forward at Plan Approval | | 84,692.78 | 84,692.78 | 0.00 | 0.00 | 0.00 | 84,692.78 | | |
| Capital Contribution | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| **Cumulative Excess Cashflow** | | 134,893.60 | 187,954.68 | 283,881.28 | 387,604.81 | 627,392.57 | 627,392.57 | | 11,543,344.01 |

Section XV(c) states the assumptions and details surrounding the statement of projected cash flow.

On the effective date, the Plan pays Administrative Claims (See Exhibit B-1 attached hereto).

## XI.    FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE

Attached as Exhibit "C" are three types of financial documents including balance sheets (Exhibit C1) as of December 31st of 2006, 2007, 2008 and 2009; Income and Expense statements (Exhibit C2) for the periods of December 31, 2006, 2007, 2008 and 2009; Cashflow statements including the most recent twelve-month calendar year (January through December 4, 2009) (Exhibit C3) and all months subsequent thereto (January 2010 to November 2010) (Exhibit C4).

## XI.    ASSETS AND LIABILITIES OF THE ESTATE

### a. Assets

The identity and fair market value of the estate's assets are listed in Exhibit "D" so that the reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the overall worth of the bankruptcy estate.  The Debtor's valuation estimate is based on a July 2010 appraisal by Terra Firma.  In

32

addition the Debtor anticipates increases in the value of the property over the life of the Plan based on corresponding increases in rental income. Whether the Plan proposes to sell any of these assets is discussed in section XVI.

### b. **Liabilities**

Exhibit "E" shows the allowed claims against the estate, claims whose treatment is explained in detail by section IX.

### c. **Summary**

The current "as is" fair market value of all assets equals $12,084,693. The total undisputed liabilities equal $13,617,817. The Debtor anticipates that there is sufficient income including refinancing or sales proceeds to pay all of the Creditors in full over the life of the Plan.

## XIII.   TREATMENT OF NON-CONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed treatment of their claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code. The process by which dissenting classes are forced to abide by the terms of a plan is commonly referred to as "cramdown". The Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable". The Code does not define discrimination, but it does

provide a minimum definition of "fair and equitable".

The term can mean that <u>secured claimants</u> retain their liens and
receive cash payments whose present value equals the value of their
security interest.  For example, if a creditor lends the Debtor
$100,000 and obtains a security interest in property that is worth
only $80,000, the "fair and equitable" requirement means that the
claimant is entitled to cash payments whose present value equals
$80,000 and not $100,000.  The term means that <u>unsecured claimants</u>
whose claims are not fully satisfied at least know that no claim or
interest that is junior to theirs will receive anything under the
Plan, except where the Debtor is an individual, has elected to
retain property included in the Estate under 11 U.S.C.A. § 1115
(West Supp. 2006) and has satisfied 11 U.S.C.A. § 1129(b)(2)(B)(ii)
(West Supp. 2006).  "Fair and equitable" means that each <u>holder of
an interest</u> must receive the value of such interest or else no
junior interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes against the
Plan, the Plan cannot be confirmed where the Debtor or a class of
interest holders (e.g. shareholders or partners) will receive or
retain any property under the Plan, <u>unless</u> the Plan provides that
the class of general unsecured claims shall be paid in full with

34

interest.  If a class of interest holders votes against the Plan, the Plan cannot be confirmed where the Debtor will receive or retain any property under the Plan, unless the Plan provides that the class of interest holders shall be paid in full with interest. These are complex statutory provisions and the preceding paragraphs do not purport to state or explain all of them.

## XIV.  TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)

The Plan must provide that a non-consenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead.

In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee.  Unsecured creditors generally share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for two reasons. The Chapter 7 liquidation schedule is based on the Citizens Business Bank appraisal of approximately $8,960,000. In a chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all moneys disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over $50,000 and up to $1,000,000, and such reasonable compensation no more than 3% of moneys over $1,000,000 (approximately $430,910).

| | | CHAPTER 7<br>Value based on<br>Citizens Bank appraisal | CHAPTER 11<br>"As Is Value"<br>based on July 2010<br>Terra Firma appraisal |
|---|---|---|---|
| | Value of Assets | $8,960,000 | $12,084,693 |
| | Administrative Claims | ($51,650) | ($51,650) |
| | Chapter 7 Trustee Fee (Maximum) | ($430,910) | $0 |
| 1A | Secured Property Tax Claims | ($352,796) | ($352,796) |
| 1B | Citizens Business Bank | ($8,124,644) | ($8,789,328) |
| 1C | DeLovely Properties | $0 | ($1,407,083) |
| 1D | Barnust Properties | $0 | ($1,483,835) |
| 1E | Evilsizer Construction | $0 | $0 |
| 2C | Glendale Career Schools | $0 | $0 |
| | Exemptions | $0 | $0 |
| 2A,2B | Distribution to Unsecured Creditors | $0 | $0 |
| | | | |
| | Unsecured Creditors Receive % of Claim | 0% | 0% |