Dawn M. Coulson, State Bar No. 154085
dcoulson@eyclaw.com
Michael B. Wilson, State Bar No. 233633
mwilson@eyclaw.com
**EPPS YONG & COULSON, LLP**
333 S. Hope Street, 35th Floor
Los Angeles, California 90071
(213) 613-2340 - Telephone
(213) 613-2344 - Facsimile

Attorneys for Creditor CITIZENS BUSINESS BANK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>FEY 240 NORTH BRAND, LLC,<br><br>Debtor | Case No.: 2:09-bk-44228-AA<br><br>Chapter 11<br><br>**CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC**<br><br>**Date:** October 27, 2010<br>**Time:** 10:00 a.m.<br>**Ctrm:** 1382 |

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel (213) 613-2340 • Fax (213) 613-2344

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

TABLE OF CONTENTS

I. INTRO....1

II. FACTUAL BACKGROUND....1

A. The Debtor and its Property Manager....1

B. The Loan History and Assignments of Leases....2

C. The Debtor's Default, CBB's Efforts To Collect, And The Superior Court Action....3

D. Relevant Bankruptcy Proceedings....3

III. OBJECTION TO THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING PROPOSED CHAPTER 11 PLAN....4

A. The Third Amended Disclosure Statement Violates the Adequate Disclosure Requirement of 11 U.S.C. Section 1125(b)....4

1. The Financial Disclosures In the Debtor's Third Amended Disclosure Statement Are Inaccurate And Misleading....5

a. The Third Amended Disclosure Statement Does Not Provide Adequate Information Regarding its Liquidation Analysis....6

b. The Third Amended Disclosure Statement Does Not Provide Adequate Information Regarding The Proposed Sale or Refinance of The Debtor's Property....6

c. The Third Amended Disclosure Statement Misstates The Interest Rate Due On The Evilsizer Mechanic's Lien....8

d. The Third Amended Disclosure Statement Does Not Provide Adequate Information, And In Fact Provides Incorrect Information, Regarding Glendale Career School's Claim....8

2. The Third Amended Disclosure Statement Contains Material Omissions And Misstatements Of Fact....9

a. The Third Amended Disclosure Statement Ignores the Court's Order Denying the Debtor's Application to Employ Dorn Platz Management, Inc....9

b. The Third Amended Disclosure Statement Does Not Provide Adequate Information Regarding Post-Confirmation Management.....9

c. The Third Amended Disclosure Statement Does Not Discuss The Fact That Glendale Career Schools Has A Lien On The Debtor's Property.....10

C. FEY 240's Chapter 11 Plan is Fatally Flawed And Therefore Non-Confirmable.....10

1. The Plan Is Not Feasible.....10

a. The Plan Is Not Feasible Because The Debtor Has No Property Management.....11

2. The Plan Does Not Meet the "Cram-Down" Requirements of 11U.S.C. Section 1129(a) And Cannot Meet the "Fair and Equitable" Requirements of 11 U.S.C. Section 1129(b).....11

a. The Plan's Proposed Payment Schedule Is Neither Fair or Equitable.....12

b. The Proposed Plan Violates The Absolute Priority Rule.....13

3. The Plan Misclassifies Claims.....14

D. The Third Amended Disclosure Statement Provides Inaccurate Information.....15

1. The Third Amended Disclosure Statement Provides Inaccurate Information as to the Claim of Evilsizer Construction.....15

2. The Third Amended Disclosure Statement Provides Inaccurate Information as to the Number and Amount of Claims Filed Against The Debtor.....15

3. The Third Amended Disclosure Statement Provides An Inaccurate Liquidation Analysis.....16

IV. CONCLUSION.....17

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Adana mortgage Bankers* 14 B.R. 29 (Bankr. N.D. Ga 1981)....................................................4

*In re Allied Gaming Mgmt.*, 209 B.R. 201 (Bankr. W.D. La. 1997)…………………………...…10

*In re Bonner Mall Partnership*, 2 F.3d 899 (9th Cir. 1993)........................................................13, 14

*In re Brotby*, 303 B.R. 177 (B.A.P. 9th Cir. 2003)………………………………………..15

*In re Camino Real Landscape Maintenance Contractors, Inc.*, 818 F.2d 1503 (9th Cir. 1987).....12

*In re Cardinal Congregate I*, 121 B.R. 760 (Bankr. S.D. Ohio 1990)..............................................5

*In re Commercial Western Finance Corp.*, 761 F.2d 1329 (9th Cir. 1989).......…………………..14

*In re Dakota Rail, Inc.*, 104 B.R. 138 (Bankr. D. Minn. 1984).........................................................5

*In re Diversified Investors Fund XVII*, 91 B.R. 559 (Bankr. CD CA 1988)……………………….6

*In re Holthoff*, 58 B.R. 216 (BC ED AK 1985)………………………….........................…14

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp*,. 115 F.3d 650 (9th Cir. Ariz. 1997).............13

*In re Main Street AC, Inc.*, 234 B.R. 771 (Bank. N.D. Cal. 1999)....................................................4

*In re Malek*, 35 B.R. 443 (Bankr. ED Mich. 1983).............................................................................5

*In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567 (Bankr. N.D. Ga 1984).............................4

