ORIGINAL

1  SCHOCK & SCHOCK, alc.
   210 So. Orange Grove Blvd. Suite 200
2  Pasadena, CA 91105
   626-298-6446
3  fax 626-298-6447
   [bar no. 48632, 52781]
4
   Attorney for Debtor

FILED
OCT 20 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re:

FEY 240 NORTH BRAND, a
Limited Liability Company;

   Debtor

Bankruptcy No. LA 2:09-bk-44228-AA

Chapter 11

REPLY OF DEBTOR TO OBJECTIONS OF CITIZENS BUSINESS BANK TO PROPOSED THIRD AMENDED DISCLOSURE STATEMENT AND PLAN

DATE: October 27, 2010
TIME: 10:00 A.M.
PLACE: 255 E. Temple Street, Room 1375 Los Angeles CA 90017

To the Court and all interested parties:

The Debtor submits this Response to Citizens Business Bank's, herein "CBB", objections to Proposed Third Amended Disclosure Statement Describing Chapter 11 Plan of Reorganization Submitted by Debtor Fey 240 North Brand, LLC.

## INTRODUCTION

The original proposed Disclosure Statement was filed on

1

REPLY OF DEBTOR TO OBJECTIONS OF CITIZENS BUSINESS BANK TO
PROPOSED THIRD AMENDED DISCLOSURE STATEMENT AND PLAN

February 24, 2010. CCB and GCS/LES both filed objections and at the hearing the Court ordered the Debtor to file an amended disclosure statement. The Second Amended Disclosure Statement that was filed and served on July 6, 2010, and the Debtor contends that the Second Amended contained adequate information to proceed with voting on the Plan of Reorganization. The Court concurred in its Tentative Ruling on July 14, 2010, but at the request of CBB continued the hearing to allow any creditor to file objections by July 28, 2010. The hearing was continued again to this date.

In response to CBB's objections, and in a attempt to satisfy CBB's objections, the Debtor has filed and served a proposed a Third Amended Disclosure Statement that pays all allowed claims in full over 60 months. The Plan is feasible now that the building owned by the Debtor is 98% leased and occupied. The Debtor has had settlement discussions with many of the creditors and believes that there will be broad support for the Plan as proposed. The assumptions underlying these projections including detailed terms of the Debtor's leases (pages 14 and 15), the proposed treatment of each creditor (page 17 -32) and 4 years of historic operations (pages 53 and 54) are also contained in the Seconded Amended Disclosure Statement.

The Debtor believes that the only creditors that will not currently vote for the Plan are Citizen's Business Bank and GCS/LES. However, the Debtor proposes to pay both of these creditors their allowed claims in full.

**RESPONSE TO OBJECTIONS**

To assist the Court the Debtors Response follows the exasct

2

REPLY OF DEBTOR TO OBJECTIONS OF CITIZENS BUSINESS BANK TO
PROPOSED THIRD AMENDED DISCLOSURE STATEMENT AND PLAN

format of CBB's objections. The Objections raised by Citizen's Business Bank (CBB) and the Debtor's reply to each objection are as follows:

## II. FACTUAL BACKGROUND

### A. The Debtor and it's Property Manager

The Debtor is a single asset entity, Limited Liability Company, and has to managers, Greg Galletly and Keith Fey, who provide the management function for the debtor. The Debtor has searched the Third Amended Disclosure Statement to find any proposal to hire Dorn Platz Management to manage the debtors property. For clarity purposes, because of the vigorous, groundless objections of CBB to retaining Dorn Platz Management, on page 37, it is made clear that the debtor has hired Dorn Platz Management, Inc., not as a property manager, but to perform bookkeeping and other necessary related services involved in the day to day operation of the property.

### B. The Loan History and Assignment of Leases.

This summary is substantially correct. Although it does not discuss the subsequent leases to Goodwill Industries, Inc; South West College and NWC Investments, or the granting of the debtors motion to reject The Glendale Career Schools lease.

### C. The Debtors Default, CBB's Efforts to Collect, and the Superior Court Action.

This summary is substantially correct, with the exception that the Debtor commenced Adequate Protection payments, of $34,288.87 on October 1, 2010, and will continue to make the adequate protection payments until the effective date of the Plan.

