NOV 1 0 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____, ___ty Clerk

FINPLAN 12/01/09

John P. Schock - State Bar No.048632, 052781

Schock & Schock, alc.

210 So. Orange Grove Blvd., Ste 200
Pasadena, CA 91105
Telephone (626)298-6446

Attorney for Debtor

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re

**FEY 240 NORTH BRAND LLC,
a Limited Liability Company;**

                    Debtor

**Bk. No.** 2:09-bk-44228-AA

In a Case Under Chapter
11 of the Bankruptcy Code
(11 U.S.C. § 1101 et seq.)

**FEY 240 NORTH BRAND LLC
FOURTH AMENDED DISCLOSURE
STATEMENT DESCRIBING Proposed
CHAPTER 11 PLAN**

[Deleted: THIRD]

### Disclosure Statement Hearing

Date:  December 1, 2010
Time:  10:00 AM
Ctrm:  United States
Bankruptcy Court-Central
District of California, Edward
R. Roybal Federal Building &
Courthouse, 255 East Temple
St., Suite 1375, Los Angeles,
CA 90012

[Deleted: October 27]

### Plan Confirmation Hearing
Complete This Section When
            Applicable
Date:
Time:
Ctrm:    {Insert Courtroom #}
         {Insert Full
         Court Address

         Here}

2

## TABLE OF CONTENTS

I.    INTRODUCTION............................................... 4

II.   GENERAL DISCLAIMER AND VOTING PROCEDURE................... 5

III.  WHO MAY OBJECT TO CONFIRMATION OF THE PLAN............... 6

IV.   WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN............... 6

V.    VOTES NECESSARY TO CONFIRM THE PLAN..................... 11

VI.   INFORMATION REGARDING VOTING IN THIS CASE............... 12

VII.  DESCRIPTION OF DEBTORS PAST & FUTURE BUSINESS AND EVENTS
      PRECIPITATING BANKRUPTCY FILING. . . . . . . . . . . . . 13

VIII. CRITICAL PLAN PROVISIONS ............................... 16

IX.   DESCRIPTION AND TREATMENT OF CLAIMS..................... 17

X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS...... 29

XI.   FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED
      PAYMENT IS FEASIBLE.................................... 31

XII.  ASSETS AND LIABILITIES OF THE ESTATE................... 31

XIII. TREATMENT OF NONCONSENTING CLASSES ................... 32

XIV.  TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS
      (CHAPTER 7 LIQUIDATION ANALYSIS)...................... 34

XV.   FUTURE DEBTOR.......................................... 36

XVI.  SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND
      LEASES; OTHER PROVISIONS............................... 40

XVII. BANKRUPTCY PROCEEDINGS ............................... 41

XVIII. TAX CONSEQUENCES OF PLAN ............................. 42

XIX.  EFFECT OF CONFIRMATION OF PLAN......................... 43

XX.   DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN. 45

Deleted: 35

Deleted: 37

Deleted: 43½

Deleted: 46

3

**I.    INTRODUCTION**

On December 4, 2009, **FEY 240 NORTH BRAND LLC** ("Debtor") filed a
bankruptcy petition under Chapter 11 of the Bankruptcy Code
("Code").  The document you are reading is both the Fourth Amended

> **Deleted:** Third

Plan of Reorganization ("Plan") and the Fourth Amended Disclosure

> **Deleted:** Third

Statement.  Proponent has proposed the Plan to treat the claims of
the Debtor's creditors and, if applicable, the interests of
shareholders or partners and to reorganize the Debtor's business
affairs.  A disclosure statement describes the assumptions that
underlie the Plan and how the Plan will be executed.  The
Bankruptcy Court ("Court") has approved the form of this document
as an adequate disclosure statement, containing enough information
to enable parties affected by the Plan to make an informed judgment
about the Plan.  The Court has not yet confirmed the Plan, which
means the terms of the Plan are not now binding on anyone.

The Proponent has reserved **TBD** in Courtroom **TBD** for a hearing to
determine whether the Court will confirm the Plan.

Any interested party desiring further information should contact:
John P. Schock, Esq., SCHOCK & SCHOCK, 210 South Orange Grove
Blvd., Ste 200, Pasadena, CA 91105.

4

## II.   GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS,
CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.
IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.
IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT
TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE
PLAN BE CONFIRMED BY THE COURT.

The source of financial data is based on historic operating
results and cashflow projections prepared by the Debtor.  The
information contained in the Disclosure Statement is provided by
the Debtor and the Debtor's CPA (Christine Blazey, CPA).  (ALL
INFORMATION RELIED UPON IN FORMULATING THIS DOCUMENT IS SET FORTH
IN THE DECLARATION IN SEE SECTION XX.)  ALL REPRESENTATIONS ARE
TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT
WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT,
IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached
exhibits, please vote on the enclosed ballot and return it in the
enclosed envelope.

The Proponent has reserved a hearing date for a hearing to
determine whether the Court will confirm the Plan.  Please refer to
Section I above for the specific hearing date.  If, after receiving

the ballots, it appears that the Proponent has the requisite number of votes required by the Code, the Proponent will file a motion for an order confirming the Plan.

The Motion shall at least be served on all impaired creditors and partners or shareholders who reject the Plan and on the Office of the United States Trustee.  Any opposition to the Motion shall be filed and served on the Proponent no later than fourteen days prior to the hearing date.  Failure to oppose the confirmation of the Plan may be deemed consent to the Plan's confirmation.

### III.  WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

Any party in interest may object to confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### IV.  WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

It requires both an allowed and impaired claim or interest in order to vote either to accept or reject the Plan.  A claim is defined by the Code to include a right to payment from the Debtor.  An interest represents an ownership stake in the Debtor.

In order to vote a creditor or interest-holder must first have an allowed claim or interest.  With the exceptions explained below, a

6

claim is allowed if proof of the claim or interest is properly filed before any bar date and no party in interest has objected, or if the court has entered an order allowing the claim or interest. Please refer to Section VI below for specific information regarding bar dates in this case.

Under certain circumstances a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated.  As shown below, Exhibit "A" contains a list of secured claims and unsecured claims.

