Dawn M. Coulson, State Bar No. 154085
dcoulson@eyclaw.com
Michael B. Wilson, State Bar No. 233633
mwilson@eyclaw.com
**EPPS YONG & COULSON, LLP**
333 S. Hope Street, 35th Floor
Los Angeles, California 90071
(213) 613-2340 - Telephone
(213) 613-2344 - Facsimile

Attorneys for Creditor CITIZENS BUSINESS
BANK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:09-bk-44228-AA |
| FEY 240 NORTH BRAND, LLC, | Chapter 11 |
| Debtor | **CITIZENS BUSINESS BANK'S OPPOSITION TO CONFIRMATION OF THE CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC** |
| | **Date:** January 26, 2011<br>**Time:** 10:00 a.m.<br>**Ctrm:** 1382 |

*(Sidebar, vertical text)* EPPS YONG & COULSON, LLP · 333 S. Hope Street, 35th Floor, Los Angeles, California 90071 · Tel: (213) 613-2340 · Fax (213) 613-2344

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel: (213) 613-2340 • Fax (213) 613-2344

# TABLE OF CONTENTS

I.     INTRO...........................................................................................................1

II.    FACTUAL BACKGROUND...........................................................................1

       A.  The Debtor and Dorn Platz...................................................................1

       B.  The CBB Loan History and Assignments of Leases................................2

       C.  The Debtor's Default, CBB's Efforts To Collect, The Superior
           Court Action And Revocation of Fey 240's Right to Use Rents From The
           Property...........................................................................................3

       D.  The Debtor's Failure to Obtain Either A Court Order or Stipulation from CBB
           Authorizing Use of CBB's Rents From The Property..............................4

III.   OBJECTION TO CONFIRMATION OF PROPOSED CHAPTER 11 PLAN..............5

       A.  The Debtor Has Not Complied With This Court's Order Or The Local Bankruptcy
           Rules Regarding Plan Confirmation.......................................................5

       B.  The Debtor Has Not Properly Identified Potential Insider Votes................6

       C.  The Proposed Plan Does Not Properly Classify All The Allowed Claims
           Filed Against The Debtor And Thus Does Not Properly Proportion
           Voting Rights.....................................................................................6

       D.  The Plan Is Not Feasible......................................................................9

           1.  The Plan Is Not Feasible Because The Debtor Has No Property
               Management................................................................................9

           2.  The Plan Does Not Meet the "Cram-Down" Requirements of 11 U.S.C.
               Section 1129(a) And Cannot Meet the "Fair and Equitable" Requirements
               of 11 U.S.C. Section 1129(b).......................................................10

               a.  The Plan's Proposed Payment Schedule Is Neither Fair or Equitable
                   And Its Proposed Interest Rate Is Miscalculated...........................11

               b.  The Proposed Plan's Interest Only Payments To CBB Does Not Equal
                   The Present Value of CBB's Claim..............................................13

CITIZENS BUSINESS BANK'S OPPOSITION TO CONFIRMATION OF THE CHAPTER 11 PLAN OF
REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

c.    The Proposed Plan Violates The Absolute Priority Rule..................................13

IV.    CONCLUSION...............................................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EPPS YONG & COULSON, LLP
333 S. Hope Suite 1, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • FAX (213) 613-2344

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Bonner Mall Partnership*, 2 F.3d 899 (9th Cir. 1993)................................................14

*In re Camino Real Landscape Maintenance Contractors, Inc.*, 818 F.2d 1503
    (9th Cir. 1987)...........................................................................................11, 12

*In re Commercial Western Finance Corp.*, 761 F.2d 1329 (9th Cir. 1989)......................8

*In re: Guilford Telecasters, Inc.*, 128 B.R. 622 (Bankr. M.D.N.C. 1991)........................13

*In re Holthoff*, 58 B.R. 216 (BC ED AK 1985)...........................................................8

*In re Jason Realty*, 59 F.3d 423 (3rd Cir. 1995)..........................................................4

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp,*. 115 F.3d 650 (9th Cir. Ariz. 1997).............13

*In re: Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir. 1985)..........................................9

*In re: Ribs Auto Sales, Inc.*, 140 B.R. 390, 394 (Bankr. E.D. Va. 1992)........................13

*In re: Southern Calif. Plastics, Inc.*, 165 F.3d 1243 (9th Cir. 1999).............................7

*In re Tuscon Self Storage, Inc.*, 166 B.R. 892 (9th Cir. BAP 1994)..............................9

*Matter of Martin's Point Ltd. Partnership*, 12 B.R. 721 (BC ND GA 1981)....................8

*Till v. SCS Credit Corp.* 541 U.S. 465 (2004)...........................................................11

## STATE CASES

*Federal National Mortgage Association v. Bugna* 57 Cal.App.4th 529 (1997).................3

## FEDERAL STATUTES AND RULES

11 U.S.C. § 502.............................................................................................7

11 U.S.C. § 1122...........................................................................................8

11 U.S.C. § 1123...........................................................................................7

11 U.S.C. § 1124...........................................................................................8

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

CITIZENS BUSINESS BANK'S OPPOSITION TO CONFIRMATION OF THE CHAPTER 11 PLAN OF
REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

