SCHOCK & SCHOCK, alc.
210 So. Orange Grove Blvd. Suite 200
Pasadena, CA 91105
626-298-6446
fax 626-298-6447
[bar no. 48632, 52781]

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| In re: | Bankruptcy No. LA 2:09-bk-44228-AA |
|---|---|
| FEY 240 NORTH BRAND, a Limited Liability Company; | Chapter 11 |
| Debtor | RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH |
| | DATE: January 26, 2011<br>TIME: 10:00 A.M.<br>PLACE: 255 E. Temple Street, Room 1375 Los Angeles CA 90017 |

To the Court and all interested parties:

The Debtor submits this Response to Citizens Business Bank's Opposition to Confirmation of Chapter 11 Plan of Reorganization. For the Courts convenience this Response will follow the paragraph and subparagraph format of the Opposition item by item.

1

# DISCUSSION

## I. FACTUAL BACKGROUND.

### A. The Debtor and Dorn Platz.

We have been through this issue several times before. Yes, the Debtor filed a motion to retain Dorn Platz Management, Inc., as a professional property manager. Yes, CBB opposed that motion and the motion was denied because Debtors counsel failed to timely file the required declarations and set a hearing. Yes, the Debtor did subsequently hire Dorn Platz Management, Inc., to provide clerical, standby and bookkeeping services. The Debtor has no employees. The Debtor does not have an office. The Debtor, once the building was leased, no longer had any need for a professional real estate manager. Thus the Debtor was faced with the problem of renting space, hiring staff, securing insurance, et al. to answer the telephone in emergencies, arrange for minor repairs, to handle the normal accounting and bookkeeping services, and to prepare and filed the reporting and accounting services, such as monthly Trustee Reports, needed to propose and carry out the proposed plan or reorganization. It made economic since to hire an independent contractor to provide these services. Dorn Platz Management is not providing real estate management services, all income is deposited into the Debtor in Possession Account, all leasing activities, if needed will be handled by outside Real Estate Brokers, after securing permission from the court.

If CBB thinks the fee is too high, that is another issue, but merely complaining without further information or data

2

---

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO
CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION
OF CHARLES W. GROSENBAUGH

CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION
OF CHARLES W. GROSENBAUGH

provides not assistance to the Court, the other creditors or the Debtor.

**B. The CBB Loan History and assignment of Leases.**

Yes, the leases were assigned to CBB, although the two most recent leases, Goodwill Industries, Inc., and Southwest Schools may not have been, as they were not effective until after the Bankruptcy was filed. Yes, the Debtor defaulted under the CBB loan before it filed this matter.

**C. The Debtor's default, CBB's Efforts to collect, The Superior Court Action And Revocation of Fey 240" Right to Use Rents from the Property.**

There are several basic problems with this Objection, if it is an objection. First, where is the evidence to support this objection. Yes, there was a case filed in the Los Angeles Superior Court, case number EC 051431. But, where is the evidence that an Order was entered appointing the Receive, and where is the evidence that the Order was entered before the Chapter Proceeding was filed.

Second, the **Civil Code § 2938**, deals with the right to collect rents pursuant to a security interest in the rents and profits. **Civil Code § 2938**, was enacted, to resolve the issue of whether an assignment was "Absolute" and if not what the steps were needed to enforce assignments, as part of the ongoing dispute over the nature of assignments in the late 1990's.

> (c) Upon default of the assignor under the obligation secured by the assignment of leases, rents, issues, and profits, the assignee shall be entitled to enforce the

3

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

1  assignment in accordance with this section. On and after
2  the date the assignee takes one or more of the enforcement
3  steps described in this subdivision, the assignee shall be
4  entitled to <u>collect and receive all rents,</u> issues, and
5  profits that have accrued but remain unpaid and uncollected
6  by the assignor or its agent or for the assignor's benefit
7  on that date, and all rents, issues, and profits that
8  accrue on or after the date. The assignment shall be
9  enforced by one or more of the following: (1) The
10 appointment of a receiver.

In **Federal National Mortgage Association v. Bugna, (1997) 57 Cal. App. 4th. 529**, cited by CBB, the court held that even with an "absolute assignment" additional steps were needed to enforce the creditors rights in the rents. **In re Jason Realty (3ed Cir. 1995) 59 F3ed 423**, cited by CBB found that under New Jersey law the assignment was Absolute and needed no further were steps needed to enforce title to the rents, not applicable to an assignment issue under California law.

Third, the appointment of a receiver is not completed until the receiver swears to perform the duties faithfully and posts the required bond. **Code of Civil Procedure § 567.** CBB has not offered any evidence that the receiver ever took this final step.