*In re: Orchards Vill. Invs.*, 2010 Bankr. LEXIS 48 (Bankr. D. Oreg. 2010)....................................7

*In re Phoenix Petroleum Co.*, 278 B.R. 385 (Bankr. E.D. Pa. 2001)…………………………….…4

*In re Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir. 1985)..........................................................11

*In re Tuscon Self Storage, Inc.*, 166 B.R. 892 (9th Cir. BAP 1994)……………………………....14

*Matter of Martin's Point Ltd. Partnership*, 12 B.R. 721 (BC ND GA 1981)……………………..14

**FEDERAL STATUTES**

11 U.S.C. § 1122…………………………………………………………………..................14

11 U.S.C. § 1125…………………………………………………………………..............4, 10

11 U.S.C. § 1129……………………………………………………………..…7, 10, 11, 12, 13, 14

**STATE STATUTES**

Civil Code § 2938……………………………………………………………………..…...2

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

3221-006

v

CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

## I. INTRO

Citizens Business Bank ("CBB"), a secured creditor and party-in-interest herein objects to the Third Amended Disclosure Statement ("TADS") and Proposed Chapter 11 Reorganization Plan submitted by Debtor FEY 240 North Brand, LLC ("FEY 240" or "Debtor") on the grounds that the Third Amended Disclosure Statement contains provisions in direct contradiction to recent orders of this Court; it contains inadequate information to allow a hypothetical investor to make an informed decision; and it contains incorrect and misleading statements. As will be shown herein, the Third Amended Disclosure Statement lacks sufficient information regarding, among other things, the Chapter 7 liquidation analysis, the amount and existence of claims against the Debtor, and the status of claims against the Debtor. Furthermore, CBB objects to the Debtor's Third Amended Disclosure Statement on the grounds that the Debtor's proposed plan of reorganization is non-confirmable because the Third Amended Disclosure Statement contains misinformation and misclassifies claims, fails to satisfy the new value exception, fails to proffer terms for an "effective reorganization," and is not feasible.

## II. FACTUAL BACKGROUND

### A. The Debtor and its Property Manager

FEY 240 NORTH BRAND, LLC, is, and at all times relevant hereto was, a California limited liability company. FEY 240 is a single asset real estate special purpose entity that currently owns the 55,000 square foot 3-story commercial building located at 240 North Brand Blvd. in Glendale, CA. (SADS, pp. 13-14.)

FEY 240's property was previously managed by Dorn Platz Management, Inc. ("Dorn Platz"). On May 12, 2010, this Court issued an Order denying the Debtor's application to employ Dorn Platz, in part because Dorn Platz is not a disinterested person. (*See Order Denying Application for Authority to Employ Management Company,* filed in this action on May 12, 2010, Docket # 57.) Although FEY 240's application to employ Dorn Platz has been denied, the Third Amended Disclosure Statement continues to propose management fees to Dorn Platz and proposes to assume the Debtor's property management agreement with Dorn-Platz. (*See* TADS, p. 37.)

B. The Loan History and Assignments of Leases

On or about September 27, 2005, CBB entered into a construction loan agreement ("Loan Agreement") with FEY 240 North Brand, LLC through which FEY 240 borrowed from CBB the principal amount of nine million dollars ($9,000,000.00). The subject loan and FEY 240's promise to re-pay is evidenced by the Loan Agreement and Promissory Note ("Note") dated September 27, 2005, and is secured by, among other things, a first lien on all real property of FEY 240 granted by a Construction Deed of Trust. The Loan Agreement, Promissory Note, and all of the debtor's obligations thereunder and in connection or in relation therewith are are collectively referred to as the "Loan." True and correction copies of the Loan Agreement, Note, and Deed of Trust are attached to the Declaration of Verona K. Chion in Support of CBB's Opposition to the Disclosure Statement filed in this matter on March 24, 2010, Docket # 42 ("Chion Decl.") as Exhibits A and B.

As collateral for the Loan, FEY 240 executed and delivered to CBB an Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits (Fee) (hereinafter the "Assignment of Leases") encumbering the real property commonly known as 240 North Brand Blvd., City of Glendale, California. Pursuant to the Assignment of Leases, FEY 240 assigned to CBB all of FEY 240's rights, title, and interest in all leases, rental agreements, and tenant improvement construction and reimbursement agreement ('Leases) in favor of FEY 240 or FEY 240's predecessors or successors in interest, in regard to the 240 North Brand Blvd. property, that is more particularly and legally described in the Assignment of Leases; and further assigned to CBB all of FEY 240's rights, title and interests in all lease guaranties in regard to the Leases ("Lease Guaranties"), and all rents, issues and profits of the 240 North Brand Blvd. Propety, including the cash proceeds thereof, to the full extent provided by California Civil Code § 2938. (See Chion Decl. Exh. C.) With regard to FEY 240's assignment of all leases to CBB, Borrower, CBB and tenants Glendale Career Schools, Inc. and 24 Hour Fitness USA, Inc. entered into Subordination, Nondisturbance and Attornment Agreements whereby the tenants' leases were and are, among other things, subordinated to CBB's lien on the Property. (See Chion Decl. Exhs D, E.)