**D. Relevant Bankruptcy Proceedings.**

The Debtor is not sure of the relevance of this discussion as the Court at the Debtors request or by its own orders continued all of these dates, including the date for this hearing now set for October 27, 2010.

**III. OBJECTION TO THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING PROPOSED CHAPTER 11 PLAN.**

**A. The Third Amended Disclosure Statement Violates the Adequate Disclosure Requirement of 11 U. S. C. Section 1125(b).**

    **1. The Financial Disclosures in the Debtor's Third Amended Disclosure Statement are <u>Inaccurate and Misleading.</u>**

According to CBB's mostly boilerplate objection, the proposed plan fails to provide adequate information on two issues, not inaccurate or misleading information, and inaccurate information on only two issues. The debtor disputes the objection as to the adequacy of the information and the claim that information is inaccuracy as discussed below.

    **a. The Third Amended Disclosure Statement Does not Provide Adequate Information Regarding its Liquidation Analysis.**

The essence of CBB's objection is that the debtor utilized CBB's, appraised value of the property, of $8,960,000.00. They have subsequently filed a supplemental appraisal with a slightly higher value. A liquidation is a liquidation. It is not a sale at what a willing seller and willing buyer would agree would agree to on the open market. If the debtor is unable to propose a plan CBB will proceed with its receivership and non judicial

4

or judicial foreclosure which is not only detrimental to the bankruptcy estate but the most onerous of all liquidations.

Arriving at any liquidation analysis has to be somewhat subjective. Utilizing, CBB's analysis and appraisal of the value of the property provides the creditors with a readily verifiable, analysis and therefor adequate information as to exactly how the debtor arrived at the values utilized in the liquidation analysis.

**b. The Third Amended Disclosure Statement Does not Provide Adequate Information Regarding The Proposed Sale or Refinance of the Debtor's Property.**

Again in arriving at the value of the building in five years has to involve some estimations, however, in the proposed plan the information utilized by the debtor is not pure speculation, rather it is based on the available hard information. [See Disclosure Statement pages 38 through 41] That information includes the fact that the building is now 98% leased, where it was less than 33% leased when the Petition was filed. That the tenants are substantial tenants, ie Goodwill Industries, Inc. and 24 Hour Fitness. That the property, once the tenant improvement allowances are burned of in about two years, will generate more than one million dollars a year in base rent. That the debtor will have more than $7 million dollars in revenue over the term of the plan.

Contrary to CBB's contention that the Disclosure Statement contains "no meaningful analysis", the Disclosure Statement sets forth in some detail the facts and assumptions on which the analysis is based. The analysis does not just pull some number

5

1 out of the air, but rather relies on the 7.25% cap detailed in
2 the July 10, 2010, appraisal. Which appraisal contains a
3 readily verifiable, analysis and therefor adequate information
4 as to exactly how the debtor arrived at the cap rate utilized in
5 the Disclosure Statement. As discussed in the Disclosure
6 Statement, using the actual annual revenue, results in a value
7 for the property in five years in excess of $15 million.
8 [Exhibit F] And with a 75% loan to value, including a refinance
9 cost of $118,000.00 more than sufficient funds to complete the
10 proposed plan using the refinance option.
11 However, the debtor included in the proposed Disclosure
12 Statement, the alternative of the sale of the property, if all
13 or part of the Glendale Career Schools claim is affirmed. Using
14 the same assumed cap rate the sales price would be in excess of
15 $15.8 million dollars, and as set forth in exhibit G would
16 provide sufficient revenue after the costs of sale to pay all of
17 the creditors and the Glendale Career Schools claim in full, and
18 still leave the dbtor with over $1.7 million dollars.
19 The debtors analysis is hardly speculation, as CBB's most
20 recent appraisal arrives at a cap rate of 7.5 %, only .25%
21 higher than the debtors. Using a cap rate of 7.5% instead of
22 7.25%, reduces the sales price by only approximately
23 $500.000.00. Utilizing, CBB's experts analysis, after paying
24 the Glendale Career Schools claim in full, the debtor would
25 still have over $1.2 in proceeds from the sale of the building.
26 There is adequate information provided to substantiate the
27 debtors analysis, regarding the proposed refinance, or in the
28 alternative a proposed sale if the Glendale Career Schools