7

| Exch A Class | Goodwill Industries SouthWest CollegeWWC | Insider Status | $0.00 $12,500.00 | $87,000.00 Claim Filed |
|---|---|---|---|---|
| 1A | Los Angeles County Assessor | N | $807,xx.xx | $807,xx.xx |
| 1B | Citizens Business Bank | N | $8,789,328.40 | $8,428,333.31 |
| 1C | DeLovely Properties | N | $1,407,083.27 | |
| 1D | Glendale Career Schools ** | N | $1,000,000.00 | $2,410,803.99 |
| 1E | Barnust Properties | TBD | $1,755,089.00 | |
| 1F | Evilsizer Construction | N | $407,682.93 | $407,682.93 |

| Exch A | Unsecured Claims Payment Recipient | Insider Status | Total Owed | Claim Filed |
|---|---|---|---|---|
| 2A | ABR Concrete Systems | N | $3,723.60 | $3,723.60 |
| | Acetek Roofing Co | N | $480.00 | |
| | Amtech Elevator Services | N | $2,427.30 | $2,427.30 |
| | AR Painting Inc | N | $0.00 | |
| | Archer's Lock & Safe | N | $19,107.99 | |
| | Aztec Fire Protection | N | $5,515.00 | $17,150.00 |
| | Camilo Hernandez | N | $430.70 | |
| | City of Glendale | N | $12,451.74 | |
| | Crabtree Glass Company | N | $7,197.00 | |
| | Crown Disposal | N | $1,977.20 | |
| | Dal Tile Van Nuys | N | $4,840.03 | |
| | Demmert & Assoc | N | $23,600.00 | $23,600.00 |
| | Diversified Automation | N | $19,700.00 | $19,700.00 |
| | Dura Painting Company | N | $10,850.00 | |
| | Electrician Magician | N | $0.00 | |
| | Encore Image, Inc | N | $460.95 | |
| | Franchise Tax Board | N | $2,211.09 | $4,895.02 |
| | Francisco Hernandez | N | $1,805.00 | |
| | Golden Eagle Insurance | N | $626.00 | $626.00 |
| | Hampton Floor Covering | N | $8,612.25 | |
| | Interior Experts General Bldrs | N | $42,221.93 | $50,576.35 |
| | KPFF Consulting Engineers | N | $5,330.70 | $37,964.00 |
| | Labor Ready Southwest Inc | N | $5,701.95 | |
| | LA Metro Plumbing | N | $18,590.00 | |
| | Mustang Mechanical Contractors | N | $10,089.82 | $10,089.82 |
| | Roberto Morales | N | $5,000.00 | |
| | Stumbaugh & Associates | N | $12,577.00 | $12,577.00 |
| | Zero & Associates | N | $850.00 | |
| | Doug Neuman | N | $84,148.11 | |
| | Studley | N | $183,100.00 | |
| 2B | Lobar Properties | TBD | $235,887.89 | |
| | Dorn Platz | TBD | $102,174.02 | |
| 2C | Security Deposits | - | - | - |

Similarly, an interest is deemed allowed if it is shown on the list of equity security holders filed by the Debtor with the court and is not scheduled as disputed.

In order to vote, an allowed claim or interest must also be impaired by the Plan.

Impaired creditors include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment.  The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the maturity of such claim as it existed before default, compensates for any damages incurred as a result of reasonable reliance upon the acceleration clause, and (except for a default arising from failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West Supp. 2006)) compensates for any actual pecuniary loss incurred as a result of any failure to perform a non-monetary obligation.

9

<u>Impaired interest-holders</u> include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the interest holder.

There are also some types of claims that the Code requires be treated a certain way. For that reason they are considered unimpaired and therefore holders of these claims cannot vote.

To summarize, there are two prerequisites to voting: a claim or interest must be both allowed and impaired under the Plan.

If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed to have accepted the Plan). Impaired claims or interests are placed in classes and it is the class that must accept the Plan. Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of the Plan. Even if all classes do not vote in favor of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code. Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

10

Section IX sets forth which claims are in which class.  Secured claims are placed in separate classes from unsecured claims.  Fed. R. Bank. P. 3018(d) provides: "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a plan in both capacities."

### V.   VOTES NECESSARY TO CONFIRM THE PLAN

The Court may confirm the Plan if at least one non-insider impaired class of claims has accepted and certain statutory requirements are met as to both non-consenting members within a consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more than one-half in number and at least two-thirds in amount of the allowed claims actually voting, vote in favor of the Plan. A class of interests has accepted the Plan when at least two-thirds in amount of the allowed interests of such class actually voting have accepted it.  It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

11

## VI.  INFORMATION REGARDING VOTING IN THIS CASE

The bar date for filing a proof of claim in this case was March 30,
2010.  The bar date for objecting to claims was April 14, 2010.
The Debtor received sixteen (16) proofs of claim.  The undisputed
amounts claimed are reflected in Exhibit "A".  In addition, an
amount was claimed by Glendale Career Schools Inc which is in
dispute and an amount was claimed by Goodwill which will be paid in
accordance with the terms of their lease.

In this case the Proponent believes that classes 1A,1B,1C,1D,
1E,1F,2A,2B, and 2C are impaired and therefore entitled to vote.  A
tentative settlement has been reached with Class 1D and claimant
should be entitled to vote to the extent that it has an allowed
claim.  Class 3 is unimpaired and therefore does not vote.  A party
that disputes the Proponent's characterization of its claim or
interest as unimpaired may request a finding of impairment from the
Court in order to obtain the right to vote.  Class 1E as well as
Class 2B - unsecured creditors Lobar Properties and Dorn Platz, are
not affiliates of the Debtor and there is no common ownership
between the Debtor and these entities.  They may be considered
insiders because of overlapping control and may not be entitled to
vote.

**Deleted:** 3

**Deleted:** 2C is disputed

**Deleted:** will

**Deleted:** 4

**Deleted:** 1D

12

Ballots must be received by the Proponent, addressed to John P.

Schock, SCHOCK & SCHOCK, 210 South Orange Grove Blvd., Pasadena, CA

91105 by TBD.

## VII. DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING

The Debtor is a Limited Liability Company.  The Debtor conducted

100% of its business activity in Glendale, California since 2000.

What follows is a brief summary of the dates and circumstances that

led Debtor to file bankruptcy.

On November 16, 2009 Citizens Business Bank filed a Notice of

Default.  That filing precipitated the Chapter 11 filing.  A Motion

for Order Appointing Receiver and Preliminary Injunction was filed

by Citizens Business Bank and granted December 4, 2009, after the

filing of this matter.  The filing of the Bankruptcy case imposed

the Automatic Stay on this action.

What follows is a brief description of the Debtor's business and

future business plans.  Further details relating to the Debtor's

financial condition and post-confirmation operation of the Debtor

13

are found in sections X, XI, XIII, XVI, and XV.