11 U.S.C. § 1129……………………….....................……………………….......…….. 8, 9, 10, 13

Federal Rule of Bankruptcy Procedure 3001...........................................................................7

### STATE STATUTES

Civil Code § 2938……………………………………………………………….2, 3

### MISCELLANEOUS

Local Rule of Bankruptcy Procedure 3018-1.....................................................................5, 6

EPPS YONG & COULSON, LLP
1315. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

CITIZENS BUSINESS BANK'S OPPOSITION TO CONFIRMATION OF THE CHAPTER 11 PLAN OF
REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

EPPS YONG & COULSON, LLP
3315 1605 Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2341

INTRO

Citizens Business Bank ("CBB"), a secured creditor and party-in-interest herein objects to the Fourth Proposed Chapter 11 Reorganization Plan (the "Plan") submitted by Debtor FEY 240 North Brand, LLC ("FEY 240" or "Debtor") on the grounds that the Debtor's proposed plan of reorganization is non-confirmable because the Plan is not feasible, it contains misinformation and misclassifies claims, it violates the Absolute Priority Rule, and it does not propose to pay CBB the present value of its claim.

I.    FACTUAL BACKGROUND

A.    The Debtor and Dorn Platz

Fey 240 NORTH BRAND, LLC, is, and at all times relevant hereto was, a California limited liability company.  FEY 240 is a single asset real estate special purpose entity that currently owns the 55,000 square foot 3-story commercial building located at 240 North Brand Blvd. in Glendale, CA.

Fey 240's property was previously managed by Dorn Platz Management, Inc. ("Dorn Platz").  On May 12, 2010, this Court issued an Order denying the Debtor's application to employ Dorn Platz, in part because Dorn Platz is not a disinterested person .  (*See Order Denying Application for Authority to Employ Management Company,* filed in this action on May 12, 2010, Docket # 57.)    Although Fey 240's application to employ Dorn Platz was denied and Fey 240 has not filed an application to retain a new management company or to request that the Court revisit its previous decision, Fey 240 boldly continues to propose in its plan payment of management fees to Dorn Platz and the operating reports still show payment of a management fee to Dorn Platz.

Fey 240 proffered a supposed justification of its actions by stating that Dorn Platz has been retained to "perform bookkeeping, such as monthly Trustee reports, and other necessary services involved in the day to day operation of the property," rather than performing property management functions. (*See Reply of Debtor to Objections of Citizens Business Bank to Proposed Fourth Amended Disclosure Statement and Plan,* filed on November 29, 2010, p. 4:1-3.)  This is a game of semantics. The fact remains, however, that Fey 240 continues to pay a management fee to Dorn Platz – the same 3% management fee it paid when Dorn Platz was performing "property management functions" -  in direct contravention of Court orders, bankruptcy code and procedure.

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

1  This reveals the level of complete disrespect Fey 240 and its management give to the Court and

2  creditors, including CBB.

3       B.  The CBB Loan History and Assignments of Leases

4       On or about September 27, 2005, CBB entered into a construction loan agreement ("Loan

5  Agreement") with Fey 240 North Brand, LLC through which FEY 240 borrowed from CBB the

6  principal amount of nine million dollars ($9,000,000.00).  The subject loan and FEY 240's

7  promise to re-pay is evidenced by the Loan Agreement and Promissory Note ("Note") dated

8  September 27, 2005, and is secured by, among other things, a first lien on all real property of Fey

9  240 granted by a Construction Deed of Trust.  The Loan Agreement, Promissory Note, and all of

10 the debtor's obligations thereunder and in connection or in relation therewith are collectively

11 referred to as the "Loan."  True and correction copies of the Loan Agreement,  Note, and Deed of

12 Trust are attached to the Declaration of Verona K. Chion in Support of CBB's Opposition to the

13 Disclosure Statement filed in this matter on March 24, 2010, Docket # 42 ("Chion Decl.") as

14 Exhibits A and B.

15      As collateral for the Loan, Fey 240 executed and delivered to CBB an Absolute

16 Assignment of Leases, Lease Guaranties, Rents, Issues and Profits (Fee) (hereinafter the

17 "Assignment of Leases") encumbering the real property commonly known as 240 North Brand

18 Blvd., City of Glendale, California.  Pursuant to the Assignment of Leases, Fey 240 assigned to

19 CBB all of Fey 240's rights, title, and interest in all leases, rental agreements, and tenant

20 improvement construction and reimbursement agreement ('Leases) in favor of Fey 240 or Fey

21 240's predecessors or successors in interest, in regard to the 240 North Brand Blvd. property, that

22 is more particularly and legally described in the Assignment of Leases; and further assigned to

23 CBB all of Fey 240's rights, title and interests in all lease guaranties in regard to the Leases

24 ("Lease Guaranties"), and all rents, issues and profits of the 240 North Brand Blvd. Property,

25 including the cash proceeds thereof, to the full extent provided by California Civil Code § 2938.