Absent evidence that CBB actually completed one of the steps set forth in **Civil Code § 2938**, to enforce its rights to the rents, prior to the filing of this Bankruptcy, the right to enforce the rents has not been established.

4

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

**D. The Debtor's Failure to Obtain Either A Court Order or Stipulation from CBB Authorizing Use of CBB's Rents from the Property.**

The Debtor offered to enter into a Cash Collateral Stipulation, when the matter started, but CBB refused. Subsequent to that refusal, the Debtor continued to use part of the rental income to pay for the ordinary costs of doing business, utilities etc., and reported these expenses in detail on the monthly trustee's report. Once the two new tenants, Goodwill Industries, Inc., and Southwest Schools started paying regular rent, the Debtor on October 1, 2010, without any adequate protection order commenced making adequate protection payments to CBB in the amount of $34,288.87. The proposed Plan calls for payments of 5% for the first nineteen months, and thereafter, once the major rent increases occur, amortized as 30 year loan for the remainder of the term of the loan. CBB, although they have opposed everything, and every motion the Debtor has filed, has never taken any steps to stop the alleged use of CBB's cash collateral.

**II. OBJECTION TO CONFIRMATION OF PROPOSED CHAPTER 11 PLAN**

**A. <u>The Debtor Has Not Complied With This court's Order Or the Local Bankruptcy Rules Regarding Plan Confirmation.</u>**

Counsels recollection of the court's order is flawed. A tentative ruling and the proposed Order lodged on December 7, 2010, and did not contain anything regarding the deadline to file objections. Rather the deadlines were with regards to the submission of ballots. Regardless, CBB has now filed its

5

---

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

objections and the Debtor has filed its Response.

Counsels Objection regarding Local Rule 3018-1 is premature, as the hearing is not set until January 26, 2011.

**B. The Debtor Has Not Properly Identified Potential Insider Votes.**

The potential insider Barnust Properties, LLC, fka Barnust Properties, LP was placed in a separate class [2B] by the Debtor so its vote would not be counted with and possibly affect the vote totals of the Secured Creditors. As long as all of the other Secured Creditors have approved the Plan, the issue of whether Barnust Properties, LLC is an insider or not is moot. The other Secured Creditors, except for Citizens Business Bank, voted for the Proposed Plan so the placing of Barnust Properties, LLC in a separate class has not effect on the outcome to the voting.

The potential insider Lobar Properties, Inc., was placed in a separate unsecured class [1E] so its votes would not be counted as part of the unsecured creditors, and possibly influence the outcome. The unsecured creditors, without counting the Lobar Properties, Inc., claim approved the Proposed Plan. As the other unsecured creditors voted to approve the Plan, the issue of Lobar Properties, Inc., being an insider is moot.

**C. The Proposed Plan Does Not Properly Classify the Allowed Claims Filed Against the Debtor And Thus Does Not Properly Proportion Voting Rights.**

Citizens Objection ignores a few facts in this objection.

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

One very important fact that Citizens chooses to ignore is that when it appeared that the Debtor would be unable to complete the tenant improvements for Goodwill Industries, Inc., a Stipulation [Docket item 52 ]was reached between the parties, including Citizens that allowed Goodwill Industries, Inc., to pay contractors and subcontractors to allow the contractors and subcontractors to complete the tenant improvements in exchange for an offset against future rents, which was approved by the Court. [Docket item 64]. CBB has reviewed the original Debtor's original Schedules, amended Schedules and the Claim Register, without further inquiry, to arrive at a list of creditors that it claims were not included in the Proposed Plan or miss classified. Below is a summary of the claims identified by CBB and the status of these several creditors:

| Creditor | Amount | Status of Claim |
| --- | --- | --- |
| Interior Experts General Builders. | $50,576.35 [secured] | Creditor agreed to be treated as unsecured and voted for the plan as proposed |
| Mustang Mechanical Contractors | $10,089.82 | Creditor agreed to be treated as unsecured and did not vote to oppose plan |
| Diversified Automation | $4,916.53 [Priority] | Has been paid |
| AR Painting | $10,930.00 [Priority] | Has been paid |
| Armen Markarian | $2,600.00 [unsecured] | Has been paid |