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

As further collateral for the Loan, FEY 240 executed a Security Agreement (Assignment of Deposit Account), which assigns FEY 240's rights, title and interest to CBB in and to Borrower's deposit accounts with CBB. (See Chion Decl. Exh. F.)

The maturity date of the Loan is November 30, 2014. Per the terms of the Loan, Borrower is and was obligated to make monthly principal and interest payments to CBB in amounts set forth in the Note.

C. The Debtor's Default, CBB's Efforts To Collect, And The Superior Court Action

Fey 240 is and has been in default under the Loan for failure to make payments as due under the Note and Loan Agreement. The Debtor has been in default under the terms of the Loan since October 2009. Due to the Debtor's default, CBB was forced to file a state court action, Case No.: EC 051431 in Los Angeles Superior Court, North Central District, seeking payment on the loan and appointment of a Receiver to collect, manage and administer the rents, issues, accounts and profits of Fey 240 and the cash proceeds thereof. CBB's Motion for Appointment of a Receiver was granted on December 4, 2009. The same day, Fey 240 filed the instant bankruptcy case, staying the Superior Court action and effectively thwarting the appointment of the Receiver.

Since October 2009, and despite the rosy financial projections in its Third Amended Disclosure Statement, the Debtor has failed to cure its default with CBB and in fact has not made any payments at all. Because of this failure, Fey 240's loan balance continues to grow daily.

D. Relevant Bankruptcy Proceedings

At the status conference held on February 17, 2010, the Court set the deadline for Fey 240 to file its Disclosure Statement and Plan of Reorganization as no later than March 1, 2010. (*See Order on Court's Case Status Conference Setting Deadlines for Filing Disclosure Statement and Plan of Reorganization*, docket number 31, filed on February 26, 2010.) The Court also ordered that the Debtor must have its Disclosure Statement approved no later than May 5, 2010 and have its Plan of Reorganization confirmed no later than July 7, 2010. (Id.) The Debtor has obviously failed to meet these Court deadlines; in fact, all the deadlines set by the Court in this matter have passed without the Debtor meeting even one.

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

3221-006
3
CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

## III. OBJECTION TO THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING PROPOSED CHAPTER 11 PLAN

### A. The Third Amended Disclosure Statement Violates the Adequate Disclosure Requirement of 11 U.S.C. Section 1125(b)

11 USC § 1125(b) states, in pertinent part:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

(11 U.S.C. § 1125(b).) "Adequate information" is defined as: information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan. (11 U.S.C. § 1125(a); *In re Phoenix Petroleum Co.* (Bankr. E.D. Pa. 2001) 278 B.R. 385, 392.) Where, as here, a disclosure statement fails to provide information material to the proferred plan, courts will deny approval of the disclosure statement. (*See, e.g., In re Main Street AC, Inc.* (Bankr. N.D. Cal. 1999) 234 B.R. 771 (disclosure statement denied for failure to provide sufficient information concerning financial information of debtor's acquisition); *In re Metrocraft Publishing Services, Inc.* (Bankr. N.D. Ga 1984) 39 B.R. 567, 569-581 (approval denied where disclosure statement omitted information relating to value of debtor's fixtures and equipment, amount of unsecured claims, ability to collect accounts receivable, and estimated return to creditors under Chapter 7 liquidation); *In re Adana mortgage Bankers* (Bankr. N.D. Ga 1981)14 B.R. 29 (plan deemed inadequate for failure to disclose financial and other information relating to risks to creditors under plan).)

Here, FEY 240 <u>for the fourth time</u> fails to provide adequate information as is required under the bankruptcy code. As will be shown herein, the flaws in the Debtor's Third Amended Disclosure Statement are not limited to one area and are not susceptible to easy correction. Instead, the flaws are so pervasive that they combine to create a Third Amended Disclosure

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

Statement that is essentially without worth. The Third Amended Disclosure Statement should, therefore, be rejected in its entirety. (*See In re: Cardinal Congregate I* (Bankr. S.D. Ohio 1990) 121 B.R. 760, 766-767 ("[w]here inaccuracies are so numerous or significant that creditors or interest holders can no longer make an informed judgment about whether to accept or reject the proposed plan of reorganization, approval of the Disclosure Statement must be denied.").)

1. The Financial Disclosures In the Debtor's Third Amended Disclosure Statement Are Inaccurate And Misleading

It is axiomatic that adequate financial disclosure is critical to any creditor's reasoned and intelligent consideration of a plan of reorganization. (*See In re Dakota Rail, Inc.* (Bankr. D. Minn. 1984) 104 B.R. 138, 142.) Adequate financial disclosure should, therefore, provide detailed and accurate information regarding the projected finances over the life of the Plan, together with details of the Debtor's pre-petition finances, the financial difficulties precipitating the filing of its bankruptcy petition and its current financial status and current finances.

More importantly, a Disclosure Statement must provide a projection of post-confirmation operations together with all underlying assumptions and supporting evidence.

> The Debtor should provide the projection of operations subsequent to confirmation so that the Court may determine the feasibility of the plan. The Debtor is required to make a full, clear, and complete disclosure of all underlying assumptions.

(*In re Malek* (Bankr. ED Mich. 1983) 35 B.R. 443, 444 (emphasis added).)