6

REPLY OF DEBTOR TO OBJECTIONS OF CITIZENS BUSINESS BANK TO
PROPOSED THIRD AMENDED DISCLOSURE STATEMENT AND PLAN

claim is affirmed, allowing for an actual difference of over $1.7 million dollars in the net sales revenue.

### c. The Third Amended Disclosure Statement Misstates the Interest Rate Due on the Evilsizer Mechanics Lien.

Actually, Evilsizer has a judgment, based upon a mechanics lien. Counsel for Evilsizer has appeared at every hearing, and most likely will appear at the present hearing to support the proposed Disclosure Statement and Plan. It is for that reason that the debtor utilizes the analysis that is acceptable to the creditor in the proposed Disclosure Statement and Plan.

### d. The Third Amended Disclosure Statement Does Not Provide Adequate Information, And in Fact Provides Incorrect Information Regarding Glendale Career School's Claim.

Again CBB is stretching to come up with a meaningful objection. As set forth in the Third Amended Disclosure Statement, on page 8, the $2,410,803.99 is based on the claim filed by Glendale Career Schools, and to be consistent the debtor utilized that amount throughout the Disclosure Statement. In addition the debtor on page 43, states that it has filed an adversary action challenging both the amount of the claim and the validity of the lien. Finally, as discussed above the debtors sale analysis includes satisfying the Glendale Career Schools claim in full, and still leaves a $1.2 million dollar cushion.

### 2. The Third Amended Disclosure Statement Contains Material Omissions and Misstatements of Fact.

### a. The Third Amended Disclosure Statement Ignores the Court's Order Denying the debtors's Order Denying the

7

**Debtor's Application to Employ Dorn Platz Management, Inc.**

As pointed out above, the Disclosure statement does not propose or provide for the employment of Dorn Platz Management to manage the property. The debtor is a single asset limited liability company and has two managers. At this time Dorn Platz Management is not providing any professional services, but just providing basic non professional bookkeeping services, regarding the day to day operation of the property. The Debtor actually has no need for a management company as the building is fully leased. The managers, have the full authority, to retain any professionals, with the courts approval, such as brokers, contractors and accountants, that might be needed in the future to operate the debtor.

**b. The Third Amended Disclosure Statement Does Not Provide Adequate Information Regarding Post-Confirmation Management.**

The provisions for the post-petition management of the debtor, and the debtors property is set forth in detail on page 37. CBB seems to be obsessed with the idea that the debtor needs to hire a professional management company and that without a professional management company the debtor somehow fails. The managers of the debtor, with permission of court, have the authority to retain any professionals, such as brokers, accountants, or contractors that may be needed in the future.

**c. The Third Amended Disclosure Statement Does Not Discuss The Fact That Glendale Career Schools Has a Lien on the Debtors Property.**

Again CBB is stretching to come up with a meaningful objection. As set forth in the Third Amended Disclosure Statement, on page 8, the $2,410,803.99 is based on the claim filed by Glendale Career Schools, and to be consistent the debtor utilized that amount throughout the Disclosure Statement. In addition the debtor on page 43, states that it has filed an adversary action challenging both the amount of the claim and the validity of the lien. Finally, as discussed above the debtors sale analysis includes satisfying the Glendale Career Schools claim in full, and still leaves a $1.2 million dollar cushion.

**C. FEY 240's Chapter 11 Plan is Fatally Flawed And Therefore Non-Confirmable.**

**1. The Plan is Not Feasible.**

Again CBB fails to identify any significant factor or facts that would render the propose Plan Not Feasible. As set forth in the Proposed Disclosure Statement and the attached schedules there is more than sufficient cash flow to fund the plan until the property is either refinanced or sold. At that point even providing for the Glendale Career Schools claim, on a sale there would be a cushion of more than $1.2 million dollars. Again the issue regarding employment of a management company is a non issue.