The Debtor is in the business of Property Ownership.  The
Debtor currently owns the 55,000 square foot 3-story commercial
building located at 240 North Brand Blvd. in the business district
of Glendale, California.  The building is currently leased to three
tenants as follows:

a)  **24 Hour Fitness** – Triple Net 20 year Lease for 18,000
sq ft on the 2nd floor commenced December 1, 1994 and
terminates November 30, 2014, with the option to extend for
two (2) additional five (5) year terms based on fair market
rent for comparable space for a fitness center.  Current rent
is $25,458.39 per month with an increase to $26,222.14
scheduled for December 2010.  In addition the Tenant pays
monthly alteration rent of $4,221.31.  The current rent is
$1.41 per square foot.  In 2015, the market rent for this
space would be approximately $2.24 per square foot per month.
This Club is very successful and the Debtor anticipates the
Tenant will exercise the options to extend and will have a
significant increase in rent per square foot.

b)  **Goodwill Industries** – Triple Net 10 year Lease for
18,500 sq ft on the 1st floor commenced June 11, 2010 and
terminates June 30, 2020, with the option to extend for two
(2) additional five (5) year terms with rent at $41,440 per

14

month for Years 11 through 15, and $46,412.80 per month for
Years 16 through 20.  Current rent is $37,000 per month
through Year 10 of the term.  The lease provided the Tenant
with a Fixture and Equipment Allowance ("FF&E") rent credit of
$11,560 per month which will be a credit against the base rent
for the first 24 months of the lease.

c) **Southwest College of Medical & Dental Assistants &
Practical Nurses and its affiliate NWC Investments, LLC** have
signed a 2 1/2 year Modified Gross lease for a total of 15,912
square feet in the basement terminating February 28, 2013,
with the option to extend for two (2) additional three (3)
year terms with annual cost of living increases.  Current rent
is $22,500 per month for the term with a monthly parking
credit of $2,500 and a 2010 base year.  The Landlord's work is
complete.  The Tenant has taken possession of the space and
the lease term commenced on September 1, 2010.


With completion of the tenant improvements, the base rental income
of the property has increased from its previous $29,680 to
approximately $89,180 per month.  In addition, the NNN tenants pay
their share of operating expenses pursuant to the leases.


15

## VIII.    CRITICAL PLAN PROVISIONS

Listed below are the sources of money earmarked to pay creditors
and interest-holders.  The Debtor proposes to pay all allowed
claims in full.

a.    Future earnings from continued operations of the Debtor.
During the life of the Plan, the Debtor will use its
rental income to repay creditors.

b.    The Debtor anticipates selling the property towards the
end of the Plan to pay any outstanding amounts then owed
to Secured or Unsecured Creditors.

> **Deleted:** refinancing or

c.    If the property is sold during the Plan period, the
Debtor anticipates that all Secured and Unsecured
Creditors will be paid in full from the sales proceeds.

Most likely, undisputed general unsecured creditors can expect
payment in full over the life of the Plan as follows:

a.    Beginning in the 1st month after Plan confirmation and
continuing through the term of the Plan, general
unsecured creditors would receive their prorata share of
the 60 equal monthly payments of $8,227.09, and

b.    Payments would be made through the 60th month of the plan
unless or until the claim is paid in full.

16

## IX.    DESCRIPTION AND TREATMENT OF CLAIMS

### a. Overview of Plan Payments

Below is a summary of who gets paid what and when and from what source.  The identity of members within a particular class is explained beginning on the next page.  The second column lists two amounts: first, the amount of each payment, or if only one is to be made, then that amount; second, the total amount that will be paid over the term of the Plan; and third, if applicable, the total amount paid by refinancing or sale proceeds at the end of the Plan. The "Payment Due Date" column states the frequency with which payments will be made and the starting and ending dates.  Look at the starting date to figure out who will be paid before and after you and in what amount.  The "Source of Payment" column describes the expected source of payment.  Further details regarding the source of payment are found in section XI.

The timing of payments to many creditors is determined by the "Effective Date".  Administrative claims, unless otherwise stated, must be paid by the Effective Date.  The timing of payments to impaired creditors is measured from the Effective Date.  In this case, the Effective Date is **February 1, 2011**.

Deleted: December

Deleted: 2010

All claims listed below are undisputed.

17

| Class | Payment Recipient | Amt of Each Pymt<br>Total Amt Pd (60 Mos)<br>Final Payment | Payment Due Date | Source of Pymt |
|---|---|---|---|---|
| | Administration Fees | $1,650.00 | Paid in full on Confirmation Date | Cash on Hand |
| | BK Attorney Fees | $5,000.00<br><br>$50,000.00 | Installments of $5,000 Paid<br>beginning with 20th month of Plan<br>continuing every 3 Mos thereafter<br>until $50,000 paid in full | Rental Income |
| 1A | Los Angeles County Assessor | $6,405.18<br>$384,310.57 | Amortized & pd monthly<br>through 60 Month term of Plan<br>beginning with 1st Month | Rental Income |
| 1B | Citizens Business Bank<br>1st Trust Deed<br>Incl Costs & Penalties | $47,183.02<br>$2,630,325.46<br>$8,318,217.96 | Monthly Int Only @ 5% 1st 19 Mos<br>Mos 20-60 30-Yr Amortization<br>Unpd Bal Pd at end of Plan term | Rental Income &<br><br>Sale Proceeds |
| 1C | DeLovely Properties<br>2nd Trust Deed | $5,862.85<br>$351,770.82<br>$1,407,083.27 | Monthly Int Only @ 5%<br>for 60 Months of Plan<br>Unpd Bal Pd at end of Plan term | Rental Income &<br><br>Sale Proceeds |
| 1D | Glendale Career Schools<br>Secured Claim | $5,000.00<br>$300,000.00<br>$1,000,000.00 | Monthly Int Only @ 6%<br>for 60 Months of Plan term<br>Unpd Bal Pd at end of Plan term | -<br><br>Sale Proceeds |
| 1E | Barnust Properties<br>4th Trust Deed | $0.00<br>$0.00<br>$1,755,089.00 | -<br>-<br>Unpd Bal Pd at end of Plan term | -<br><br>Sale Proceeds |
| 1F | Evilsizer Construction<br>Mechanic's Lien | $6,794.72<br>$407,682.93<br>$0.00 | Paid in equal monthly installments<br>through 60 Month term of Plan<br>beginning with 1st Month | Rental Income |
| 2A | General Unsecured Claims | $8,227.09<br>$493,625.36<br>$0.00 | 60 Equal pymts of $8,277.09<br>beginning 1st Month of Plan | Rental Income |
| 2B | Unsecured Claims<br>Lobar & Dorn. Platz | $0.00<br>$0.00<br>$338,061.91 | <br><br>Unpd Bal Pd at end of Plan term | <br><br>Sale Proceeds |
| 2C | Security Deposits | $0.00 | Paid pursuant to terms of lease | Rental Income |

No claimant or interest holder is an affiliate of the Debtor, with the
exception of Class 1E, as well as Class 2B unsecured creditors Lobar
Properties and Dorn Platz, which although they are not affiliates of the
Debtor and there is no common ownership between the Debtor and these
entities, they may be considered insiders because of overlapping control.

Deleted: 1D

18

b. **Administrative Expenses**

    1. These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon.

    2. The Code requires that allowed administrative expenses be paid on the effective date unless the party holding the administrative expense agrees otherwise.