26 (See Chion Decl. Exh. C.) With regard to Fey 240's assignment of all leases to CBB, Borrower,

27 CBB and tenants Glendale Career Schools, Inc. and 24 Hour Fitness USA, Inc. entered into

28

1  Subordination, Nondisturbance and Attornment Agreements whereby the tenants' leases were and

2  are, among other things, subordinated to CBB's lien on the Property. (See Chion Decl. Exhs D, E.)

3       As further collateral for the Loan, Fey 240 executed a Security Agreement (Assignment of

4  Deposit Account), which assigns Fey 240's rights, title and interest to CBB in and to Borrower's

5  deposit accounts with CBB.  (See Chion Decl. Exh. F.)

6       The maturity date of the Loan is November 30, 2014.  Per the terms of the Loan, Borrower

7  is and was obligated to make monthly principal and interest payments to CBB in amounts set forth

8  in the Note.  Fey 240, however, defaulted on the loan before filing bankruptcy.

9

10      C.  <u>The Debtor's Default, CBB's Efforts To Collect, The Superior Court Action And</u>

          <u>Revocation of Fey 240's Right To Use Rents From The Property</u>

11      Fey 240 is and has been in default under the Loan for failure to make payments as due

12  under the Note and Loan Agreement since October 2009.  Due to the Debtor's default, CBB was

13  forced to file a state court action, Case No.: EC 051431 in Los Angeles Superior Court, North

14  Central District, seeking payment on the loan and appointment of a Receiver to collect, manage

15  and administer the rents, issues, accounts and profits of Fey 240 and the cash proceeds thereof.

16  CBB's Motion for Appointment of a Receiver was granted on December 4, 2009.  Pursuant to

17  those collection actions, Fey 240 lost any right to use its rents under the Absolute Assignment;

18  however, regardless of such, Fey 240 continued to use its rents under the auspices of debtor-in-

19  possession (but again without Court order) until very recently.  Fey 240 filed the instant

20  bankruptcy case on December 4, 2009, after the state court ruling.  As such, Fey 240 lost all rights

21  to any of the rents from the Property.

22      Under California law, CBB was granted a perfected interest in the Fey 240's leases and

    the profits therefrom upon its institution of the Superior Court Action. (Cal. Civ. Code § 2938.)

23  Upon appointment of the Receiver, all title and interest in the leases and the profits therefrom

24  vested in CBB; Fey 240 retained no interest. (Cal. Civ. Code § 2938; *See Also Federal National*

25  *Mortgage Association v. Bugna* (1997) 57 Cal.App.4th 529.)  Because Fey 240 retained no interest

26

27

28  <small>3221-006</small>

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

in the leases or the profits therefrom, the leases and profits were not a part of BGM's bankruptcy estate when it filed for bankruptcy[1]; the leases and profits may therefore not be used to fund Fey 240's reorganization without the consent of CBB, the assignee. (*See, e.g., In re Jason Realty* (3rd Cir. 1995) 59 F.3d 423.)

### D. The Debtor's Failure to Obtain Either A Court Order or Stipulation from CBB Authorizing Use of CBB's Rents From The Property

Since October 2009, and despite the rosy financial projections in its Fourth Amended Disclosure Statement, the Debtor has failed to cure its default with CBB. Fey 240 also did not obtain a stipulation from CBB or a Court order from this court to use what Fey 240 considers cash collateral – i.e. CBB's rents (to which Fey 240 lost the rights based on CBB's pre-petition enforcement the Absolute Assignment). In a continuing display of disrespect to this Court and CBB, Fey 240 nevertheless boldly used and continues to use the rents from the Property and continues to this day to do so without Court order or agreement of CBB.

Only after the Court issued a tentative ruling to grant CBB relief from stay did Fey 240 appear at the hearing proffering a single check of a minimal payment amount, well below one months of interest accumulating on the loan and well below the CBB's rents. After nearly a year of no payments at all and only a few (3) recent payments of less than interest only Fey 240's loan balance continues to grow daily and Fey 240's use of CBB's rents place CBB in a worse position than it was before the bankruptcy filing. CBB's rights are not being adequately protected and the proposed plan does not propose to pay CBB the indubitable equivalent of its claim. For these reasons alone, confirmation of the plan should be denied. But, there are more reasons, as will be discussed herein.

---

[1] The bankruptcy code defines property of the estate as all property in which the debtor holds an interest upon the commencement of bankruptcy. (11 U.S.C. 541(a)(1).)

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

3221-006

4

## II.    OBJECTION TO CONFIRMATION OF PROPOSED CHAPTER 11 PLAN

### A.    The Debtor Has Not Complied With This Court's Order Or The Local Bankruptcy Rules Regarding Plan Confirmation

At the December 1 hearing in this matter, this Court made the following orders:

1. The Fourth Amended Disclosure Statement and Chapter 11 Plan are approved for distribution to creditors, subject to certain amendments;

2. The Debtor shall cause the Fourth Amended Disclosure Statement an dPlan and the ballots to be mailed to the creditors who are entitled to vote on or before December 8, 2010;

3. Any objection to the confirmation of the Fourth Amended Plan shall be filed and served on or before December 31, 2010;

4. Any reply by the Debtor to any objection to the Confirmation shall be filed on or before January 7, 2010; and

5. The confirmation hearing on the Fourth Amended Plan shall be held on January 26, 2011.

(*See Declaration of Michael B. Wilson*, filed concurrently herewith, ¶ 2.)