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

| | | |
|---|---|---|
| AT&T | $84.74 [unsecured] | Was paid by Debtor as cost of doing business |
| Fabian Glass Graffiti | $360.53 [unsecured] | Has been paid |
| Farmers Insurance | $8,213.32 [unsecured] | Was not pre petition. Paid by Debtor to maintain insurance on property |
| Glendale Iron | $2,900.00 [unsecured] | Has been paid |
| LA Consulting Engineers | $3,500.00 [unsecured] | Has been paid |
| L& T Industries | $1,550.00 [unsecured] | Has been paid |
| Malekain & Associates | $4,830.00 [unsecured] | Has been paid |
| Saiful Bouquet | $2,100.00 [unsecured] | Has been paid |
| CSC Coring | $950.00 [unsecured] | Has been paid |
| Doug Newman | $75,000.00 [unsecured] | Is listed as unsecured creditor and voted to approve the plan |

Not sure why CBB is so concerned about the rights of other possible creditors, other than as part of its continuing attempts to harass the Debtor, as the total of these allegedly not included unsecured creditors would not change the results.

**D. The Plan is Not Feasible.**

CBB raises three objections to the proposed Plan: The Debtor has no Property Management; the plan is not fair and equitable; and the plan violates the Absolute Priority Rule, which are discussed in the following sections.

8

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

### 1. The Plan is Not Feasible Because The Debtor Has No Property Management.

This is a point CBB has raised every time the Debtor has tried to do anything. As the Debtor has pointed out each time, but CBB seems to ignore, the Debtor is a limited liability company and has two managers, who are more than capable of managing the property, and have the power, with the Courts approval to retain any Real Estate Brokers that may be needed in the future. At present to retain a professional management company would just be a waste of money.

### 2. The Plan Does Not Meet the "Cram-Down" Requirements of 11 U.S.C. Section 1129(a) And Cannot Meet the "Fair and Equitable Requirements of 11 U.S.C. Section 1129(b).

CBB's in the following subsections tries to establish that some how the plan fails to provide to provide for payments totaling at least the amount of CBB's secured claim and unfairly discriminates against CBB by paying it interest only on an inappropriate base rate and by paying junior lien holders prior to CBB.

#### a. The Plan's Proposed Payment Schedule To CBB Is Neither Fair Nor Equitable And Its Proposed Interest Rate Is Miscalculated.

In a cramdown situation there are only to variables: (1) The present value of the collateral, (2) the interest rate to compensate the creditor for waiting for payment. In this matter there is no dispute, at least CBB has not objected to the present value of its claim as set forth in the Proposed Plan.

9

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

CBB's Objection presents the problem of what is the appropriate interest rate that should be paid to the secured creditor in a cramdown over the term of the proposed Plan. Generally, lenders earn interest on their loans to compensate them for the opportunity cost of being able to use the funds in some other way, for inflation, and for the risk of default.

As noted by CBB the "prime rate" as of December 30, 2010 was 3.25%. Since the "prime rate" already compensates the lender for opportunity cost and for inflation for the normal risk of loss according to the market's view of those factors, the only issue remaining is the amount of interest needed to protect the lender because of the greater risk of default by the Debtor. Taking into consideration among other things the risk that the Debtor will not be able to make the payments. [Often referred to as the Formula Rate]

The Supreme Court in **Till v. SCS credit Corp. (2004) 541 U.S. 465,** the plurality opinion emphasized that the secured creditor bears the burden of demonstrating what the proper risk adjustment should be.

The Proposed Plan provides that it will pay CBB the full amount of its "allowed secured claim", which is stated in the Plan, without objection, to be $8,318,217.96. The only evidence or argument offered by CBB, is CBB's <u>asserted</u> value of the property is $9,100,000.00, and a loan to value ratio of 96.59%. [CBB does not indicate the source of this asserted value] The Debtor's appraiser, in the recent hearing on CBB's Motion for Relief from the Automatic Stay placed the value of the property

10

1    at $12,000,000.00.  This is equivalent of 70% loan to value, not
2    96.59% as asserted by CBB.
3         At the time the Bankruptcy was filed the Debtor only had
4    one tenant, and two floors of partially completed tenant
5    improvements.  The base rental income was less than $31,000.00
6    per month.  With the completion of the tenant improvements, the
7    Debtor has base rental income of almost $90,000.00, which base
8    rental income will increase by between $10,000.00 and $20,000.00
9    per month over the term of the five year Plan.
10         The Plan proposes to pay CBB interest only of roughly
11    $37,000.00 per month until the Goodwill Industries, Inc. rent
12    increases in September of 2012, and then to pay CBB principal
13    payment of roughly $10,600.00 per month. With each monthly
14    payment starting with September 2012, the amount needed to pay
15    the interest decreases and the amount applied to principal
16    increases.  The result being that there is little or no
17    likelihood that the Debtor will be unable to make the payments
18    to CBB.
19         Given these factors, and the absence of any evidence from
20    CBB, although the Debtor did calculate the proposed interest
21    based on the prime rate, the proposed interest rate of 5%, 1.75%
22    over the prime rate of 3.25%, is adequate to compensate CBB for
23    the added risk not already included in the "Prime Rate"
24    associated with the Debtors plan.
25         The Debtor in the Proposed Plan arrive at the proposed
26    interest rate by a different approach. [Often referred to as the
27    cost of funds method]   Which method as CBB notes, involves
28