Fey 240's Third Amended Disclosure Statement fails to provide the necessary level of financial disclosure. The Debtor's liquidation analysis is provided based upon an apparent arbitrary choice of fair market value, there is no analysis provided as to the proposed sale or refinance of Fey 240's single asset, and essential facts affecting the Debtor's post-confirmation operation are either ignored or misstated.

a. The Third Amended Disclosure Statement Does Not Provide Adequate Information Regarding its Liquidation Analysis

An accurate liquidation analysis is essential to enable creditors to compare their recovery under a Chapter 7 liquidation to their recovery under the proposed Chapter 11 Plan. (*In re Diversified Investors Fund XVII* (BC CD CA 1988) 91 B.R. 559, 561.) Throughout the TADS, Fey 240 relies upon its appraiser's value of $12,000,000.00 to perform its calculations, yet Fey 240's liquidation analysis inexplicably relies upon CBB's asserted property value of $8,960,000.00. Of course, the Debtor's reliance upon the lower number for its Chapter 7 liquidation analysis results in a value for the building that is drastically lower than otherwise noted and skews the projected distribution under a Chapter 7 liquidation. The liquidation analysis is a crucial figure necessary for a creditor to evaluate its treatment under the plan and its alternatives. Without information that corroborates the accuracy of Fey 240's figures and without any explanation as to why Fey 240 arbitrarily chose to use CBB's numbers, CBB and the other creditors are left to simply trust the figures and projections supplied by FEY 240, which numbers have already been shown to be unreliable. In addition, the arbitrary choice of the lower figure for the Chapter 7 analysis calls into question the intent of the Debtor; it appears that Citizens' figure is used to suggest that a Chapter 7 liquidation would be detrimental and to therefore bolster the Debtor's proposed Chapter 11 Plan. Regardless of the intent, however, detailed, accurate, and verifiable figures are the sine qua non of an informed financial decision. This Third Amended Disclosure Statement's arbitrary analysis does not provide adequate information to allow creditors to make an informed decision.

b. The Third Amended Disclosure Statement Does Not Provide Adequate Information Regarding The Proposed Sale or Refinance of The Debtor's Property

The Third Amended Disclosure Statement proposes a five year plan, at the end of which the Debtor will either refinance or sell the property to pay any outstanding amounts then owed to secured or unsecured creditors. (*See* TADS 16.) Key information regarding this proposed sale or refinance is missing, however. The plan states that, at the end of the plan term, there will be unpaid balances due to creditors as follows:

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel (213) 613-2340 • Fax (213) 613-2344

3221-006 6
CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

| Creditor | Unpaid Balance At End Of Plan Term |
|---|---|
| Citizens Business Bank "A" Loan | $8,343,109.83 |
| Delovely Properties | $1,407,083.27 |
| Barnust Properties | $1,755,089.00 |
| Lobar Properties & Dorn Platz | $338,061.91 |
| **Total:** | **$11,843,344.01** |

Thus, the Debtor proposes to pay, in one lump sum at the end of the plan period, a total of $11,843,344.01, not including any costs of sale or refinance. (*See* TADS 18, Exh. F.) The Third Amended Disclosure Statement provides no meaningful analysis of the Debtor's ability to refinance, the term of any proposed refinance, or the costs of any refinance, all of which will impact the Debtor's ability to pay the over eleven million dollars projected due under its third Amended Disclosure Statement. Similarly, the Third Amended Disclosure Statement provides no meaningful analysis regarding the proposed sale of the Debtor's single asset five years hence, and no analysis of the costs of any such sale or the Debtor's ability to conclude a sale (or refinance) immediately post-bankruptcy in a commercial real estate market that has been volatile and shows no signs of stabilization. (*See* TADS Exh. G.) It is neither fair nor equitable to allow Fey 240 to speculate on an uncertain future lending environment with CBB's and the other creditor's capital. (*See In re: Orchards Vill. Invs.*(Bankr. D. Oreg. 2010) 2010 Bankr. LEXIS 48, *60-61. (denying confirmation of a Chapter 11 Plan of reorganization because it is not "authorized or appropriate under § 1129(b)(2)(A)(i)(II)" to permit the borrower to "speculate on an uncertain future lending environment not only with their own funds, but with [the lender's] money as well).)

In addition, the Debtor's sale analysis provides a scenario with and without the Glendale Career schools debt, but the refinance analysis does not include the Glendale Career Schools debt. As is discussed herein, Glendale Career Schools currently holds a recorded deed of trust on the Debtor's property. Adequate information for both the refinance and the sales analyses should include a discussion or example of the Debtor's projected finances if the Glendale Career Schools claim is allowed. Without that information, Fey 240's refinance analysis is inadequate.