**a. The Plan Is Not Feasible Because the Debtor Has No property Management.**

As has been discussed before herein the debtor presently has no need for a professional management or the expense that would be incurred by retaining one. The managers of the debtor

9

1  have the necessary authority to operate the property and if they
2  determine there is a need for professional can hire with the
3  courts approval, any professionals that are needed in the
4  future, which is unlikely as the building is fully leased.

**2. The Plan Does Not Meet the "Cram-Down" Requirements of 11 U.S.C. Section 1129(a) And cannot Meet the "Fair and Equitable " Requirements of 11 U.S.C. Section 1129(b).**

In support of this contention CBB offers three claimed breaches of the "Fair and Equitable" requirement; (1) by proposing interest only payments to CBB, (2) by proposing to pay junior lien holders prior to CBB, and (3) violates the absolute priority rule by allowing the Debtor's equity holders to retain their interest while not paying the unsecured creditors the full present value of their claims.

**a. The Plan's Proposed Payment Schedule Is Neither Fair or Equitable.**

As CBB notes to be fair and equitable the interest rate paid to CBB "should be the rate of interest that the debtor would pay to borrow a similar amount on similar terms in the commercial loan market." The current five year treasury rate is not some great secret as is discussed in the proposed Disclosure Statement. It is posted daily, and appears in may journals including the Wall Street Journal, and presently actually far closer to 1.2% than 1.4 %, the amount the debtor used in an abundance of caution. The original CBB Promissory Note for this loan provided for an adjustable interest rate of 2.25% over the 5-year Treasury Constant Maturity rate, the same Treasury bill rate used by the debtor in calculating its proposed interest

10

REPLY OF DEBTOR TO OBJECTIONS OF CITIZENS BUSINESS BANK TO PROPOSED THIRD AMENDED DISCLOSURE STATEMENT AND PLAN

1  rant. CBB does not dispute that the market rate is 2.5% to 3%
2  over the comparable treasury rate, which would yield an interest
3  rate of at most 4.4%. Adjusting for risk factors the debtor
4  arrive at a 5% rate.
5       With regards to the issue of loan to value, the Debtor's
6  most recent appraisal placed the value of the property at $12
7  million at CBB most recent appraisal of $10.5 million.
8       CBB's discussion of a calculation based on the prime rate
9  rather than the treasury rate lacks one element, and that is any
10 mention of what the current prime rate happens to be.  The
11 present prime rate according to the Wall Street Journal is
12 3.25%. Again adjusting for risk factors arrives at the same 5%
13 interest rate.
14       **b. The Proposed Plan Violates the Absolute Priority Rule.**
15       The Absolute Priority Rule is only applicable to claims of
16 creditors that have not accepted the plan.  11 U.S. C. §
17 1129(b).  The debtor has not received any objections to the
18 proposed Disclosure Statement and Plan other than by CBB. At
19 this time the debtor is not aware of any class, other than CBB
20 that is not in support of the Plan.  The debtor notes that at
21 this time CBB is not claiming that the plan, payment of interest
22 until the property is refinanced or sold, and then payment of
23 full of CBB's claim is other than the indubitable equivalent of
24 its claim.
25       **3. The Plan Misclassifies Claims.**
26 This is a last desperate effort to mis cast the contents of
27 Third Amended Disclosure Statement. The debtor does not have
28 only one class of Secured Creditors. The Debtor classified the

11

REPLY OF DEBTOR TO OBJECTIONS OF CITIZENS BUSINESS BANK  TO
PROPOSED THIRD AMENDED DISCLOSURE STATEMENT AND PLAN

Secured creditors as Classes 1A through 1E. Each is a separate class and each class is treated as a separate class in the Second Amended Disclosure Statement. (TADS pages 20 through 25) If this is unclear, the Classes can be renumbered. Any confusion in the Class Numbering is not the basis for rejecting the Disclosure Statement as not feasible, but only a basis to amend the Proposed Disclosure Statement by renumbering the Classes.