**Administrative Expense #1**

Claimant:  Clerk's Office Fees

$1,000.00 - subject to court approval

**Administrative Expense #2**

Claimant:  Office of the US Trustees Fees

$650.00 - subject to court approval

**Administrative Expense #3**

Claimant:  Schock & Schock, Attorneys

$50,000.00 - subject to court approval

Deleted: ¶
¶
¶
¶

19

**c. Unsecured Tax Claims**

1. These include certain types of property, sales, and income taxes.

2. The Code requires that the holders of such claims receive regular installment payments in cash over a period ending not later than five years after the date of the order for relief, unless agreed otherwise. The claimant has not agreed otherwise. The total cash payments must have a present value equal to the amount of the allowed claim. The treatment of this claim is in a manner not less favorable than the most favored non-priority unsecured claim provided in this Plan (other than any cash payments to an administratively convenient class). The amount of the allowed claim includes the amount of tax owed plus interest. The present value is calculated as of the effective date.

*The Debtor has no Unsecured Tax Claims.*

**d. CLASS ONE –**
   **Class 1A – Secured Property Tax Claims**

1. Total amount of allowed claim: **$339,414.81.** This

   amount includes a pre-petition arrearage of

| Deleted: 352,795.88 |
| --- |

20

$217,934.69 and a post-petition arrearage of

$121,480.12.

2. 60 Monthly payments to satisfy the secured claim

3. Interest rate of 5% (to compensate creditor because
   claim is paid over time)

4. Impaired

5. First payment date: 1st Month after Plan Confirmation

6. Amount of each installment: $6,405.18

7. Frequency of payments:  Monthly

8. Total yearly payments: $76,862.11

9. Final payment date:  60th Month after Plan
   Confirmation unless or until paid in full.

10. Lien is not modified in any way by the Plan.

11. Description of Collateral:  240 North Brand Blvd.,
    Glendale, CA.  Three story 55,000 sq ft Commercial
    building.


e.    **CLASS ONE**
      **Class 1B – Citizen's Business Bank Secured Claim**

      1. Total amount of allowed claim:  **$8,789,328** which
         includes $8,229,328.40 in principal, plus
         approximately $560,000 in accrued interest and other
         costs and fees.

      2. Monthly INTEREST ONLY payments for the first nineteen
         (19) months of the Plan which coincides with the

21

| Deleted: 212,129.93 |
| Deleted: 140,665.95 |
| Deleted: 10 |
| Deleted: 7,495.87 |
| Deleted: 89,950.44 |
| Deleted: twenty-one (21 |

Goodwill Tenant Improvement credit; thereafter a 30-
Yr Amortization schedule with interest calculated on
the unpaid balance of the loan for the remaining 41

Deleted: 39

months of the Plan to satisfy the secured claim.
This payment plan is designed to step up once the
Debtor no longer is obligated to pay the FF&E payment
to Goodwill.

3. Interest rate of five percent (5%).  The Debtor
believes that this rate exceeds the current market
interest rate for a loan with this term and security.
The current 60 month Treasury rate is approximately
1.25%.  The Debtor believes and is prepared to

Deleted: 4

provide expert testimony that the market rate is
approximately 2.5% to 3.0% over the comparable
Treasury Rate.  The Debtor is proposing a higher rate
in the Disclosure Statement to allow for the
possibility of an interest rate increase prior to
confirmation and for the Feasibility Analysis.  The
Debtor believes that the Bank's treatment under the
Plan is fair and equitable.

4. Impaired

5. First payment date: 1st Month after Plan Confirmation

6. Amount of each installment:  Interest only in the
amount of $36,622.20 for first 19 Months of the Plan.

Deleted: 21

Thereafter, principal and interest in the amount of

$47,183.02 per month.  The Debtor proposes to sell

the project at the end of the Plan in order to repay

the then outstanding balance of $8,318,217.96.

**Deleted:** either refinance the project or to

**Deleted:** 343,109.83

7. Frequency of payments:  Monthly

8. Total yearly payments:  $566,196.18

9. Final payment date:  60 Months after the Plan

   Confirmation unless or until paid in full.

10. Lien is not modified in any way by the Plan.

11. Description of Collateral:  240 North Brand Blvd.,

    Glendale, CA.  Three story 55,000 sq ft Commercial

    building plus rents, issues and profits from the

    building.

**f.   CLASS ONE**
   **Class 1C – <u>Delovely Properties Secured Claim</u>**

   1. Total amount of allowed claim: **$1,407,083.27** –

      ($1,100,000 in principal plus $256,666.60 of unpaid

      pre-petition accrued interest and $50,416.67 of

      unpaid post-petition accrued interest).

   2. Monthly INTEREST ONLY payments over Plan term to

      satisfy the secured claim.

   3. Interest rate of 5% (to compensate creditor because

      claim is paid over time).

   4. Impaired

23

5. First payment date: 1st Month after Plan Confirmation

6. Amount of each installment:  Interest only monthly in
   the amount of $5,862.85 beginning in the 1st month
   following Plan Confirmation for the 60 Month term of
   the Plan.  The Debtor proposes to sell the project at
   the end of the Plan in order to repay the outstanding
   balance.

   <span style="float:right; border:1px solid;">**Deleted:** either refinance the project or to</span>

7. Frequency of payments:  Monthly

8. Total yearly payments:  $70,354.16

9. Final payment date:  60th Month after Plan
   Confirmation unless or until paid in full.

10. Lien is not modified in any way by the Plan.

11. Description of Collateral:  240 North Brand Blvd.,
    Glendale, CA.  Three story 55,000 sq ft Commercial
    building.

g. **CLASS ONE**
   **Class 1D - Glendale Career Schools Inc.**

   <span style="float:right; border:1px solid;">**Deleted:**</span>

   1. Total amount of Disputed claim was approximately
      $2,400,000.  A tentative settlement has been reached
      with Glendale Career Schools for $1,000,000.

   2. Whatever portion of the claim that is allowed would
      be all due and payable upon the sale of the building.

   3. Interest Rate:  6%

   4. Impaired

24

5. First payment date:  1st Month after Plan Confirmation

6. Amount of each installment:  Interest only monthly in the amount of $5,000 beginning in the 1st month following Plan Confirmation for the 60 Month term of the Plan.  The Debtor proposes to sell the project at the end of the Plan in order to repay the outstanding balance.

7. Frequency of payments:  Monthly

8. Total yearly payments:  $60,000

9. Final payment date:  60th Month after Plan Confirmation unless or until paid in full.

10. Description of Collateral:  240 North Brand Blvd., Glendale, CA.  Three story 55,000 sq ft Commercial building.

**h.    CLASS ONE**
   **Class 1E – Barnust Properties**

1. Total amount of allowed claim:  $1,755,089

2. Interest:  None

3. Interest rate:  0%

4. Impaired

5. First payment date: 60th Month after Plan Confirmation

6. The Debtor proposes to sell the project at the end of the Plan in order to repay the outstanding balance.

**Deleted:** either refinance the project at the end of the Plan or to

7. Frequency of payments:  One time payment in Month 60

25

8. Total yearly payments:  $0

9. Final payment date:  60th Month after Plan

Confirmation unless or until paid in full.