In addition, Local Bankruptcy Rule 3018-1 states, in pertinent part, that the plan proponent must:

"File a ballot summary not later than 1 day before the hearing on the motion for order confirming the plan. The ballot summary must be signed by the plan proponent and must certify to the court the amount and number of allowed claims of each class voting to accept or reject the plan and the amount of allowed interests of each class voting to accept or reject the plan . . ."

Here, the attorney for the Debtor, John Schock has once again ignored the express orders of this Court. As was ordered, Citizens filed its opposition to confirmation of the Debtor's proposed Plan by December 31, 2010. (*See Opposition to Confirmation of Fourth Amended Disclosure Statement*, filed on December 31, 2010, Docket # 146.) The Debtor was ordered to file its reply by January 7, 2010. Instead of filing its reply, the Debtor has instead filed a "Motion for Order Confirming Chapter 11 Plan" and within that motion set an arbitrary date, January 12, 2011, for any objections to confirmation. This is not what was ordered and just serves to further

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel: (213) 613-2340 • Fax (213) 613-2344

3221-006    5

CITIZENS BUSINESS BANK'S OPPOSITION TO CONFIRMATION OF THE CHAPTER 11 PLAN OF
REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

1  evidence the Debtor's disregard for this Court and its orders. It is because of this disregard that

2  Citizens must now file its opposition to confirmation again, albeit with additions. As it stands, the

3  Debtor has failed to reply to the objections made by Citizens in the time allotted for reply and

4  therefore Debtor's plan should not be confirmed.

5       Also, Local Bankruptcy Rule 3018-1 requires the Debtor to file a ballot summary

6  certifying to the Court the amount and number of the allowed claims voting to accept or reject the

7  plan. That ballot summary must be signed by the plan proponent. (*See* LBR 3018-1(a)(2).) The

8  Debtor has done neither. The "ballot summary" is attached to the Debtor's motion as an exhibit

9  and is not certified nor signed by the plan proponent[2]. The plan should not be confirmed.

10      **B.**   <u>The Debtor Has Not Properly Identified Potential Insider Votes</u>

11

12       As has been litigated in this matter previously, and as is acknowledged in the Debtor's

13  Fourth Amended Disclosure Statement, Classes 2B and 1E, Barnust Properties, Lobar, and Dorn

14  Platz , "may be considered insiders because of overlapping control." (*See Fourth Amended*

15  *Disclosure Statement,* p. 18.) Barnust Properties, the holder of the Debtor's Fourth Trust Deed,

16  and Lobar Properties are controlled by Bradley Barnes, the same man who exerts control over

17  Dorn Platz Management, the Debtor's property manager. Despite this overlapping control, the

18  Debtor's Motion for Approval of Fourth Amended Chapter 11 Plan does not mention the possible

19  insider status of these classes, but just notes that these insiders have accepted the plan.

20      **C.**   <u>The Proposed Plan Does Not Properly Classify All The Allowed Claims Filed</u>
           <u>Against The Debtor And Thus Does Not Properly Proportion Voting Rights</u>

21       The Court set the deadline for filing a proof of claim in this matter for March 30, 2010.

22  The Court also set the deadline for objecting to a proof of claim in this matter for April 14, 2010.

23

24  [2] In addition, and as is detailed in the Declaration of Michael B. Wilson filed concurrently

25  herewith, the Debtor's motion for confirmation alleges that Citizens "altered" its ballot by entering
the amount of its claim. This is untrue as the ballot Citizens received had a blank space for the

26  entry of the amount of claim – there was no "alteration." Citizens simply filled in the blanks on
the form.

27

28  3221-006

CITIZENS BUSINESS BANK'S OPPOSITION TO CONFIRMATION OF THE CHAPTER 11 PLAN OF
REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 612-3240 • Fax (213) 612-2244

Because Fey 240 filed no objections to the proofs of claim filed, the proofs of claim filed are prima facie evidence of the validity and amount of the claim or interest and are deemed allowed. (*See* Federal Rule of Bankruptcy Procedure ("FRBP") 3001(f); 11 U.S.C. § 502(a); *In re: Southern Calif. Plastics, Inc.* (9th Cir. 1999) 165 F.3d 1243, 1247-1248.) It is mandatory that a proposed Plan should include a full list of secured creditors, the amount of their liens, and the Debtor's proposed treatment of those creditors. (*See* 11 U.S.C. § 1123(a)(1).)   The following creditors are listed in the Debtor's schedules (without claiming they are unliquidated or disputed) or have filed secured and priority proofs of claim to which Fey 240 has not objected. Fey 240 inexplicably did not list or misclassified these claims in its Plan:

| Creditor | Amount | Proof of Claim and Filing Date |
|---|---|---|
| Interior Experts General Builders[3] | $50,576.35, secured | Proof of Claim # 3, filed on February 2, 2010 |
| Mustang Mechanical Contractors | $10,089.82, secured | Proof of Claim #4, filed on January 29, 2010 |
| Diversified Automation | $4,916.53, priority | Proof of Claim #5, filed on February 3, 2010 |
| AR Painting | $10,930.00, priority | Proof of Claim # 17, filed on March 16, 2010 |
| Armen Markarian | $2,600.00, unsecured | Debtor's Amended Summary of Schedules, filed on February 12, 2010, Docket # 20 |