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO
CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION
OF CHARLES W. GROSENBAUGH

starting with the 5 Year Treasury Rate, the cost of funds for CBB, and then adjusting the interest rate upward to account for opportunity cost of being able to use the funds in some other way, for inflation, and for the risk of default. The Debtor used this method because it is the method provided for in the CBB Promissory Note which called for an interest rate of 2.25% over the 5-Year Treasury Rate. As noted by CBB, the approximate 5-year Treasury Interest rate when the Proposed Plan was filed was 1.25%. [It adjusts daily] As the declaration of Charles W. Grosenbaugh shows the current market rate, on loans using this formula is 2.5% to 3% over the 5-year Treasury Bill Rate, which adjusts for opportunity cost of being able to use the funds in some other way, for inflation, and for the risk of default. In arriving at 5% the Debtor used the a rate of 3.75% to compensate CBB for the unestablished additional risk of a loan to this Debtor.

Despite all of CBB's comments there is nothing in the record to establish, that under the circumstances, there is any higher risk under the proposed plan that would justify a higher interest rate than proposed by the Debtor.

    b. **The Proposed Plan" Interest Only Payments To CBB Does Not Equal The Present Value of CBB's Claim.**

The Debtor understands that Present Value is actually the mirror image of interest rate discussed above, and the Plan cannot impose uncompensated risk upon CBB by paying to low an interest rate under the Plan.

    c. **The Proposed Plan Violates the Absolute Priority Rule.**

12

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

All of the junior Secured Creditors[1] and both classes of unsecured creditors have voted to approve the Proposed Plan.

> " Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
> **11 U.S.C. § 1129 (a) (9)**
> (A) with respect to a claim of a kind specified in section 507 (a)(2) or 507 (a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

The Proposed Plan does not violate the Absolute Priority Rule.

**CONCLUSION**

Enough is enough. CBB has opposed every step, and fought every proposal of the Debtor to move this matter along to an approved Plan. They have raised most of these objections before, and on each occasion been overruled. The Debtor has worked diligently to put itself in a position to successfully reorganize. It had been able to lease out, for all practical purposes the entire building, it has increased the base rent from $30,000.00 per month to $90,000.00 per month, and it has resolved the long-standing dispute with Glendale Career Schools.

The only issue remaining is what is the adequate

---

[1]. Glendale Career Schools has agreed to vote for the Plan if the words "Rental Income & Sales proceed are inserted in the chart on page 18, in row 1D, column titled Source of Payment and that a copy of the agreement between the Debtor and Glendale Career Schools be incorporated into the Plan and Order Approving the Plan.

13

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

1  compensation for CBB for the added risk not already included in
2  the "Prime Rate" associated with the Debtors plan. CBB has
3  offered little to support its position other than, conjecture
4  and argument. In contrast, the Debtor has shown, by the
5  appraisal filed with the Response to the Motion for Relief from
6  the Automatic Stay that the value of the property is
7  $12,000,000.00, for a 70% loan to value ratio, that there is
8  sufficient cash flow to more than adequately protect CBB, and
9  that given the degree of additional risk, imposed on CBB by the
10 plan, that an interest of 5.0%, 1.75% over the prime rate and/or
11 3.75% over the 5 year Treasury Bill rate is proper.
12     For the benefit of all of the creditors, not just CBB the
13 Plan should be approved as presented and approved by the other
14 creditors without further hearings or delay.
15 Dated: January 19, 2011           Respectfully Submitted
                                     Schock & Schock, alc
16                                   Attorneys for Fey 240 North Brand,
                                     LLC
17                                   By: _____
                                     John P. Schock
18

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO
CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION
OF CHARLES W. GROSENBAUGH

DECLARATION OF CHARLES W. GROSENBAUGH

I, Charles W. Grosenbaugh declare:

1. I am a the Senior Vice President of Sunrise Mortgage & Investment Company.

2. I have personal knowledge of the facts set forth in this declaration, and if called as a witness could and would testify competently thereto.

3. As set forth in my Curriculum Vitae, a copy of which is attached hereto as exhibit A, I have been involved in securing and placing loans on Commercial Real Estate for many years. eSince 1983.