3221-006 7
CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

c. The Third Amended Disclosure Statement Misstates The Interest Rate Due On The Evilsizer Mechanic's Lien

The Third Amended Disclosure Statement lists Evilsizer Construction as an undisputed secured claimant with a claim in the amount of $407,682.93. (TADS 25.) The SADS proposes to pay an interest rate on the Evilsizer claim of 0% and provides projections based upon a 0% interest rate. (TADS 28.) Evilsizer Construction, however, has filed a proof of claim with an attached judgment which states that Evilsizer's judgment accrues interest at the daily rate of $91.61. (Claim 11-1, filed on March 15, 2010.) Given that the TADS proposes to pay the Evilsizer Claim by making monthly payments of $6,794.72.00 beginning in the 1st month following plan confirmation (SADS 25), more information and accurate information is necessary for CBB and the hypothetical investor to determine what will be the true state of Fey 240's finances throughout the life of the proposed plan.

d. The Third Amended Disclosure Statement Does Not Provide Adequate Information, And In Fact Provides Incorrect Information, Regarding Glendale Career School's Claim

The Third Amended Disclosure Statement identifies as Class 2C a disputed claim from Glendale Career Schools ("GCS") in the amount of $2,410,803.99 an amount that is $400,000 more than stated in the original Disclosure Statement (TADS 8; *See also* Disclosure Statement, p. 25.) Throughout the TADS, the GCS claim is described as "unsecured" despite the fact that GCS currently holds a recorded second deed of trust against Fey 240's single asset. (*See* Request for Judicial Notice in Support of Reply in Support of Motion for Relief from Stay, filed by CBB on July 20, 2010, Docket #86, Exh. 2.) Furthermore, as was mentioned earlier, the Debtor's sale analysis provides a scenario with and without the Glendale Career schools debt, but the refinance analysis does not include the Glendale Career Schools debt. Since a two million four hundred thousand dollar claim will significantly affect the Debtor's projections, more information is necessary for CBB and any hypothetical investor to adequately determine the feasibility of FEY 240's projected finances and refinance analysis.

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel (213) 613-2340 • Fax (213) 613-2344

3221-006

8

CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

2. The Third Amended Disclosure Statement Contains Material Omissions And Misstatements Of Fact

a. The Third Amended Disclosure Statement Ignores the Court's Order Denying the Debtor's Application to Employ Dorn Platz Management, Inc.

A fundamental flaw in the Amended Disclosure Statement is its failure to address this Court's May 12, 2010 order denying FEY 240's application to employ Dorn Platz as its management company based in part upon the determination that Dorn Platz is not a disinterested party. As with the previous three disclosure statements, the TADS proposes continuing payments to Dorn Platz. (*See* TADS, p. 37 and Exh. B1.) In its fourth try, and having known about this Court's order denying its application to employ Dorn Platz, the Debtor continues to propose to use Dorn Platz as its management company. The creditors should not be forced to wait while Fey 240 slowly decides to do what it has already been ordered to do. Without a management company, this single asset real estate entity cannot function. Fey 240 has now had over 5 months to find a management company and has failed to do so. This court should deny approval of the TADS and dismiss this bankruptcy. The creditors have been forced to wait for Fey 240 for too long.

b. The Third Amended Disclosure Statement Does Not Provide Adequate Information Regarding Post-Confirmation Management

As noted earlier, the Debtor's application to employ Dorn Platz Management, Inc. as property manager has been denied. The Third Amended Disclosure Statement does not address this fact, but rather provides that Dorn Platz Management, Inc. "shall provide day-today services such as rent collection and payment of operating expenses . . . and shall be paid a fee equal to three percent (3%) of gross revenues for performing such services." (TADS 37-38.) This has been a continuing theme throughout all four of the Debtor's Disclosure Statements, despite the fact that the Court has denied Fey 240's application to employ Dorn Platz and despite the fact that Fey 240 has not made any motion to either have the court revisit its order or to have the court approve a new management company. CBB submits that essential information for a hypothetical investor to make an informed decision includes the proposed property manager and whether that property manager will continue to command three percent of the gross revenues for its duties or whether a different rate will be negotiated. Furthermore, and as the situation currently stands,

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

FEY 240 does not have a property manager; without a property manager to manage its single asset, FEY 240's Chapter 11 reorganization Plan is inherently not feasible.

c. The Third Amended Disclosure Statement Does Not Discuss The Fact That Glendale Career Schools Has A Lien On The Debtor's Property

As discussed earlier, the Third Amended Disclosure Statement identifies as Class 2C a disputed claim from Glendale Career Schools ("GCS") in the amount of "[a]pproximately $2,400,000," an amount that is $400,000 more than stated in the original Disclosure Statement (TADS 27; *See also* Disclosure Statement, p. 25.) The Debtor attempts to downplay the significance of the GCS claim, noting only that it is the subject of an adversary action and thereafter giving the claim a value of $0 or "whatever portion of the claim that would be allowed." (SADS 27-28.) The Third Amended Disclosure Statement again fails to mention that GCS has a validly recorded lien on Fey 240's property. This fact is crucial, as a now two million four hundred thousand dollar claim, supported by a properly recorded lien, will significantly affect the Debtor's financial projections. Furthermore, and as has been discussed earlier, despite the fact that the debtor proposes to pay GCS in one payment "[u]pon the sale or refinance of the building" (TADS 28), the GCS claim is not included in the Debtor's refinance analysis.

C. FEY 240's Chapter 11 Plan is Fatally Flawed And Therefore Non-Confirmable

A body of jurisprudence has developed which suggests that notwithstanding adequate disclosure of information required by section 1125(b), a disclosure statement should not be approved if the proposed plan, as a matter of law, cannot be confirmed. (*See In re Allied Gaming Mgmt.* (Bankr. W.D. La. 1997) 209 B.R. 201, 202.)