### D. The Third Amended Disclosure Statement Provides Inaccurate Information

CBB's objection again just restates the same theme, interest rates on Evilsizer, and liquidation analysis, but adds a new irrelevant element the amount of claims filed.

**1. The Third Amended Disclosure Statement Provides Inaccurate Information as to the Claim of Evilsizer Construction.**

As has been pointed out before, Evilsizer supports the proposed Disclosure Statement and Plan and most likely will have counsel at the hearing to support the debtors.\

**2. The Third Amended Disclosure Statement Provides Inaccurate Information as to the Number and Amount of Claims Filed Against the Debtor.**

Mr Galletly has never filed a claim, let alone a claim for labor and installation of floor coverings. It appears that in processing the Hampton Floor Covering claim, either the clerks office or Mr. Hampton improperly processed the claim for $8,612.25, which just happens to be the amount scheduled in the Proposed Disclosure Statement for Hampton Floor Covering. [TADS

PAGE 8]. The omission of the amount of the AR Painting Claim, $10,930.00 is an insignificant clerical error that is easily corrected.

### 3. The Third Amended Disclosure Statement Provides An Inaccurate Liquidation Analysis.

As discussed above with regards to CBB's objection to the debtors Liquidation analysis, a liquidation is a liquidation, it is not a sale. A foreclosure sale, with a receiver in place, as would occur in this matter, is the most onerous of all liquidations, and there would be little or no chance of any one offering to buy the property, other than CBB's full credit bid, which would be leave nothing for any of the other creditors.

### IV. CONCLUSION.

As discussed herein, although CBB's may not be happy with the proposed Disclosure Statement, they are only one of the creditors and CBB's objections does not mean that the proposed plan is not confirmable or that it is not fair and equitable. The proposed Third Amended Disclosure Statement, with a few minor clerical corrections, should be approved so this matter can proceed.

Dated : October 20, 2010

Respectfully Submitted
Schock & Schock, ALC

By: John P. Schock

REPLY OF DEBTOR TO OBJECTIONS OF CITIZENS BUSINESS BANK TO PROPOSED THIRD AMENDED DISCLOSURE STATEMENT AND PLAN

## DECLARATION OF SERVICE

The undersigned certifies and declares as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 210 So Orange Grove Blvd. Pasadena, California.

On October 20, 2010, I served the following:
REPLY OF DEBTOR TO OBJECTIONS OF CITIZENS BUSINESS BANK TO PROPOSED THIRD AMENDED DISCLOSURE STATEMENT AND PLAN

On the interested parties in this action by e-mailing a copy to Dawn Coulson and Michael Wilson and thereafter placing [ ] the original [ x ] a true copy thereof in an envelope, with postage prepaid, addressed to the parties set forth on Exhibit A hereto.

I am readily familiar with Schock & Schock's practice of collecting and processing correspondence for mailing via U. S. Mail. Correspondence so collected and deposited with the United States Postal Service that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit of mailing in this declaration.

I declare under penalty of perjury under the laws of the United states of America that the foregoing is true and correct. Executed on August 4, 2010 at Pasadena, California.

*/s/ Amanda Price/*

Amanda Price

14

|   |   |
|---|---|
| 1 | EXHIBIT A |
| 2 | |
| 3 | United States Trustee<br>Dare Law, Staff Attorney |
| 4 | 725 S. Figueroa Street<br>Suite 2600 Los Angeles CA90017 |
| 5 | |
| 6 | Dawn M Coulson<br>Epps Yong, Coulson, LLP |
| 7 | 333 South Hope Street<br>35th Floor<br>Los Angeles CA 90071 |
| 8 | dcoulson@eyclaw.com<br>mwilson@eyclaw.com |
| 9 | |
| 10 | Mitchell B. Ludwig<br>Knapp Peterson & Clarke |
| 11 | 550 North Brand Blvd Suite 1500<br>Glendale CA 91203-1922 |

15

REPLY OF DEBTOR TO OBJECTIONS OF CITIZENS BUSINESS BANK TO
PROPOSED THIRD AMENDED DISCLOSURE STATEMENT AND PLAN