10. Lien is not modified in any way by the Plan

11. Description of Collateral:  240 North Brand Blvd.,

Glendale, CA.  Three story 55,000 sq ft Commercial

building.

i.    **CLASS ONE**

**Class 1F - Evilsizer Construction**

| | Deleted: h |

| | Deleted: 1E |

1. Total amount of allowed claim:  $407,682.93

2. Interest:  None

3. Interest rate:  0%

4. Impaired

5. First payment date:  1st Month after Plan Confirmation

6. Amount of each installment:  Equal monthly payments

in the amount of $6,794.72 beginning in the 1st month

following Plan Confirmation for the 60 Month term of

the Plan.

7. Frequency of payments:  Monthly

8. Total yearly payments:  $81,536.59

9. Final payment date:  60th Month after Plan

Confirmation unless or until paid in full.

10. Lien priority is not modified by the Plan.

11. Description of Collateral:  240 North Brand Blvd.,

26

Glendale, CA.  Three story 55,000 sq ft Commercial

building.

j.      **CLASS TWO – UNSECURED CLAIMS**              Deleted: i

Class 2A – Undisputed General Unsecured Claims     Deleted: 2

1. Total amount of allowed claim:  $493,625.36

2. Monthly payments over Plan term to satisfy the claim.

3. Interest Rate:  0%

4. Impaired

5. First payment date: 1st Month after Plan Confirmation

6. Amount of each installment:  60 Equal monthly

   payments in the amount of $8,277.09 shall be paid

   through the 60th month of the Plan unless or until

   paid in full.

7. Frequency of payments:  Monthly

8. Total yearly payments:  $98,725.07

9. Final payment date:  60th Month after Plan

   Confirmation unless or until paid in full.

Deleted: ¶
¶
¶
¶
¶

27

k. **CLASS TWO – UNSECURED CLAIMS**
**Class 2B – <u>Potential Insider Unsecured Claims-Lobar &
Dorn, Platz</u>**

1. Total amount of allowed claim:  $338,061.91

2. No monthly payments will be made during the Plan
   term.

3. Interest Rate:  0%

4. Impaired

5. First payment date:  60th Month after Plan
   Confirmation

6. The Debtor proposes to sell the project at the end of
   the Plan in order to repay the outstanding balance.

7. Frequency of payments:  One time payment in Month 60

8. Total yearly payments:  $0

9. Final payment date:  60th Month after Plan
   Confirmation unless or until paid in full.

l. **CLASS TWO – UNSECURED CLAIMS**
**Class 2C – <u>Security Deposits</u>**

1. Total amount of allowed claim:  $22,500

2. To be paid pursuant to lease terms

3. Interest Rate:  0%

4. Impaired

5. First payment date:  None

6. Amount of each installment:  $0.00

28

Deleted: 2

Deleted: either refinance the project at the end of the Plan or to

Deleted: k

Deleted: 2

Deleted: Disputed Claim – Glendale Career Schools Inc.¶
¶
<#>Total amount of Disputed claim:  Approximately $2,400,000 in disputed claim.¶
<#>Whatever portion of the claim that would be allowed would be all due and payable upon the sale or refinance of the building and would not bear interest.¶
<#>Interest Rate:  0%¶
<#>Impaired¶
<#>First payment date: Whatever portion of the claim that would be allowed would be all due and payable upon the sale or refinance of the building¶
<#>Amount of each installment:  To be determined¶
<#>Frequency of payments: One (1)- Upon the sale or refinance of the building¶
<#>Total yearly payments: To be determined¶
<#>Final payment date:  60th Month after Plan Confirmation unless or until paid in full.¶
¶
    1.   CLASS 2 – UNSECURED CLAIMS¶
Class 2D –

7. Frequency of payments:  None

8. Total yearly payments:  None

9. Final payment date:  pursuant to terms of lease

**m.    CLASS THREE – Shareholders Interest Claims**

Under the Plan, members retain their membership interest
in the LLC.

**X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS**

The Plan cannot be confirmed unless the Court finds that it is
"feasible", which means that the Proponent has timely
submitted evidence establishing that the Debtor will have
sufficient funds available to satisfy all expenses, including
the scheduled creditor payments discussed above.  What follows
is a statement of projected cash flow for the duration of the
Plan.  The focus is on projected cash receipts and cash
disbursements.  All non-cash items such as depreciation,
amortization, gains and losses are omitted.  A positive number
reflects a source of cash; a (negative number) reflects a use
of cash.  A more detailed statement of cash flow projections
for the duration of Plan payments is attached as Exhibit "B1".

Deleted: Insider Claims¶
One hundred percent of the membership interest in the Debtor is owned by Keith Fey.  Mr. Fey does not have an ownership interest in and is not an officer or director in Barnust Properties, Lobar Properties Inc or Dorn Platz Management Inc.  Although Class 1D (Barnust), as well as Class 2B unsecured creditors Lobar Properties and Dorn Platz, are not affiliates of the Debtor and there is no common ownership between the Debtor and these entities, they may be considered insiders because of overlapping control.  Lobar Properties Inc and Barnust Properties do not have an ownership interest in the Debtor.  Bradley Barnes is an officer and director of Lobar Properties, Inc., Dorn Platz Management Inc and the managing member of Barnust Properties.  Dorn Platz Management Inc does not have an ownership interest in the Debtor, but Greg Galletly is an officer and director of Dorn, Platz Management Inc, and is one of the managers of the Debtor.¶
¶
    n.    CLASS FOUR –

29

*Exhibit B1 – 60 Month Summary (Inserted)*

FEY 240 NORTH BRAND LLC

*Exhibit B1-Summary*

60 Month SUMMARY- Actual & Projected Income & Expense

(February 2011 through January 2016)