[3] The Debtor noted, incorrectly, in its Reply to CBB's Objection to the Fourth Amended Disclosure Statement that "Interior Experts . . . chose not perfect [its] lien in the bankruptcy . . ." Fey 240 is wrong. Interior Experts not only filed an uncontested secured claim in this bankruptcy, but also filed a Notice in Lieu of Seizure or Commencement of Action (11 U.S.C. § 362(B)(3), 542(B)(2) on February 2, 2010, Docket No.: 16 to perfect its lien.

EPPS YONG & COULSON, LLP
3333 Hwy Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

CITIZENS BUSINESS BANK'S OPPOSITION TO CONFIRMATION OF THE CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC

| | | ("Amended Summary") |
|---|---|---|
| AT&T | $85.74, unsecured | Amended Summary |
| Fabian Glass Graffiti | $360.53, unsecured | Amended Summary |
| Farmers Insurance | $8,213.32, unsecured | Amended Summary |
| Glendale Iron | $2,900.00, unsecured | Amended Summary |
| LA Consulting Engineers | $3,500.00, unsecured | Amended Summary |
| L&T Industries | $1,550.00, unsecured | Amended Summary |
| Malekian & Associates | $4,830.00, unsecured | Amended Summary |
| Saiful Bouquet | $2,100.00, unsecured | Amended Summary |
| CSC Coring | $950.00, unsecured | Amended Summary |
| Doug Newman | $75,000.00, unsecured | Amended Summary |

Obviously, not listing a creditor and allowing that creditor an opportunity to vote on a plan is a violation of that creditor's substantive and procedural due process rights. (*See* 11 U.S.C. § 1124, et seq.)

Also, improper classification of claims in a plan makes a plan nonconfirmable. (11 U.S.C. §§ 1122, 1129(a)(1).) Unless two or more secured creditors have identical and equal rights in the same collateral, each secured claim must be placed in a separate class. (*In re: Commercial Western Finance Corp.* (9th Cir. 1985) 761 F.2d 1329, 1338; *Matter of Martin's Point Ltd. Partnership* (BC ND GA 1981) 12 B.R. 721, 725.) Secured creditors with different priority liens cannot be placed in the same class; all claims within a class must be given the same treatment and holders of liens with different priority in the same collateral cannot be given the same treatment because the holders of the highest priority lien rights superior to the holder of the lowest priority lien. (*See In re Holthoff* (BC ED AK 1985) 58 B.R. 216, 219.) The proper classification of claims is also necessary to determine voting rights and thus whether certain classes have accepted or rejected the debtor's proposed Plan. Fey 240's inclusion of secured creditors in the unsecured class and misclassification of priority claims is clearly improper classification of claims making Fey 240's plan <u>nonconfirmable</u> pursuant to 11 U.S.C. §§ 1122 and 1129(a)(1).

EPPS YONG & COULSON, LLP
3315 116th Street, 35th Floor, Los Angeles, California 90071
Tel (213) 613-2340 • Fax (213) 613-2344

3221-006

8

1   Not only does this misclassification of claims make the Debtor's plan per se

2   nonconfirmable, it also runs afoul of the bankruptcy code's prohibition against classification of

3   claims for the purpose of vote manipulation. (*See, e.g., In re Tuscon Self Storage, Inc.* (9th Cir.

4   BAP 1994) 166 B.R. 892, 897-898.) CBB submits that in this, the Debtor's <u>fifth</u> try at proposing a

5   plan, improper classification and ignoring claims only evidences the Debtor's intent to delay and

6   hinder its creditors, its improper purpose in filing and maintaining this bankruptcy proceeding and

7   its inability to propose a plan that would properly pay its creditors.

8   D.    The Plan Is Not Feasible

9   Even without taking into consideration the unlisted and mis-classified creditors noted

10  above, the plan is not feasible. Under 11 U.S.C. § 1129(a)(11), a court may confirm a plan only if

11  the plan is feasible. Feasbility requires that "[c]onfirmation of the plan is not likely to be followed

12  by the liquidation, or need for further financial reorganization, of the debtor or any successor to

13  the debtor under the plan, unless such liquidation or reorganization is proposed under the plan."