4. At the request of Fey 240 North Brand, LLC I have reviewed the building located at 240 No. Brand Blvd. Glendale California, the surrounding area, and the Appraisal of Jennie Redner of Terra Firma to determine the potential for replacement debt and the cost/interest rate spread for such a loan as of January 3, 2011.

5. In our recent survey of institutional lenders we found that the range in interest rate spread was from a low of 1.55% over the appropriate treasury yield to a high of about 3.63%. The lenders with the two lowest spreads were only interested in lower leveraged properties, thus we eliminated them from consideration in this instance. This yields a possible range of 2.25 % to 3.60%

6. Based on my review of the potential cash flow that can be generated by this property (as outlined in the appraisal) and the ratio of existing debt to value of about 72% would place

15

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

this property at the upper end of the spectrum. Then looking at the disbursement of the spreads, the majority of spreads are grouped in the area of 2.35 to 2.90. Two of the higher spreads (3.50 & 3.63) are from Life Companies who have experienced substantial flow of new loan opportunities and thus may have increased their spreads to slow down the flow of new business. Using a lenders perspective of the ratio of existing debt to value would place the property at the upper end of their loan to value ratio range. Therefore it would be my opinion that an appropriate spread would probably be at the upper end of the range or about 2.80 to 2.90.

I declare under penalty of perjury under the laws of the State of California that foregoing is true and correct, as of the 19th day of January 2011.

*/s/ Charles W. Grosenbaugh*

Charles W. Grosenbaugh

16

RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH

Exhibit A

# CHARLES W. GROSENBAUGH

## SUNRISE MORTGAGE & INVESTMENT COMPANY

SUMMARY: Thirty eight years of real estate lending experience covering various economic and market conditions exclusively in the field of commercial income properties in Southern California.

## PROFESSIONAL EXPERIENCE

**1996 – Present**  Sunrise Mortgage & Investment Company         Pasadena, California Senior Vice
Responsible for loan production and loan closing. Project sizes ranging from $500,000 to $80,000,000. Acting as correspondent for PPM Finance, Standard Insurance, Genworth, Wells Fargo Bank, Symetra, Riversource, Thrivent, PNC, Aegon Realty Advisors, Arizona State Retirement Fund, Assurant Asset Management, Home Street Capital, National Life of Vermont, Key Commercial Mortgage, and American Fidelity Assurance. In addition I have developed several extensive relationships with non correspondent lenders such as Hancock Life Insurance and Principal Global Investors.

**1981 – 1996**  The Alison Company         Los Angeles, California
Responsible for loan production, personal administration and supervision of a staff of 2 plus 7 loan production personal, including training, budget preparation, annual portfolio review and analysis while representing Travelers Insurance, Manufactures Life Insurance, Woodman of the World, Great Northern Annuity, Monarch Insurance, Standard Insurance, and The Hughes Employees Pension Fund.

**1972 – 1981**  COLDWELL BANKER MANAGEMENT CORPORATION         Los Angeles, California
Vice President
Responsible for the supervision of a production staff of 4, loan production, and project recommendation while representing Aetna Life Insurance, Massachusetts Life Insurance, and Standard Insurance.

**1968 – 1972**  BURROUGHS CORPORATION
Senior Sales Representative
Responsible for the sales and installation of accounting computers and systems to small and medium sized companies.

## EDUCATION

**1968**  University of Southern California, Los Angeles, California
Masters of Business Administration – Finance

**1967**  University of Southern California, Los Angeles, California
Bachelor of Science – Finance

## MEMBERSHIPS AND ACTIVITIES

Member of the California Mortgage Bankers Association, ICSC, NAIOP, USC-MBA Alumni Association, guest lecturer Woodbury College, Real Estate Salesman license, member Board of Directors Lakeside Golf Club.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 210 South Orange Grove Blvd. Pasadena California 91105.

A true and correct copy of the foregoing document described as "RESPONSE OF DEBTOR TO CITIZENS BUSINESS BANK OPPOSITION TO CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF CHARLES W. GROSENBAUGH" will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 19, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Dare Law United States Trustee dare.law@usdoj.gov
Dawn Coulson   dcoulson@eyclaw.com
Michael Wilson   mwilson@eyclaw.com
Mitchell B. Ludwig mbl@kpclegal.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On January 19, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

January 19, 2010       Alicia Azpell
Date                   Type Name              Signature

## ADDITIONAL PARTIES SERVED

Honorable Alan M. Arart
U.S. Bankruptcy Court
255 East Temple Street, Courtroom 1382
Los Angeles CA 90012