1. The Plan Is Not Feasible

Under 11 U.S.C. § 1129(a)(11), a court may confirm a plan only if the plan is feasible. Feasbility requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed under the plan." (11 U.S.C. § 1129(a)(11).) To establish a feasible plan, the Debtor must show through concrete evidence that there will be sufficient cash flow to fund the plan and maintain operations according to the express

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel (213) 613-2340 • Fax (213) 613-2344

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

terms of the plan. The test is whether the acts which are to be accomplished by the Debtor after confirmation can be done as a practical matter under the facts disclosed. (*In re Pizza of Hawaii, Inc.* (9th Cir. 1985) 761 F.2d 1374.) Here, Fey 240 cannot continue its operation as a practical or legal matter under the terms of its proposed plan. Fey 240 is a single asset real estate entity with no property manager and the property manager it proposes to use is barred from conducting business under California law.

a. The Plan Is Not Feasible Because The Debtor Has No Property Management

As noted, this Court has denied FEY 240's application to employ Dorn Platz Management, Inc. as its property manager, in part due to its status as an interested person. According to the Third Amended Disclosure Statement, Fey 240's sole asset is the property located at 240 North Brand Blvd. in Glendale, CA and the Third Amended Disclosure Statement proposes to fund the proposed Chapter 11 plan through the lease and possible sale of real property owned by Fey 240. Since the Debtor's application to employ Dorn Platz has been denied, the plan is patently not feasible because the Debtor has proposed no means by which it can continue to manage its property.

2. The Plan Does Not Meet the "Cram-Down" Requirements of 11 U.S.C. Section 1129(a) And Cannot Meet the "Fair and Equitable" Requirements of 11 U.S.C. Section 1129(b)

To confirm the Third Amended Disclosure Statement over CBB's objection, Fey 240 must utilize the "cram-down" provisions of the bankruptcy code, which dictate that the plan must treat each objecting class fairly and equitably, and does not discriminate unfairly against any objecting impaired class. (11 U.S.C. § 1129(b).) Section 1129(b)(2)(A) sets forth three non-exclusive methods of complying with the "fair and equitable" requirement of section 1129 (b) with respect to secured claims:

1. Holders of claims in the class retain the liens securing such claims, and each such holder will receive cash payment totaling at least the allowed amount of such claim, and having a present value on the effective date of the plan which is not less than the allowed amount of such claims; or

2. The collateral will be sold free and clear of the secured creditor's lien, subject to the secured creditor's right to credit bid pursuant to Section 363(k), with the lien to attach to proceeds and be treated as provided under subsections (i) or (iii) of Section 1129(b)(2)(A); or

3. The holders of such claims will realize the indubitable equivalent of such claims.

(11 U.S.C. § 1129(b)(2)(A).) To confirm the Third Amended Disclosure Statement over CBB's objection, with respect to CBB's claims, Fey 240 must demonstrate that CBB will retain its lien and receive deferred cash payments totaling at least the amount of CBB's secured claim. Fey 240's plan, as proposed, fails to meet these requirements. Fey 240's plan unfairly discriminates in its treatment of CBB by proposing interest only payments to CBB and by proposing to pay junior lienholders prior to CBB. In addition, Fey 240's plan violates the absolute priority rule by allowing the Debtor's equity holders to retain their interest while not paying the unsecured creditors the full present value of their claims.

a. The Plan's Proposed Payment Schedule Is Neither Fair or Equitable

Fey 240's Third Amended Disclosure proposes interest only payments on CBB's note at a rate of 5% for months 1 through 21 of the plan, with the principal amortized over a 30 year period for the remaining 39 months of the plan. First, the Debtor provides no confirmation or analysis that these proposed payments have a present value not less than the present value of CBB's claim. Notwithstanding that the Debtor has been in default since October 2009, the plan proposes to amortize CBB's loan over thirty years, with monthly interest only payments and a balloon payment due in five years. The interest rate the Debtor proposes to pay CBB to compensate for this delay and risk is only five percent (5%). Given that CBB's note rate is 6.125% and its default rate is 11.125%, an interest rate of five percent is not adequate for a loan of this type. The appropriate rate of interest or discount factor to be applied to payment of secured claims under a Chapter 11 plan "should be the rate of interest that the debtor would pay to borrow a similar amount on similar terms in the commercial loan market." (*In re Camino Real Landscape Maintenance Contractors, Inc.* (9th Cir. 1987) 818 F.2d 1503, 1506.) Calculating the rate starts with an appropriate base rate plus the addition of a factor for risk (*Id.*) Here, Fey 240 proposes an interest rate of 5% based upon the unsupported assertion that the "current 60 month Treasure rate

3221-006 12

CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

is approximately 1.4%" and that the market rate is "approximately 2.5% to 3.0% over the comparable Treasury Rate." (TADS 22.) Fey 240's "analysis" does not account the loan to value ratio, which, using CBB's asserted value of $8,960,000 results in a LTV of approximately 98%. Fey 240's "analysis" also uses the treasury rate, or the debt investors earn debt securities issued by the U.S. government, as the basis for its calculation rather than the prime rate. The prime rate, or the rate that banks charge each other and their most credit worthy customers, is the appropriate starting point for this analysis. Starting with the rate used by banks (like CBB) and then adjusting for risk factors would provide a realistic idea of what the proper interest rate should be. The consequence of the unreasonably low interest rate proposed by Fey 240 is that the cash payments to be paid to CBB under the plan have a net present value, as of the effective date of the plan, of substantially less than the present value of CBB's claim. This renders Fey 240's plan nonconfirmable.

b. The Proposed Plan Violates The Absolute Priority Rule

As codified in 11 U.S.C. § 1129, the absolute priority rule states, simply, that a Court will not confirm a proposed plan over the objections of a dissenting class of creditors unless the proposed plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan" and unless the creditors are paid before the Debtor's equity holders get or retain any interest under the plan. (*See* 11 U.S.C. § 1129(b)(1); *See also Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp.* (9th Cir. Ariz. 1997) 115 F.3d 650.)