11/10/2010 13:01

2KOFey-ScenPCFILLi0

Compressed Summary

| Target | Sq Ft | | Yr-1 | Yr-2 | Yr-3 | Yr-4 | Yr-5 | Yr-6 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Rental Income** | | | | | | | | | |
| NNN Tenants | 36,500 | | 809,333.40 | 810,906.72 | 818,773.32 | 836,951.10 | 927,840.00 | 4,203,804.54 | |
| FS6 Tenants | 17,751 | | 300,790.00 | 311,922.50 | 321,260.18 | 330,918.58 | 340,846.14 | 1,605,717.39 | |
| Pre-Paid Rent | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| NNN Cly Exp Reimb | | | 268,547.76 | 274,814.99 | 279,921.38 | 290,432.03 | 301,434.18 | 1,415,152.34 | |
| Miscellaneous Income/Parking | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| **Total Income** | 54,251 | sq ft | 1,378,631.16 | 1,397,644.21 | 1,419,974.88 | 1,458,301.71 | 1,570,122.32 | 7,224,674.28 | |
| **Less: Reasonable Operating Expenses** | | | | | | | | | |
| Elevator Contract/Repair | | | (4,929.98) | (5,065.73) | (5,217.71) | (5,374.24) | (5,535.46) | (26,123.12) | |
| Bldg Maint/General Repairs/Cleaning/Engineering/Five Si | | | (742.59) | (764.86) | (787.80) | (811.44) | (837.82) | (3,944.50) | |
| Management Fees | | 3% | (41,358.93) | (41,929.33) | (42,599.25) | (43,749.05) | (47,103.67) | (216,740.23) | |
| Insurance | | | (23,970.12) | (24,449.52) | (24,938.51) | (25,437.28) | (25,946.03) | (124,741.44) | |
| Office Supplies/Other Services | | | (401.94) | (417.06) | (429.57) | (442.46) | (455.73) | (2,146.75) | |
| Utilities-Water/Electric/Gas/Rubbish | | | (187,796.81) | (193,421.49) | (194,927.49) | (203,768.64) | (211,356.88) | (991,271.31) | |
| Property Taxes (R/E) | | | (115,354.79) | (117,641.88) | (120,015.12) | (122,415.42) | (124,863.73) | (600,310.94) | |
| **Total Operating Expenses** | | | (374,555.15) | (383,709.86) | (388,915.44) | (401,998.53) | (416,099.33) | (1,965,278.31) | |
| **Net Operating Income** | | | 1,004,076.01 | 1,013,934.34 | 1,031,059.44 | 1,056,303.19 | 1,154,022.99 | 5,259,395.97 | |
| **Less: Payment of Claims** | | | | | | | | | |
| Goodwill (FF&E Allowance) | $51,650.00 | | (138,724.00) | (80,923.50) | 0.00 | 0.00 | 0.00 | (219,649.50) | |
| 5W College - Rent Credit per Lease | | | (27,000.00) | (20,250.00) | 0.00 | 0.00 | 0.00 | (47,250.00) | |
| Capital Expenditure - Overall Site | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| **Total Capital Expenses** | | | (165,724.00) | (101,173.50) | 0.00 | 0.00 | 0.00 | (266,899.50) | |
| **Less: Payment of Claims** | | | | | | | | | |
| 1A Administrative Claims | $339,414.81 | 8.00% | (1,650.00) | (10,000.00) | (20,000.00) | (20,000.00) | 0.00 | (51,650.00) | 8,318,217.96 |
| Secured Tax Claims Interest | $339,414.81 | 8.00% | (10,378.59) | (12,443.63) | (9,147.85) | (5,653.46) | (2,041.23) | (44,995.76) | 1,407,083.27 |
| Secured Tax Claims - Principal Payme | | Amortized | (61,283.13) | (64,419.49) | (67,714.16) | (71,176.65) | (74,832.35) | (339,418.81) | 1,000,000.00 |
| **Total Administrative & Secured Claims Paid** | | | (76,513.11) | (86,862.11) | (96,862.11) | (96,862.11) | (76,862.11) | (435,980.50) | 1,755,069.00 |
| **Less: Debt Service/Secured Claims** | | | | | | | | | 0.00 |
| 1B Citizens Business Bank | $8,769,328 | 5.0% | (439,466.42) | (439,024.55) | (433,797.32) | (427,023.54) | (419,903.20) | (2,159,215.02) | 12,460,390.23 |
| Principal Reductions | | | 0.00 | (53,245.94) | (132,398.87) | (139,172.65) | (146,292.99) | (471,110.44) | |
| 1C DeLoveley Properties | $1,407,083 | 5.00% | (70,354.16) | (70,354.16) | (70,354.16) | (70,354.16) | (70,354.16) | (351,770.82) | |
| 1D Glen Career Sch Secured Clai | $1,000,000 | 6.00% | (60,000.00) | (60,000.00) | (60,000.00) | (60,000.00) | (60,000.00) | (300,000.00) | 0.00 |
| 1E Bernart Properties | $1,755,069 | 0.00% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,407,083.27 |
| 1F Evilstar Construction | $407,683 | 0.00% | (81,536.59) | (81,536.59) | (81,536.59) | (81,536.59) | (81,536.59) | (407,682.93) | 0.00 |
| **Total Debt Pymts** | $13,339,164 | | (651,357.17) | (704,161.24) | (778,086.93) | (778,086.93) | (778,086.93) | (3,649,779.21) | 1,000,000.00 |
| **Less: Unsecured Claims** | $431,647 | 0.00% | | | | | | | 1,755,069.00 |
| Unsecured Claims - Int | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 2A Unsecured Claims - Principal | $493,628 | 6.00% | (98,725.07) | (98,725.07) | (98,725.07) | (98,725.07) | (98,725.07) | (493,625.34) | 338,061.91 |
| 2B Unsecured Claims - Principal | $338,062 | 0.00% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| **Total Unsecured Claims Paid** | | | (98,725.07) | (98,725.07) | (98,725.07) | (98,725.07) | (98,725.07) | (493,625.34) | 12,818,405.14 |
| **Net Cashflow After Payment of Debt & Claims** | | | 9,795.44 | 23,012.42 | 57,385.32 | 82,629.07 | 200,348.87 | 373,131.33 | |
| *Balance Forward of Plan Approval* | | | 83,967.26 | | | | | 83,967.26 | |
| *Capital Contribution* | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| **Cumulative Excess Cashflow** | | | 93,722.91 | 116,735.33 | 174,120.65 | 256,749.72 | 457,098.59 | 457,098.59 | |

Section XV(c) states the assumptions and details surrounding the statement of projected cash flow.

On the effective date, the Plan pays Administrative Claims (See Exhibit B-1 attached hereto).

**XI.    FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE**

Attached as Exhibit "C" are three types of financial documents including balance sheets (Exhibit C1) as of December 31st of 2006, 2007, 2008 and 2009; Income and Expense statements (Exhibit C2) for the periods of December 31, 2006, 2007, 2008 and 2009; Cashflow statements including the most recent twelve-month calendar year (January through December 4, 2009) (Exhibit C3) and all months subsequent thereto (December 2009 through January 2011) (Exh C4).

Deleted: 2010 to November 2010) (Exhibit

**XI.    ASSETS AND LIABILITIES OF THE ESTATE**

   **a. Assets**

The identity and fair market value of the estate's assets are listed in Exhibit "D" so that the reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the overall worth of the bankruptcy estate.  The Debtor's valuation estimate is based on a July 2010 appraisal by Terra Firma.  In

addition the Debtor anticipates increases in the value of the

property over the life of the Plan based on corresponding increases

in rental income.  Whether the Plan proposes to sell any of these

assets is discussed in section XVI.

### b. **Liabilities**

Exhibit "E" shows the allowed claims against the estate, claims

whose treatment is explained in detail by section IX.