14  (11 U.S.C. § 1129(a)(11).) To establish a feasible plan, the Debtor must show through concrete

15  evidence that there will be sufficient cash flow to fund the plan and maintain operations according

16  to the express terms of the Plan. The test is whether the acts which are to be accomplished by the

17  Debtor after confirmation can be done as a practical matter under the facts disclosed. (*In re Pizza*

18  *of Hawaii, Inc.* (9th Cir. 1985) 761 F.2d 1374.) Here, Fey 240 cannot continue its operation as a

19  practical or legal matter under the terms of its proposed Plan. Fey 240 is a single asset real estate

20  entity with no property manager and furthermore its treatment of creditors, at least the ones it has

    chosen to identify, under the Plan cannot satisfy 11 U.S.C. 1129's cram-down requirements.

21  1.    The Plan Is Not Feasible Because The Debtor Has No Property Management

22  As noted, this Court has denied FEY 240's application to employ Dorn

23  Platz Management, Inc. as its property manager, in part due to its status as an interested

24  person. According to the proposed Plan, Fey 240's sole asset is the property located at 240

25  North Brand Blvd. in Glendale, CA and the Plan proposes to fund the Debtor's continued

26  operation through use of CBB's rents and possible sale of the Property. Since the Debtor's

27  application to employ Dorn Platz was denied, the plan is patently not feasible because the

28  3221-006

Debtor has proposed no means by which it can continue to manage the Property. The Debtor's statement that it employs Dorn Platz for bookkeeping purposes only is an exercise in semantics and ignores the fact that (1) the Debtor has not requested that Dorn Platz be employed as a bookkeeper as is required by the bankruptcy rules; (2) the Debtor's previous request to employ Dorn Platz was denied; (3) the Debtor continues to defy this Court by paying Dorn Platz three percent of the property revenues – the same amount as was being paid before, when Dorn Platz was performing property management functions; and (4) property management functions are necessary to maintain the Debtor's single asset and prevent its deterioration. So, the facts belie Fey 240's newly proffered explanation of Dorn Platz's involvement.

> 2. The Plan Does Not Meet the "Cram-Down" Requirements of 11 U.S.C. Section 1129(a) And Cannot Meet the "Fair and Equitable" Requirements of 11 U.S.C. Section 1129(b)

To confirm the Plan over CBB's objection, Fey 240 must use the "cram-down" provisions of the bankruptcy code, which dictate that the plan must treat each objecting class fairly and equitably, and that it not discriminate unfairly against any objecting impaired class. (11 U.S.C. § 1129(b).) Section 1129(b)(2)(A) sets forth three non-exclusive methods of complying with the "fair and equitable" requirement of section 1129 (b) with respect to secured claims:

1. Holders of claims in the class retain the liens securing such claims, and each such holder will receive cash payment totaling at least the allowed amount of such claim, and having a present value on the effective date of the plan which is not less than the allowed amount of such claims; or

2. The collateral will be sold free and clear of the secured creditor's lien, subject to the secured creditor's right to credit bid pursuant to Section 363(k), with the lien to attach to proceeds and be treated as provided under subsections (i) or (iii) of Section 1129(b)(2)(A); or

3. The holders of such claims will realize the indubitable equivalent of such claims.

(11 U.S.C. § 1129(b)(2)(A).) Fey 240's plan does not propose immediate sale of the Property, not to give CBB the Property. Thus, in order to confirm the Plan over CBB's objection, with respect

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

to CBB's claims, Fey 240 must demonstrate that CBB will retain its lien and receive deferred cash payments totaling at least the amount of CBB's secured claim. Fey 240's Plan, as proposed, fails to meet these requirements. Further, Fey 240's Plan unfairly discriminates in its treatment of CBB by proposing interest only payments to CBB based upon an inapplicable base rate and by proposing to pay junior lienholders prior to CBB.

a.    The Plan's Proposed Payment Schedule To CBB Is Neither Fair Nor Equitable And Its Proposed Interest Rate Is Miscalculated

Fey 240's Plan proposes interest only payments on CBB's note at a rate of 5% for months 1 through 19 of the plan, with the principal amortized over a 30 year period for the remaining months of the plan. First, the Debtor provides no confirmation or analysis that these proposed payments have a present value not less than the present value of CBB's claim. In fact, the treasury rate the debtor uses to come up with its "market rate" is not the correct starting point for the determination of market rate. "The treasury rate is the government's cost of borrowing . . . [t]he obligation of a private borrower is quite different; its creditworthiness is not the same as the federal government's. It cannot borrow money on the favorable terms available to the government." (*In re: Camino Real* (9th Cir. Cal. 1987) 818 F.2d, 1503, 1506.) The proper method for calculating an interest rate due to a lender in this situation is to start by looking at the national prime rate and the adjusting upward for risk. (*See Till v. SCS Credit Corp.* (2004) 541 U.S. 465.) Banks do this regularly in setting lending criteria.

Currently banks are not making loans greater than 60-65% loan to value to their most credit worthy borrowers, of which Fey 240 is not a credit worthy borrower. In its plan, Fey 240 proposes 5% interest only payments on a 96.59% loan to value ratio loan for a loan that was in default pre-petition, for a loan for which Fey 240 has been able to only make only (3) post-petition below interest payments. Fey 240 has not abided by Court orders and its principals are associated with other bankruptcies, judgments and lawsuits. They have not come out of pocket and infused funds to pay CBB and cannot do so. This plan is nowhere near plausible or feasible and Fey 240 and its principals do not have the means to make it plausible or feasible without completely discriminating against CBB and other secured and priority creditors.