Here, Fey 240's proposed Plan is in violation of the absolute priority rule because it proposes to pay certain secured and unsecured creditors principal only; there is no interest allotted. (*See* TADS, p. 15.) The secured and unsecured creditors are entitled to the full amount of their respective claims, with interest. Fey 240's proposed payments to those creditors have a net present value of substantially less than the present value of their respective claims. Under the absolute priority rule, the creditors must be paid in full before Fey 240's equity holders get or retain any interest under the plan. In addition, Fey 240 has not even alleged, nor can it prove, that there is any new value proferred by its sole equity holder to satisfy the "new value exception" to the absolute priority rule. (*See In re Bonner Mall Partnership* (9th Cir. 1993) 2 F.3d 899.) Under the "new value exception," equity owners of a debtor are permitted to retain an interest in the

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel (213) 613-2340 • Fax (213) 613-2344

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

reorganized debtor, even if a senior class of creditors is not paid in full, proved that they contribute value to the debtor which is: 1) new, 2) substantial, 3) money or money's worth, 4) necessary for a successful reorganization, and 5) reasonable equivalent to the value or interest received. (*In re Bonner Mall*, 2 F.3d at 908-909.) Fey 240 has provided for no capital contribution, and no other contribution, by its equity holder that would allow it to retain its equity interest under this exception. Therefore, not only is the Third Amended Disclosure Statement not fair and equitable as to both secured and unsecured creditors, it also runs afoul of the absolute priority rule by permitting Fey 240's equity shareholder to retain his interest.

3. The Plan Misclassifies Claims

Improper classification of claims makes a plan nonconfirmable. (11 U.S.C. §§ 1122, 1129(a)(1).) Unless two or more secured creditors have identical and equal rights in the same collateral, each secured claim must be placed in a separate class. (*In re: Commercial Western Finance Corp.* (9th Cir. 1985) 761 F.2d 1329, 1338; *Matter of Martin's Point Ltd. Partnership* (BC ND GA 1981) 12 B.R. 721, 725.) Secured creditors with different priority liens cannot be placed in the same class; all claims within a class must be given the same treatment and holders of liens with different priority in the same collateral cannot be given the same treatment because the holders of the highest priority lien rights superior to the holder of the lowest priority lien. (*See In re Holthoff* (BC ED AK 1985) 58 B.R. 216, 219.) Here, Fey 240 has placed the holders of its first, second and fourth trust deeds, as well as the holder of a mechanic's lien, all in Class 1. (*See* TADS 18.) Not only does this misclassification of claims make the Debtor's plan per se nonconfirmable, it also runs afoul of the bankruptcy code's prohibition against classification of claims for the purpose of vote manipulation. (*See, e.g., In re Tuscon Self Storage, Inc.* (9th Cir. BAP 1994) 166 B.R. 892, 897-898.)

In addition, Fey 240's plan misclassifies the claim of Glendale Career Schools. Throughout the Third Amended Disclosure Statement, the GCS claim is classified as an unsecured claim when in fact GCS holds a recorded second deed of trust on Fey 240's single asset. Again, this misclassification makes the plan non-confirmable. Not only is the GCS claim misclassified in the TADS, the TADS creates classifications that impermissibly include other classes. For instance, Class 3 – Insider Claims is apparently a mixture of Class 1D (the secured claim of

3221-006 14
CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

Barnust Properties) and Class 2B (the unsecured claims of Lobar Properties and Dorn Platz). Again, this misclassification renders Fey 240's plan non-confirmable.

D. The Third Amended Disclosure Statement Provides Inaccurate Information

In addition to adequate information, a disclosure statement must not contain inaccurate, deceptive, or misleading information; "including false information is a more serious matter than a mere lack of information." (*In re Brotby* (B.A.P. 9th Cir. 2003) 303 B.R. 177, 193.) Here, FEY 240's Third Amended Disclosure Statement should not be approved because it contains inaccurate and misleading information about various claims and projections, including the interest rates on Evilsizer Constructions' claim, the status and amount of claims filed, and the Chapter 7 liquidation analysis.