### c. **Summary**

The current "as is" fair market value of all assets equals

$12,083,697.  The total undisputed liabilities equal $14,604,435.

The Debtor anticipates that there is sufficient income including

sales proceeds to pay all of the Creditors in full over the life of

the Plan.

**Deleted:** 084,693

**Deleted:** 13,617,817

**Deleted:** refinancing or

## XIII.    TREATMENT OF NON-CONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed

treatment of their claims under the Plan, the Plan may nonetheless

be confirmed if the dissenting classes are treated in a manner

prescribed by the Code.  The process by which dissenting classes

are forced to abide by the terms of a plan is commonly referred to

as "cramdown".  The Code allows dissenting classes to be crammed

down if the Plan does not "discriminate unfairly" and is "fair and

equitable".  The Code does not define discrimination, but it does

provide a minimum definition of "fair and equitable".

The term can mean that secured claimants retain their liens and
receive cash payments whose present value equals the value of their
security interest.  For example, if a creditor lends the Debtor
$100,000 and obtains a security interest in property that is worth
only $80,000, the "fair and equitable" requirement means that the
claimant is entitled to cash payments whose present value equals
$80,000 and not $100,000.  The term means that unsecured claimants
whose claims are not fully satisfied at least know that no claim or
interest that is junior to theirs will receive anything under the
Plan, except where the Debtor is an individual, has elected to
retain property included in the Estate under 11 U.S.C.A. § 1115
(West Supp. 2006) and has satisfied 11 U.S.C.A. § 1129(b)(2)(B)(ii)
(West Supp. 2006).  "Fair and equitable" means that each holder of
an interest must receive the value of such interest or else no
junior interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes against the
Plan, the Plan cannot be confirmed where the Debtor or a class of
interest holders (e.g. shareholders or partners) will receive or
retain any property under the Plan, unless the Plan provides that
the class of general unsecured claims shall be paid in full with

33

interest.  If a class of interest holders votes against the Plan,
the Plan cannot be confirmed where the Debtor will receive or
retain any property under the Plan, unless the Plan provides that
the class of interest holders shall be paid in full with interest.
These are complex statutory provisions and the preceding paragraphs
do not purport to state or explain all of them.

**XIV.  TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS
    (CHAPTER 7 LIQUIDATION ANALYSIS)**

The Plan must provide that a non-consenting impaired claimant or
interest holder of a consenting class receive at least as much as
would be available had the Debtor filed a Chapter 7 petition
instead.

In a Chapter 7 case the general rule is that the Debtor's assets
are sold by a trustee.  Unsecured creditors generally share in the
proceeds of sale only after secured creditors and administrative
claimants are paid.  Certain unsecured creditors get paid before
other unsecured creditors do.  Unsecured creditors with the same
priority share in proportion to the amount of their allowed claim
in relationship to the total amount of allowed claims.

Deleted: ————Page Break————

A creditor would recover from the assets of the bankruptcy estate

34

less under Chapter 7 than under Chapter 11 for two reasons.  The
Chapter 7 liquidation schedule is based on the Citizens Business
Bank September 9, 2010 appraisal of approximately $9,100,000.  In a
chapter 7 case a trustee is appointed and is entitled to
compensation from the bankruptcy estate in an amount no more than
25% of the first $5,000 of all moneys disbursed, 10% on any amounts
over $5,000 and up to $50,000, 5% on all amounts over $50,000 and
up to $1,000,000, and such reasonable compensation no more than 3%
of moneys over $1,000,000 (approximately $460,509).  Below is a
demonstration that all creditors and interest holders will receive
at least as much under the Plan as such creditor or interest holder
would receive under a Chapter 7 liquidation.

| | | CHAPTER 7 Value based on Citizens Bank appraisal dated 9/9/10 | CHAPTER 11 "As Is Value" based on July 2010 Terra Firma appraisal |
|---|---|---|---|
| | Value of Assets | $9,100,000 | $12,083,967 |
| | Administrative Claims | ($51,650) | ($51,650) |
| | Chapter 7 Trustee Fee (Maximum) | ($460,509) | $0 |
| 1A | Secured Property Tax Claims | ($339,415) | ($339,415) |
| 1B | Citizens Business Bank | ($8,248,427) | ($8,789,328) |
| 1C | DeLovely Properties | $0 | ($1,407,083) |
| 1D | Glendale Career Schools | $0 | ($1,000,000) |
| 1E | Barnust Properties | $0 | ($496,491) |
| 1F | Evilsizer Construction | $0 | $0 |
| | Exemptions | $0 | $0 |
| 2A,2B | Distribution to Unsecured Creditors | $0 | $0 |
| | Unsecured Creditors Receive % of Claim | 0% | 0% |

Deleted: 8,960
Deleted: 430,910)
Deleted: 9
Deleted: 8,960
Deleted: 084,693
Deleted: ($430,910)
Deleted: ($352,796)
Deleted: ($352,796)
Deleted: 124,644)
Deleted: Barnust Properties
Deleted: 483,835)
Deleted: Evilsizer Construction
Deleted: $0
Deleted: 2C
Deleted: Glendale Career Schools
Deleted: 1

XV.  **FUTURE DEBTOR**

a.  **Management of Debtor**

1.  For the past several years, Keith Fey and Greg
    Galletly have managed the Debtor.

2.  Proposed compensation to persons listed above:  The
    Managing Members shall serve without bond and shall
    receive no compensation for management services
    rendered and expenses incurred pursuant to the Plan.

3.  Qualifications:  Mr. Fey and Mr. Galletly have both
    been involved in overseeing the ownership and
    management of real estate related entities for over
    30 years.

4.  Affiliation of persons to Debtor:  Keith Fey is the
    100% Owner of the LLC.  Greg Galletly is a Manager
    of the LLC.

5.  Job description:  The managers (Mr. Fey & Mr.
    Galletly) shall oversee the property and deal with
    major issues such as sale, refinancing and lease
    negotiations.

6.  Dorn Platz Management Inc. shall provide day-to-day
    services such as arranging for outside services,
    rent collection and payment of operating expenses,
    but not the sale or leasing of the premises, and
    shall be paid a fee equal to three percent (3%) of

36

gross revenues for performing such services.

b.   **Disbursing Agent**

1.   FEY 240 NORTH BRAND LLC is responsible for
collecting money intended for distribution to
claimants and transmitting it to them.   The
disbursing agent's address and telephone number are:
210 South Orange Grove Blvd., Pasadena, CA 91105.

2.   Proposed compensation to person listed above:   The
Disbursing Agent shall serve without bond and shall
receive no compensation for distribution services
rendered and expenses incurred pursuant to the Plan.

c.   **Future Financial Outlook**

The Proponent believes that the Debtor's economic health will
improve from its pre-bankruptcy state for the following
reasons:   The debtor has signed new leases and new tenants now
occupy 62.5% of the building.   The building now generates
approximately $714,000 in additional income annually and the
value of the building has substantially increased.

Section X provides a summary of the projected cash flow of the
Debtor for the duration of the Plan.   The following
assumptions underlie the projections:

- The terms of the leases;

37

- The Debtor's historic experience with operating expenses;

- The Plan proposes to pay claims, including interest, of approximately $4,619,365 over the 60-month period of the plan. As Debtor's financial projections demonstrate, Debtor will have total revenue of $7,224,674 over the life of the plan and operating and capital expenses of $2,232,178. The Debtor anticipates having $457,098 in excess cash over the life of the Plan. Secured creditor, Evilsizer Construction, and the unsecured creditors are paid in full over the life of the Plan and the remaining balances of the other creditors are paid as set forth below. These cashflow projections are illustrated in Exhibits B1 and B2.

| Deleted: 363,685 |

| Deleted: 044,174 |
| Deleted: 137,789 |
| Deleted: 627,392 |

- The Debtor proposes to sell the project at the end of the Plan in order to repay the outstanding balances due Citizens Business Bank, DeLovely Properties and Barnust Properties, and the allowed claim for Glendale Career Schools. A tentative settlement has been reached with Glendale Career Schools. The Plan reflects the terms of the settlement. The Debtor believes, based on conversations with appraisers, local real estate

| Deleted: either refinance the project at the end of the Plan or to |

| Deleted: any |

38

brokers and mortgage brokers, that given the location of the project, the occupancy level, and the quality of the tenants in the building, it is feasible to sell the building during the life of the Plan.

- Based on a 7.25% cap rate – the rate assumed in the July 2010 Terra Firma appraisal, the Sales scenario (Exhibit F) provides that with a Net Operating Income for the project in year 5 of $1,154,023, the project would be valued at approximately $15,917,558. The Debtor proposes to sell the building at this value. This analysis shows Glendale Career Schools with the tentative settlement claim of $1,000,000. All secured and unsecured creditors would be paid in full and the Debtor would have $3,158,266 in excess proceeds.

As previously stated, Plan payments will come from the continued operation of the Debtor's business. With the building now fully occupied, the feasibility analysis substantiates that there is adequate cashflow to fund the Plan. Over the life of the Plan, the Debtor's cash position ranges from $83,967 on the effective date to $457,098 at the end of the 60 months.

39

**Deleted:** refinance or

**Deleted:** Refinancing Scenario

**Deleted:** 146,550

**Deleted:** 814,485

**Deleted:** would then obtain a refinance based on a 75% LTV and pay-off any of the then outstanding secured and unsecured creditors. This refinance scenario assumes Glendale Career Schools claim is disallowed and is analyzed at a -0- balance. The refinancing scenario results in the Debtor having $526,304.07 of excess proceeds after paying the remaining balances of all the claims in full.¶ In the Sales Scenario (Exhibit G), the Debtor

**Deleted:** the

**Deleted:** established by the year 5 Net Operating Income and the 7.25% cap rate per the July 2010 Terra Firma appraisal

**Deleted:** both the -0- disallowed claim and the $2,410,803.99 claim filed by Glendale Career Schools. In either case, all

**Deleted:** either $4,203,171.95 or $1,792,367.96

**Deleted:** depending on the resolution of the Glendale Career Schools claim

**Deleted:** 84,692

**Deleted:** 627,392

## XVI. SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS

The Plan provides for the following assumption and or rejection of contracts and leases:

- The debtor rejected the lease agreement between Fey 240 North Brand, LLC and Glendale Career Schools Inc dated November 30, 2004. On June 9, 2010 the Court granted the Motion to reject the lease.

- The Debtor shall assume the leases contained in the following chart:

*Unexpired Leases to be Assumed*

| Tenant | Address | Sq Ft | Expiration | Current Monthly Rent | Utilities Reimb. | Security Deposit |
|---|---|---|---|---|---|---|
| Goodwill | 240 N Brand, Ground Floor | 18,500 | 6/30/20 | $37,000.00 | NNN | None |
| 24 Hour Fitness | 240 N Brand, 2nd Floor | 18,000 | 11/30/14 | $29,680.70 | NNN | None |
| SouthWest College / NWC Investments | 240 N Brand, Basement | 15,912 | 1/31/13 | $22,500.00 | Modified Gross | $22,500 |
| | | 52,412 | | $89,180.70 | $0 | $22,500 |

40

The Debtor filed a motion to assume the Goodwill lease.
Glendale Career Schools Inc objected to the Motion and a
Stipulation approving the assumption of the Goodwill lease was
entered into.  The parties to the Stipulation are Goodwill,
Citizens Business Bank, Glendale Career Schools Inc and the
Debtor.  It was entered into on April 30, 2010 and the Court
approved the Stipulation.

The Court must make certain findings of fact before approving the
aforementioned provisions as part of the Plan.  The Proponent will
request that the Court make the appropriate findings at the
confirmation hearing, based upon evidence submitted in support of
the confirmation motion.

**XVII.    BANKRUPTCY PROCEEDINGS**

- The Motion to Employ Schock & Schock as Counsel was
  approved.

- Citizens Business has filed a motion for Relief from the
  Automatic Stay and the hearing is scheduled on December
  8, 2010.

- The Debtor had filed an adversary action regarding the
  Glendale Career Schools claim as to both the amount of
  the claim and the validity of its lien and standing as a

41

Deleted: ¶
Deleted: between
Deleted: ¶
Deleted: October 6
Deleted: has
Deleted: to being

secured creditor.  A tentative settlement agreement to
resolve this claim has been reached and the Plan reflects
the terms of the settlement.

## XVIII.  TAX CONSEQUENCES OF PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY
AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN
ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure
of possible tax consequences is intended solely for the purpose of
alerting readers about possible tax issues this Plan may present to
the Debtor.  The Proponent CANNOT and DOES NOT represent that the
tax consequences contained below are the only tax consequences of
the Plan because the Tax Code embodies many complicated rules which
make it difficult to state completely and accurately all the tax
implications of any action.

The following are the tax consequences which the Plan will have on
the Debtor's tax liability:  **Debtor is an LLC and considered a
pass-thru entity & therefore Debtor does not anticipate any tax
consequences of the Plan.**

| Deleted: ¶ |
| --- |

| Deleted: ¶ |
| --- |

42

## XIX.  EFFECT OF CONFIRMATION OF PLAN

### a.  General comments

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do not vote to accept the Plan.

The confirmation of the Plan vests all property of the estate in the Debtor.

The automatic stay is lifted upon confirmation as to property of the estate.  However, the stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not seek a discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's property terminates upon entry of the order confirming the Plan.

### b.  Discharge of liability for payment of debts; status of liens; equity security holders

Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C.A. 1141(d)(3) (West 2004), the debtor may obtain a discharge only upon specific order of the Court.

Deleted: ¶

Deleted: ¶