Here, and notwithstanding that the Debtor has been in default since October 2009, Fey 240 proposes to amortize CBB's loan over thirty years, with monthly interest only payments and a balloon payment due in five years. The interest rate the Debtor proposes to pay CBB to

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

3221-006

11

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2341

1    compensate for this delay and risk is only five percent (5%), based upon its "analysis" of the

2    inapplicable treasury rate. Given that CBB's note rate is 6.125% to Fey 240 when it was a worthy

3    borrower not in default and its default rate is 11.15% (for a 60-65% LTV loan), an interest rate of

4    five percent for a reorganization plan is not adequate for a loan of this type. Further, given that the

5    promissory note rate has a <u>floor</u> of 6.125%, an interest rate of five percent is not adequate for a

     loan of this type.

6         The appropriate rate of interest or discount factor to be applied to payment of secured

7    claims under a Chapter 11 plan "should be the rate of interest that <u>the debtor</u> would pay to borrow

8    a similar amount on similar terms in the commercial loan market." (*In re Camino Real Landscape*

     *Maintenance Contractors, Inc.* (9th Cir. 1987) 818 F.2d 1503, 1506.) Fey 240's getting a 96.59%

9    loan-to-value loan in the current economic climate is not possible in this market. If it thinks it can

10   do so, CBB invites Fey 240 to do so and pay off CBB immediately.

11        Further, calculating the interest rate starts with an appropriate base rate plus the addition of

12   a factor for risk (*Id.*) Here, Fey 240 proposes an interest rate of 5% based upon the unsupported

13   and mis-guided assertion that use of the "current 60 month Treasure rate is approximately 1.25%"

14   and that the market rate is "approximately 2.5% to 3.0% over the comparable Treasury Rate"

     would be the proper methodology. Fey 240's "analysis" does not account for the loan-to-value

15   ratio, which, using CBB's asserted value of $9,100,000 results in a LTV of approximately 96.59%

16   and also does not account for the Debtor's obviously less than stellar credit rating.

17        As stated earlier, Fey 240's "analysis" also uses the treasury rate, or the government's cost

18   of borrowing, as the basis for its calculation, rather than the prime rate. The prime rate, or the rate

19   that <u>banks</u> charge each other and their most credit worthy customers, is the appropriate starting

20   point for this analysis. Starting with the rate used by banks and then adjusting for risk factors

     would provide a realistic idea of what the proper interest rate proposed should be. For example,

21   the Wall Street Journal prime rate as of December 30, 2010 is 3.25%. Adjusting using the same

22   risk factor that the Debtor added to its Treasury rate, 3.75%[4], yields an interest rate of 7%.

23   Although CBB does not state the 7% is the appropriate interest rate, this quick analysis using the

24   correct base rate and adding the Debtor's own risk factor rate shows that the Debtor's 5% rate is

25   _____

26   [4] The Debtor states that the Treasury Rate is 1.25% and adds 3.75% to arrive at its proposed 5%
     interest rate.

27

28

inadequate. The consequence of the unreasonably low interest rate proposed by Fey 240 is that the cash payments to be paid to CBB under the plan have a net present value, as of the effective date of the plan, of substantially less than the present value of CBB's claim. This renders Fey 240's plan nonconfirmable.

   b.   The Proposed Plan's Interest Only Payments To CBB Does Not Equal The Present Value of CBB's Claim

   To accomplish payment of present value, payments made in installments must include an appropriate interest rate as well as principal. (*In re: Ribs Auto Sales, Inc.* (Bankr. E.D. Va. 1992) 140 B.R. 390, 394; *In re: Guilford Telecasters, Inc.* (Bankr. M.D.N.C. 1991) 128 B.R. 622, 626.) As discussed earlier, Fey 240's Plan proposes interest only payments on CBB's note at a rate of 5% for months 1 through 19 of the plan, with the principal amortized over a 30 year period for the remaining months of the plan. Not only is the interest rate of 5% inadequate as discussed in Section B, 2, a above, the proposed interest only payments during months 1 through 19 do not equal the present value of CBB's claim. Without monthly principal payments, the interest only payments fall short of the required treatment to propose a confirmable plan and thus Fey 240's plan should not be confirmed.

   c.   The Proposed Plan Violates The Absolute Priority Rule

   Fey 240's Plan violates the absolute priority rule by allowing the Debtor's equity holders to retain their interest while not paying the secured and unsecured creditors the full present value of their claims. As codified in 11 U.S.C. § 1129, the absolute priority rule states, simply, that a Court will not confirm a proposed plan over the objections of a dissenting class of creditors unless the proposed plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan" and unless the creditors are paid before the Debtor's equity holders get or retain any interest under the plan. (*See* 11 U.S.C. § 1129(b)(1); *See also Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp.* (9th Cir. Ariz. 1997) 115 F.3d 650.)

   Here, Fey 240's proposed Plan is in violation of the absolute priority rule because it proposes to pay certain secured and unsecured creditors principal only; there is no interest allotted. The secured and unsecured creditors are entitled to the full amount of their respective claims, with

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 613-2340 • Fax (213) 613-2344

3221-006                                              13

appropriate interest. Fey 240's proposed payments to those creditors have a net present value of substantially less than the present value of their respective claims. Under the absolute priority rule, the creditors (including CBB) must be paid in full before Fey 240's equity holders get or retain any interest under the plan. In addition, Fey 240 has not even alleged, nor can it prove, that there is any new value proferred by its sole equity holder to satisfy the "new value exception" to the absolute priority rule. (*See In re Bonner Mall Partnership* (9th Cir. 1993) 2 F.3d 899.)

Under the "new value exception," equity owners of a debtor are permitted to retain an interest in the reorganized debtor, even if a senior class of creditors is not paid in full, provided that they contribute value to the debtor which is: 1) new, 2) substantial, 3) money or money's worth, 4) necessary for a successful reorganization, and 5) reasonable equivalent to the value or interest received. (*In re Bonner Mall*, 2 F.3d at 908-909.) Fey 240 has provided for no capital contribution, and no other contribution, by its sole equity holder that would allow it to retain its equity interest under this exception. Therefore, not only is the proposed Plan not fair and equitable as to both secured and unsecured creditors, it also runs afoul of the absolute priority rule by permitting Fey 240's equity shareholder to retain his interest. The Plan should not be confirmed. Moreover, this single asset real estate case that has been under the protection of the bankruptcy stay for more than a year should be dismissed.

III.   CONCLUSION

For the foregoing reasons, CBB objects to the Debtor's Proposed Chapter 11 Plan and requests that this Court deny confirmation of the Plan. In the event that the Court is not inclined to summarily deny confirmation, CBB further requests that this Court schedule a hearing to determine the feasibility of the plan, the appropriate market rate of interest due to CBB on its claim, and the value of the Debtor's single asset.

Dated: January 7, 2010             **EPPS YONG & COULSON, LLP**


                                   By:   /s/  Michael B. Wilson
                                         Dawn M. Coulson, Esq.
                                         Michael B. Wilson, Esq.
                                   Attorneys for Creditor CITIZENS BUSINESS BANK

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel (213) 613-2240 • Fax (213) 613-2244

| | |
|---|---|
| In re: FEY 240 NORTH BRAND, LLC<br>Debtor(s). | CHAPTER:11<br>CASE NUMBER: 2:09-bk-44228-AA |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 S. Hope Street, 35th Floor, Los Angeles, CA 90071.

A true and correct copy of the foregoing document described as:

1) **CITIZENS BUSINESS BANK'S OPPOSITION TO CONFIRMATION OF THE CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC;**

2) **DECLARATION OF MICHAEL B. WILSON IN SUPPORT OF CITIZENS BUSINESS BANK'S OPPOSITION TO CONFIRMATION OF THE CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY DEBTOR FEY 240 NORTH BRAND, LLC**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 10, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

United States Trustee  (dare.law@usddoj.gov)
Dawn M. Coulson  (dcoulson@eyclaw.com)
Mitchell B. Ludwig  (mbl@kpclegal.com)

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL (indicate method for each person or entity served):**
On **January 10, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid addressed as follows: (Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed).

X Service information continued on attached page

**III. SERVED BY FACSIMILE (indicate method for each person or entity served):**
On _____ I faxed the document(s) to the persons at the fax numbers listed in the Service List. The telephone number of the sending facsimile machine was (213) 613-2344.  No error was reported by the fax machine that I used.

**IV. SERVED BY PERSONAL DELIVERY (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 10, 2011** I served the following person(s) and/or entity(ies) by personal delivery as follows.  (Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed).

EPPS YONG & COULSON, LLP
333 S. Hope Street, 35th Floor, Los Angeles, California 90071
Tel. (213) 612-2340 • Fax (213) 613-2344

X Service information continued on attached page

| In re:  FEY 240 NORTH BRAND, LLC | CHAPTER:11 |
| Debtor(s). | CASE NUMBER: 2:09-bk-44228-AA |

ADDITIONAL SERVICE INFORMATION (if needed):

II. **Served by Mail**

John P. Schock
210 S. Orange Grove Blvd. #200
Pasadena, CA 91105

Fey 240 North Brand LLC
210 S. Orange Grove Blvd. #200
Pasadena, CA 91105

IV. **Served by Personal Delivery**

Honorable Alan M. Ahart
U.S. Bankruptcy Court
255 East Temple Street, Courtroom 1382
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 10, 2011 | Lorraine Estrada | /s/ Lorraine Estrada |
| *Date* | *Type Name* | *Signature* |

EPPS YONG & COULSON, LLP
3315 HAWS STREET, 35TH FLOOR, LOS ANGELES, CALIFORNIA 90071
TEL (213) 613-2240 • FAX(213) 613-2244