1. The Third Amended Disclosure Statement Provides Inaccurate Information as to the Claim of Evilsizer Construction

As discussed earlier, the Third Amended Disclosure Statement lists Evilsizer Construction as an undisputed secured claimant with a claim in the amount of $407,682.93. (TADS 8.) The Debtor's Second Amended Disclosure Statement and First Amended Disclosure statement listed the debt of Evilsizer Construction at the same amount. (*See* FADS 8; *See also* SADS 8.) Evilsizer Construction, however, has filed a proof of claim with an attached judgment which states that Evilsizer's judgment accrues interest at the daily rate of $91.61. (Claim 11-1, filed on March 15, 2010.) Thus, the debtors past three Disclosure Statements have ignored the accruing interest on the Evilsizer Construction claim and have accordingly inaccurately stated the amounts due to Evilsizer. FEY 240's Third Amended Disclosure Statement should not be approved because it contains inaccurate information about the interest rates on Evilsizer's claim.

2. The Third Amended Disclosure Statement Provides Inaccurate Information as to the Number and Amount of Claims Filed Against The Debtor

Page eight of the TADS is the Debtor's list of its secured and unsecured creditors, the claims filed and the amounts of the claims. The Debtor's list is incorrect. The following claims are either omitted entirely or misstated:

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

| Claimant | As Stated in TDS | Amount As Stated In Claims Register |
|---|---|---|
| AR Painting, Inc. | $0.00 | $10,930.00 *Claim 17-1, filed 03/16/2010* |
| Hampton Floor Covering | No claim filed | Claim 19-1, filed July 14, 2010 |
| Greg Galletly | Not Included | $8,612.25 *Claim 18-1 filed July 12, 2010* |

As can easily be seen, not only is the Debtor's list incorrect, it is missing the claim of an insider – Fey 240's manager, Greg Galletly. Whether the additional claims would result in a different economic forecast is unclear, but it is necessary information that should be included in the Disclosure Statement.

3. The Third Amended Disclosure Statement Provides An Inaccurate Liquidation Analysis

As is more fully discussed above, throughout the TADS, Fey 240 relies upon its appraiser's value of $12,000,000.00 to perform its calculations, yet Fey 240's liquidation analysis inexplicably relies upon CBB's asserted property value of $8,960,000.00. Of course, the Debtor's reliance upon the lower number for its Chapter 7 liquidation analysis results in a value for the building that is drastically lower than otherwise noted and skews the projected distribution under a Chapter 7 liquidation. The liquidation analysis is a crucial figure necessary for a creditor to evaluate its treatment under the plan and its alternatives. Without information that corroborates the accuracy of Fey 240's figures and without any explanation as to why Fey 240 arbitrarily chose to use CBB's numbers, CBB and the other creditors are left to simply trust the figures and projections supplied by FEY 240, which numbers have already been shown to be unreliable.

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

## IV. CONCLUSION

For the foregoing reasons, CBB objects to the Debtor's Third Amended Disclosure Statement and Proposed Chapter 11 Plan and requests that this Court withhold approval of the Third Amended Disclosure Statement. CBB further requests that this Court dismiss this matter based upon the Debtor's failure to submit a confirmable statement after four attempts.

Dated: October 5, 2010

**EPPS YONG & COULSON, LLP**

By: /s/ Michael B. Wilson
Dawn M. Coulson, Esq.
Michael B. Wilson, Esq.
Attorneys for Creditor CITIZENS BUSINESS BANK

3221-006
17
CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

| In re: FEY 240 NORTH BRAND, LLC<br>Debtor(s). | CHAPTER:11<br>CASE NUMBER: 2:09-bk-44228-AA |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 S. Hope Street, 35th Floor, Los Angeles, CA 90071.

A true and correct copy of the foregoing document described as:

**(1) CITIZENS BUSINESS BANK'S OBJECTION TO THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC;**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 5, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**United States Trustee (dare.law@usddoj.gov)**
**Dawn M. Coulson (dcoulson@eyclaw.com)**
**Mitchell B. Ludwig (mbl@kpclegal.com)**

**II. (a) SERVED BY U.S. MAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, I served the following person(s) and/or entity(ies) by personal delivery as follows: On **October 5, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, addressed as follows and;

**(b) SERVED BY FACSIMILE TRANSMISSION**: On **October 5, 2010** , I faxed the document(s) to the persons at the fax numbers listed in the Service List. The telephone number of the sending facsimile machine was (213) 613-2344. No error was reported by the fax machine that I used:

**John Paul Schock, Esq.**
**Schock & Schock**
**210 S. Orange Grove Blvd., Ste 200**
**Pasadena, CA 91105**
**Fax: (626) 298-6447**

**Fey 240 North Brand LLC**
**Mr. Greg Galletly**
**210 S. Orange Grove Blvd.**
**Pasadena, CA 91105**
**Fax: (626) 204-5201**

***[Proof of Service Continued on Next Page]***

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel (213) 613-2340 • Fax (213) 613-2344

3221-006
18
CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

**III.** **SERVED BY PERSONAL DELIVERY**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on: **October 5, 2010** I served the following person(s) and/or entity(ies) by personal delivery, as llows: Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Honorable Alan M. Ahart**
**U.S. Bankruptcy Court**
**Edward Roybal Federal Building**
**255 E. Temple Street, Court Room 1382**
**Los Angeles, California 90012-3300**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 5, 2010 | Lorraine Estrada | /s/ Lorraine Estrada |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

EPPS YONG & COULSON, LLP
333 S. HOPE STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2340 • FAX (213) 613-2344

3221-006 19
CITIZENS BUSINESS BANK'S OBJECTION TO THE THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC